**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.   4:20-cv-00991 |
| | § | |
| CARRIGAN & ANDERSON, PLLC, | § | |
| STEPHEN P. CARRIGAN, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## <u>COMPLAINT</u>

The United States of America ("United States" or "Government") brings this action on behalf of the Centers for Medicare and Medicaid Services ("CMS"), a component of the United States Department of Health and Human Services ("HHS") to recover payment made under the Medicare program on behalf of Tomas R. Tijerina pursuant to the Medicare Secondary Payer Act ("MSP").   42 U.S.C. § 1395y(b).

## <u>JURISIDISTION AND VENUE</u>

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1367(a), 42 U.S.C. § 1395y(b)(2)(B)(iii).

2.      This Court may exercise personal jurisdiction over Defendants pursuant to 42 U.S.C. § 1395y(b) and because Defendants reside and transact business in the Southern District of Texas.

3.      Venue is proper in the Southern District of Texas under 42 U.S.C. § 1395y(b) and 28 U.S.C. § 1391(b) and (c) because Defendants reside and transact business in this District.

## PARTIES

4.      The United States brings this action on behalf of the Centers for Medicare and Medicaid Services ("CMS"), a component of the United States Department of Health and Human Services ("HHS"). The CMS administers the Medicare Program, 42 U.S.C. §§ 1395 et seq. ("Medicare"), which was created in 1965 as part of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, to provide federally-funded health insurance for persons age 65 and older, persons under age 65 with certain disabilities, and persons of all ages with end-stage renal disease.

5.      Defendant Stephen P. Carrigan is an attorney licensed to practice law in the State of Texas. He represented Tomas R. Tijerina in a personal injury lawsuit to recover damages and obtained a settlement for $70,000.00 on behalf of Mr. Tijerina. The personal injury lawsuit was *Tomas R. Tijerina v. Shiel Brashear Trucking, LLC*, Cause No. 1627771, in the 278th District Court of Walker County, Texas. Mr. Carrigan's principal place of business is located at 3100 Timmons Lane, Suite 210, Houston, Texas, 77027, or 101 N. Shoreline Blvd., Corpus Christi, Texas 78401.

6.      Defendant Carrigan and Anderson, PLLC is a Texas professional limited liability company that provides legal services in the State of Texas. The law firm's principal place of business is located at 3100 Timmons Lane, Suite 210, Houston, Texas, 77027, or 101 N. Shoreline Blvd., Corpus Christi, Texas 78401. Defendant Stephen P. Carrigan, a licensed attorney in the State of Texas, is an owner of and provides legal services through Carrigan and Anderson, PLLC.   Along with Defendant Stephen P. Carrigan, Defendant Carrigan and Anderson, PLLC represented Tomas R. Tijerina in a personal injury lawsuit to recover damages and obtained a settlement for $70,000.00 on behalf of Mr. Tijerina. The personal injury lawsuit

was *Tomas R. Tijerina v. Shiel Brashear Trucking, LLC*, Cause No. 1627771, in the 278th District Court of Walker County, Texas.

## MEDICARE AS A SECONDARY PAYER

7.     The Medicare program, which was enacted in 1965, is a federally funded program of health insurance for the aged, the disabled, and persons suffering from end stage renal disease. 42 U.S.C. §§ 1395-1395lll (the Medicare Act). The Secretary of HHS (the Secretary), acting through the Administrator of the CMS, has overall responsibility for the program.

8.     In 1980, Congress enacted the Medicare Secondary Payer Act ("MSP"), which requires insurers to make the primary payment for services rendered to Medicare beneficiaries, leaving the Medicare program to provide benefits only as a "secondary" payer.   42 U.S.C. § 1395y(b).

9.     The MSP uses two mechanisms to protect Medicare funds and ensure that Medicare is the secondary payer. First, it prohibits Medicare from making payments for covered medical items and services if payment has already been made or can reasonably be expected to be made by another source, or "primary plan," such as the insurers that paid the settlement in this case.   42 U.S.C. § 1395y(b)(2)(A)(ii). Second, when a primary plan cannot be expected to make payment promptly, the MSP provisions permit Medicare to pay - but conditions those payments on reimbursement after the primary plan makes payment.   42 U.S.C. § 1395y(b)(2)(B)(i). The payments Medicare makes in these circumstances are referred to as Conditional Payments.

10.     Medicare has a right to recover Conditional Payments from either the primary plan or an entity that received payment from a primary plan. Such entities include beneficiaries or attorneys who represent them.   42 U.S.C. § 1395y(b)(2)(B)(ii); 42 C.F.R. § 411.24(g).

3

11.     Medicare's right to recover Conditional Payments includes reimbursement from payments, settlements, or judgments obtained by beneficiaries or their attorneys on personal injury claims related to medical expenses covered by Medicare's Conditional Payments.   *Id.*

12.     Upon notification of such payment, settlement, or judgment obtained by a beneficiary or his attorney, Medicare will send to the beneficiary and/or his attorney an Initial Determination that provides an itemization of the Conditional Payments, a request for reimbursement of the Conditional Payments, and the right to appeal the Initial Determination. 42 U.S.C. § 1395y(b)(2)(B)(viii); 42 U.S.C. § 1395ff; 42 C.F.R. §§ 405.900-405.1140.

13.     If this debt is not repaid within the required sixty-day time period, CMS is also entitled to receive interest on this debt under 42 U.S.C. §1395y(b)(2)(B) and 42 C.F.R. § 411.24(m)(2). The rate of interest accruing on this debt is 9.50% per year as provided for under 42 C.F.R. § 405.378(d)

14.     Any claim that challenges, disputes, or seeks to avoid or reduce the reimbursement amount due to Medicare for Conditional Payments is a claim that arises under the Medicare Act. Such claim must be channeled and exhausted first through the administrative appeal process set out in the Medicare Act and regulations as stated above. Only after exhaustion of the administrative remedies (appeal of the Initial Determination), can the claim be presented to, and only to, the United States District Court which has exclusive subject matter jurisdiction to hear these claims.   42 U.S.C. §§ 405(g), (h); 42 U.S.C. § 1395ff(b); 42 U.S.C. § 1395ii; *Heckler v. Ringer*, 466 U.S. 602, 605-615 (1984); *Cochran v. U.S. Health Care Financing Admin.*, 291 F.3d 775, 778-779 (11th Cir. 2002); *Buckner v. Heckler*, 804 F.2d 258, 259-260 (4th Cir. 1986).

15.     The United States may bring an action in the United States District Court to recover Conditional Payments against any entity including beneficiaries or attorneys who have received payment from a primary plan or from the proceeds of a primary plan's payment to any entity.   42 U.S.C. § 1395y(b)(2)(B).

16.     Texas state courts lack subject matter jurisdiction over claims related to the Conditional Payments made under the MSP. As sovereign, the United States and its agencies are immune from suit except by its expressed consent.   *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009); *Zayler v. U.S. Dep't of Agric. (In Re Supreme Beef Processors, Inc.)*, 468 F.3d 248, 251 (5th Cir. 2006). A court's jurisdiction to hear or adjudicate a suit against the United States or its agencies is defined by the specific terms of the United States' consent to be sued. The United States' waiver of sovereign immunity must be unequivocal and not implied. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). The United States' consent to be sued is construed strictly in favor of the sovereign and cannot be enlarged beyond what a statute's language requires.   *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992). The MSP's waiver of sovereign immunity does not give or extend subject matter jurisdiction to any state court including Texas state courts.

## MEDICARE'S RECOVERY OF CONDITIONAL PAYMENTS

17.     On April 14, 2016, Defendants notified CMS's Medicare Benefits Coordination and Recovery Center (BCRC) about Tijerina's car accident on April 13, 2014, his resulting personal injuries, and his lawsuit to recover damages from the responsible parties.   *See* Exhibit "A", a copy of Defendants' April 13, 2014, notification.

18.     On March 30, 2017, Defendants notified BCRC that Tijerina had settled his lawsuit with the responsible parties for $70,000.00. *See* Exhibit "B", a copy of Defendants' March 30, 2017, notification.

19.     On April 10, 2017, BCRC sought to recover the Conditional Payments and sent Defendants an Initial Determination demanding reimbursement of $46,244.74 that the Medicare program paid for Tijerina's medical expenses related to his lawsuit.   *See* Exhibit "C", a copy of BCRC's April 10, 2017, Initial Determination. The Initial Determination explained the Medicare Secondary Payer statute, the amount paid by the Medicare program for Tijerina's medical expenses, and Tijerina's responsibility to reimburse the Medicare program. Further, the Initial Determination explained Tijerina's right to appeal the Initial Determination. The Initial Determination included a Payment Summary Form itemizing Tijerina's medical expenses paid by the Medicare program.

20.     On April 19, 2017, Defendants filed a motion with the 278th Judicial District Court in Waller County, Texas, that challenged the Initial Determination by the Medicare program. The Defendants sent BCRC copies of their motion.   *See* Exhibit "D", a copy of Defendant's letters sent to BCRC.

21.     On July 20, 2017, BCRC renewed Medicare's efforts to recover the Conditional Payments and sent Defendants a Demand Letter for $47,343.05, the amount the Medicare program paid for Tijerina's medical expenses related to his lawsuit plus statutory accrued interest.   *See* Exhibit "E", a copy of BCRC's July 20, 2017, Demand Letter. The Demand Letter included a Payment Summary Form itemizing Tijerina's medical expenses paid by the Medicare program.

22.     On August 3, 2017, the Defendants without responding to BCRC's Initial Determination or Demand Letter, sent BCRC a copy of an order issued by the 278th Judicial District Court in Waller County, Texas, that reduced the recovery of Medicare's Conditional Payments by 90% to $4,700.00 and a check for $4,700.00.   *See* Exhibit "F", a copy of Defendants' August 3, 2017, letter sent to BCRC. To date, Medicare has not received additional payments to reimburse Medicare's Conditional Payments.

23.     The 278th Judicial District Court lacked subject matter jurisdiction to adjudicate a challenge to Medicare's recovery of Conditional Payments. Its order reducing or otherwise limiting Medicare's recovery is void and unenforceable per the United States' sovereign immunity.

24.     The current amount owed by Defendants to Medicare for its Conditional Payments is $53,445.93 ($42,643.05 principal, $10,802.88 interest). Pursuant to the MSP, the United States is entitled to recover this debt from Defendants.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered in its favor against Defendants for:

A.     The sum in paragraph 24, pre-judgment interest, administrative costs, and post-judgment interest;

B.     Attorney's fees; and

C.     Other relief the Court deems proper.

Respectfully submitted,

RYAN K. PATRICK
United States Attorney

BY:    /s/   *Jose Vela Jr.*
        Jose Vela Jr.
        Assistant United States Attorney
        Attorney in Charge
        Fed ID# 25492
        Texas State Bar No. 24040072
        1000 Louisiana Street, Suite 2300
        Houston, Texas 77002
        713.567.9000
        713.718.3303 (fax)

EXHIBIT "A"

# CARRIGAN, COOK & ANDERSON

### *Attorneys at Law*
A PROFESSIONAL LIMITED LIABILITY CORPORATION

April 14, 2016

**Via CMRR 7015 1730 0001 7995 8401**
MSPRC
No fault/Liability
P.O. Box 138832
Oklahoma City, OK 73113

> **RE:** **Client:** <u>Tomas Tijerina</u>
> **DOA:**
> **DOB:**
> **SSN:**
> **Medicare No.**

Dear Sir/Madam:

We are attempting to conclude a settlement on behalf of our client, Tomas Tijerina. He was involved in a car incident that occurred on April 13, 2014. As a result of this accident Mr. Tijerina suffered severe and debilitating injuries

As such, Mr. Tijerina does not maintain any form of health insurance except for Medicare. To this end, I am in need of confirmation of any liens that Medicare may maintain pertaining to Tomas Tijerina and/or this accident as soon as possible. I have attached a copy of the signed Authorization for Use and Release of Health Information and a signed HIPPA Authorization. Please provide me with the written confirmation of any lien which may exist with Medicare. Should Medicare not maintain a lien, please provide written confirmation of this fact as well. We are in need of this information AS SOON AS POSSIBLE. As such, should you need additional information to make sure the itemization is complete, please contact Allison Dominguez at my Corpus Christi office as soon as possible.

Thank you for your assistance in this regard and appreciate your professional courtesy.

Very truly yours,

Stephen P. Carrigan

1605 Washington
Laredo, TX 78040
(956) 319-6092
(956) 242-7231 Facsimile

5900 Memorial Drive, Ste. 210
Houston, TX 77007
(713) 739-0810
(713) 739-0821 Facsimile

101 N. Shoreline Blvd., Suite #420
Corpus Christi, TX 78401
(361) 884-4433
(361) 884-4434 Facsimile

M 20160418 0B0048506 001 0002 1
25041816-0009056

## AUTHORIZATION TO RELEASE PROTECTED HEALTH INFORMATION (PHI)

Patient's Printed Name: _James R Tyerine_
Date (s) of Service: _4/13/14 - present_
Complete Address: _____

Street Address

City                    State                    Zip Code

Patient's Birthdate: ████████████
Patient's Social Security Number: ████████████████
Home Phone Number: (____) _____    Work Phone Number: (____) _____

I hereby authorize _Medicare_____ (Hospital) to disclose records obtained in the course of my
evaluation and/ or treatment to: ____ Carrigan, Cook & Anderson, PLLC   OR  X̶ Carrigan, Cook & Anderson, PLLC

5900 Memorial Dr. Ste. 210          101 N. Shoreline Blvd. Ste. 420
Houston, Texas 77007                 Corpus Christi, Texas 78401
713-739-0810 – Voice                 361-884-1433 – Voice
713-739-0821 – Fax                   361-884-1434 – Fax

**Type of Access Requested:** X̶ Copies of record ____ Inspection of record
**Medical Records:**
____X̶ Entire Record        **Selected Portions of PHI as marked:**

| | | |
|---|---|---|
| ___Discharge Summary | ___Lab | ___Progress Notes |
| ___Emergency Room Record | ___Imaging/ Radiology | ___Physician Notes |
| ___History and Physical | ___Cardiac Studies | ___Pathology Report |
| ___Consult Report (s) | ___Face Sheet | ___Other_____ |
| ___Operative Report (s) | ___Nursing Notes | _____ |
| ___Rehab Services | ___Medication Record | _____ |
| Type: _____ | ___Psychological Record(s) | |
| _____ | ___Psychiatric Record (s) | |

**Billing Records:**
___X̶___ Detailed Bill
_TLT_ (Initials)          _____ UB92      (Forward copy to PAD for processing)
                          I ____ DO (or) _____ DO NOT consent to release of information
relating to psychiatric or psychological testing or treatment, biofeedback training alcohol and/ or drug abuse diagnosis,
prognosis and treatment and / or HIV (AIDS) testing and/ or results, or such disclosure shall be limited to the following
specific types of information: _____

List the purpose (s) for the release or disclosure of Protected Health Information: _____
                _Litigation_

This consent is subject to written revocation by the undersigned at any time except to the extent that the action has been
taken and if not earlier revoked. To revoke this authorization contact the Hospital's Health Information Management
Medical Records Department at_____

_TLT_
Initials

Page 1 of 2

M 20160418 OB0048506 001 0003 1
25041816-0009056

Authorization to Release Protected Health Information (PHI)                    Page 2 of 2

This consent shall become invalid and expire 180 days from the date of this signature.
Expiration date:_____ or Expiration Event :_____ none, or  X  define:     End of Litigation

I understand that information disclosed by this authorization may be re-disclosed by the recipient of your PHI. Such re-disclosure will no longer be protected by this authorization.

I hereby release _____Medicare_____(Hospital)from any and all legal liability and injuries that may arise from the release of this information to the party names above. The information that I am requesting may be sent by U.S. mail service and / or electronic facsimile in accordance with Hospital's facsimile policy.

I understand that I have the right to receive a copy of this authorization.
_____Copy of authorization received

A copy of facsimile of this authorization is a Valid as the original.

I understand that my healthcare and the payment of my healthcare will not be affected if I refuse to sign this authorization.

I have read the above or have had it read to me and authorize the disclosure of the Protected Health Information as stated.

SIGNED: _Imar R. Tijerina_____  DATE: 4-11-16
        (Signature of Patient/Legal Guardian or Representative)

If signed by other than patient, indicate relationship:

_____

Witness:_____  Date:_____
        * Authorized representative must submit copies of legal document supporting his or her authority to act on the patient's behalf *

To the party Receiving this Information: This information has been disclosed to you from records whose confidentiality may be protected by state and / or federal law. Certain regulations prohibit you from further disclosure of it without the specific written consent of the person to whom it pertains, or otherwise as permitted by such law and regulations. A general authorization for the release of such medical or other information is not sufficient for this purpose. Fees will be charge for the release of information in accordance with the law.

# PLEASE MAIL ALL CORRESPONDENCE TO:

## CARRIGAN, COOK & ANDERSON, PLLC
## 101 N. SHORELINE BLVD., STE. 420
## CORPUS CHRISTI, TEXAS 78401
## FACSIMILE: (361) 884-4434

Carrigan, Cook & A...
101 N. Shoreline Blvd., Ste. 420
Corpus Christi, Texas 78401

7015 1730 0001 7995 8401

APR 2016 PM

$ 006.95
0001835032    APR 14 2016
MAILED FROM ZIP CODE 78401

MSPRC
Notwith Liability
P.O. BOX 138032
Oklahoma City, OK 73113

73113$8632  B060

EXHIBIT "B"

Case 4:20-cv-00991 Document 1-2 Filed on 03/18/20 in TXSD Page 2 of 37

MAR/30/2017/THU 05:07 PM C,C,& A PLLC          FAX No. 713-739-0821          P. 001

# CARRIGAN & ANDERSON, PLLC

ATTORNEYS AT LAW

*Stephen P. Carrigan*
*scarrigan@ccatriallaw.com*

March 30, 2017

TO:                     MSPTC-NGHP
FAX NUMBER:              405-869-3309

FROM:                   Stephen P. Carrigan /Wendy Watson, Legal Assistant
NO. OF PAGES:           36 (Includes Cover Sheet)

RE:                     Tomas R. Tijerina v. Shoel Brashear Trucking, LLC and Carlton
                        Mulder

**MESSAGE:**

1605 Washington                5900 Memorial Drive, Suite 210        101 N. Shoreline Blvd., Suite 420
Laredo, TX 78040               Houston, TX 77007                     Corpus Christi, TX 78401
(956) 319-6092                 (713) 739-0810                        (361) 884-4433
(956) 242-7231 Facsimile       (713) 739-0821 Facsimile              (361) 884-4434 Facsimile

# CARRIGAN & ANDERSON, PLLC

### 5900 MEMORIAL DRIVE, SUITE 210
### HOUSTON, TEXAS 77007

Telephone                                              Facsimile
713-739-0810                                           713-739-0821

March 30, 2017

CMRR: 7013 2250 0000 5170 4223
MSPRC-NGHP
P.O. Box 138832
Oklahoma City, Oklahoma 73113

Re:    Cause No. 22181; Tomas R. Tijerina v. Shoel Brashear Trucking, LLC & Carlton
       J. Mulder; In the 411th Judicial District of Trinity County, Texas

       Beneficiary HICN: ███████████
       Case I.D. ███████████

Dear Sir or Madam:

       Enclosed please find Plaintiff's Motion to Determine the Portion of Plaintiff's
Settlement Monies that Constitute Reimbursement for Medical Payments Made in
and regarding the above-captioned matter. A hearing will be scheduled on this motion
and you will be advised of same.

                                        Very truly yours,

                                        Stephen P. Carrigan

SPC:ww

CAUSE NO. 22181

| | | |
|---|---|---|
| TOMAS R. TIJERINA | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 411th JUDICIAL DISTRICT |
| | § | |
| SHOEL BRASHEAR TRUCKING, | § | |
| LLC AND CARLTON J. MULDER | § | TRINITY COUNTY, TEXAS |

**PLAINTIFF'S MOTION TO DETERMINE
THE PORTION OF PLAINTIFF'S SETTLEMENT MONIES THAT
CONSTITUTE REIMBURSEMENT FOR MEDICAL PAYMENTS MADE**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, TOMAS TIJERINA herein, in the above-styled and captioned matter and files this his Motion to Determine the Portion of Plaintiff's Settlement Monies That Constitute Reimbursement for Medical Payments Made and in support would respectfully show unto the Court as follows:

1.     Plaintiff, Tomas Tijerina, suffered a serious, disabling personal injury as a result of an automobile accident that occurred on April 13, 2014.   Plaintiff filed suit against the Defendant herein seeking legal compensation for the following damages he suffered: (1) physical pain in the past and future; (2) mental anguish in the past and future; (3) disfigurement in the past and future; (4) physical impairment in the past and future; (5) medical expenses in the past and future; and, (6) loss of earning capacity in the past and future.

2.     Plaintiff subsequently settled his case as to and against all Defendant, said settlement totaling $70,000.00.

3.      A portion of Plaintiff's medical costs were paid for by Medicare.

Medicare has provided an itemization showing Medicare advanced medical

costs in the amount of $46,823.54, (correspondence from Medicare with expenses is

attached hereto as Exhibit A).

4.      In order to determine the appropriate reimbursement amount to

Medicare, one must look to the United States Supreme Court's decision in Arkansas

Department of Health and Human Services, etc al v. Heidi Ahlborn, 547 U.S. 268,

126 S.Ct. 178 (2006).  With that opinion, our United States Supreme Court clearly

stated that Medicare is entitled only to the portion of the settlement that actually

constitutes reimbursement for the medical payments made[1].  *Ahlborn* was upheld in

Aldona Wos, Secretary, North Carolina Department of Health and Human Services

v. E.M.A., a Minor, by and through Guardian Ad Litem, Daniel Johnson, et al – see

Exhibit "B" attached hereto and incorporated herein.

5.      Applying Ahlborn and Wos to the instant matter, the settlement amount

was $70,000.00, while the actual total value of damages is $470,000.00 (See affidavit

of Stephen P. Carrigan attached hereto as Exhibit C) or approximately one-tenth the

---

[1]

In Ahlborn, the Plaintiff's entire claim was reasonably valued at $3,040,708.12.  The States' Medicaid plan paid $215,645.30 for medical costs on Plaintiff's behalf.  The Plaintiff's case settled for $550,000.00.  Medicaid asserted its lien for the entire amount of $215,645.30.  The United States Supreme Court reversed and held that since the actual settlement amount was approximately one-sixth of the reasonable settlement value, then Medicaid was entitled to reimbursement of one-sixth of the total lien amount or $35,581.47, which amount constituted reimbursement for the medical payments made.

2

amount of the actual settlement amount.

Therefore, of the total Medicare lien amount of $46,823.54 Plaintiff by law must therefore reimburse Medicare $4,700.00

6.    The appropriate Medicaid representative will be given notice of this hearing to address this issue and will be invited to attend.

7.    Wherefore, premises considered, Plaintiff requests that this Honorable Court set this matter for a hearing and upon such hearing with proper notice to Medicare, that this Honorable Court hold and therefore Order Plaintiff to reimburse Medicare out of Plaintiff's settlement monies, the amount of $4,700.00.

Respectfully submitted,

**CARRIGAN & ANDERSON, P.L.L.C.**

By:     /s/Stephen P. Carrigan
**STEPHEN P. CARRIGAN**
State Bar No. 03877000
**DAVID M. ANDERSON**
State Bar No. 24064815
101 North Shoreline Blvd., Suite 420
Corpus Christi, Texas 78401
(361) 884-4433
(361) 884-4434 (Facsimile)
scarrigan@ccatriallaw.com
danderson@ccatriallaw.com
**ATTORNEYS FOR PLAINTIFF**

3

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served in accordance with the applicable rules by hand delivery, facsimile transmission, regular mail, and/or certify mail, return receipt requested to the following counsel of record on _____day of March, 2017.

Mr. Todd Taylor
Johanson & Fairless, LLP
1456 First Colony Blvd
Sugar Land, Texas 77479

MSPRC – NGHP                              *Via CM/RRR*
P. O. Box 138832                          *and Facsimile 405.869.3309*
Oklahoma City, Oklahoma 73113

/s/Stephen P. Carrigan
Stephen P. Carrigan

4

CAUSE NO. 22181

| | | |
|---|---|---|
| TOMAS R. TIJERINA | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 411th  JUDICIAL DISTRICT |
| | § | |
| SHOEL BRASHEAR TRUCKING, | § | |
| LLC AND CARLTON J. MULDER | § | TRINITY COUNTY, TEXAS |

## AFFIDAVIT OF STEPHEN P. CARRIGAN

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF _____ | § |

BEFORE ME, the undersigned authority, on this day personally appeared STEPHEN P. CARRIGAN who under oath stated as follows:

My name is Stephen P. Carrigan.  I am over twenty-one (21) years of age and am of sound mind and mental capacity to make this Affidavit, which is true and correct.

I have never been convicted of a felony and I am in all things capable and qualified to make this sworn statement.

I am a licensed attorney in the State of Texas.  I have been practicing law in the State of Texas and successfully in the Texas area for 20 years.  I have been a civil trial specialist for this period.  Attached hereto as Exhibit D is a copy of my professional resume.

As a trial attorney in the Corpus Christi, Texas area, I am familiar with the damage values of cases of this type.   Further, I have reviewed all of the pertinent file materials.   Based on this, it is my professional opinion that the reasonable value of Tomas Tijerina's damages in this case is $470,000.00."

FURTHER AFFIANT SAYETH NOT

Stephen P. Carrigan



SUBSCRIBED AND SWORN BEFORE ME on this **16th** day of March _____, 2017.

Notary Public, State of Texas

WENDY GAYLE WATSON,
My Commission Expires
June 28, 2017

My Commission Expires:

_____

CAUSE NO. 22181

| | | |
|---|---|---|
| TOMAS R. TIJERINA | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 411ᵗʰ JUDICIAL DISTRICT |
| | § | |
| SHOEL BRASHEAR TRUCKING, | § | |
| LLC AND CARLTON J. MULDER | § | TRINITY COUNTY, TEXAS |

## ORDER GRANTING PLAINTIFF'S MOTION TO DETERMINE THE PORTION OF PLAINTIFF'S SETTLEMENT MONIES THAT CONSTITUTE REIMBURSEMENT FOR MEDICAL PAYMENTS MADE

On the _____ day of _____, 2017, the Court heard the Plaintiff's Motion to Determine the Portion of Plaintiff's Settlement Monies that Constitute Reimbursement for Medical Payments Made filed in this cause by Plaintiff, TOMAS TIJERINA. All parties appeared by and through their respective counsel. After examining the pleadings and summary judgment evidence, and hearing the arguments of counsel, the court is of the opinion and finds that the Plaintiff, TOMAS TIJERINA, is entitled to Summary Judgment on Defendant's claim for recovery of judgment and costs of court.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion to Determine the Portion of Plaintiff's Settlement Monies that Constitute Reimbursement for Medical Payments Made and the same is hereby granted in favor of Plaintiff TOMAS TIJERINA and that Medicare be repaid the amount of $_____ from Plaintiff's settlement funds.

SIGNED this the _____ day of _____, 2017.

_____
JUDGE PRESIDING

# EXHIBIT A
# MEDICARE'S ITEMIZATION

20170331 109228847 016 0103 1 P
15033117-0003676



# Payment Summary Form



Report Number: RMCAN - 5-5

Contractor: NGHP

Beneficiary Name: TUERINA, TOMAS R

Beneficiary HICN:

Case ID:
Case Type: L – Liability
Date of Incident: 04/13/2014

Date: 05/30/2016
Time: 06:16:23
Page 5 of 7

| TOS | ICN | Line # | Processing Contractor | Provider Name | ICD Indicator | Diagnosis Codes | From Date | To Date | Total Charges | Reimburse Amount | Conditional Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 60 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 86903, E8120, V4987, 3159, 51881, 80709, 81000, 8300, 8600, 86803 | 04/13/2014 | 04/19/2014 | $87,253.76 | $38,585.92 | $38,585.92 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | V0382, E8120, V4987, 3159, 51881, 80709, 81000, 8500, 8600, 86803 | 04/19/2014 | 04/19/2014 | $76.00 | $51.58 | $51.58 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 80709 | 04/28/2014 | 04/28/2014 | $356.00 | $42.75 | $42.75 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 81000, 86500 | 04/28/2014 | 04/28/2014 | $34.10 | $68.97 | $34.10 |



MAR/30/2017/THU 05:09 PM   C,C,& A   PLLC   FAX No. 713-72   P. 012
20170331 109228847 016 0104 1
15033117-0003676





CMS — Centers for Medicare & Medicaid Services

COB&R — Coordination of Benefits and Recovery

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 71 | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 81000 | 04/30/2014 | 04/30/2014 | $137.50 | $111.72 | $111.72 |
| 40 | 0 | 04011 | HUNTSVILLE MEMORIAL HOSPITAL | ICD-9 | 78909, 3051, 4019 | 08/26/2014 | 08/26/2014 | $7,370.01 | $578.80 | $578.80 |
| 40 | 001 | 04412 | PHI INC | ICD-9 | 86509, E8120, 810X0, 8604 | 04/13/2014 | 04/13/2014 | $22,184.00 | $3,881.25 | $3,881.25 |
| 71 | 001 | 04412 | PHI INC | ICD-9 | 86509, E8120, 810X0, 8604 | 04/13/2014 | 04/13/2014 | $22,184.00 | $0.00 | |
| 71 | 002 | 04412 | PHI INC | ICD-9 | 86509, E8120, 810X0, 8604 | 04/13/2014 | 04/13/2014 | $13,949.00 | $1,268.96 | $1,268.96 |
| 71 | 001 | 04412 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $409.00 | $132.92 | $132.92 |
| 71 | 001 | 04412 | FLIPPIN, NICHOLAS W | ICD-9 | 8150X | 04/13/2014 | 04/13/2014 | $318.00 | $29.62 | $29.62 |
| 71 | 001 | 04412 | FLIPPIN, NICHOLAS W | ICD-9 | 9590I | 04/13/2014 | 04/13/2014 | $254.00 | $24.58 | $24.58 |
| 71 | 001 | 04412 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $2,000.00 | $264.37 | $264.37 |
| 71 | 002 | 04412 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | 003 | 04412 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | 004 | 04412 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | 001 | 04412 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $2,715.00 | $880.52 | $880.52 |
| 71 | 002 | 04412 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $566.00 | $95.35 | $95.35 |
| 71 | 003 | 04412 | STEINES, MICHAEL | ICD-9 | 86504, 9584 | 04/13/2014 | 04/13/2014 | $499.00 | $0.00 | $0.00 |
| 71 | 001 | 04412 | HYMAN, BENJAMIN | ICD-9 | V5881, V58882, 80709 | 14/13/2014 | 04/13/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | NAM, JERRY 1 | ICD-9 | 91911 | 04/13/2014 | 04/13/2014 | $43.00 | $0.00 | $0.00 |
| 71 | 002 | 04412 | NAM, JERRY 1 | ICD-9 | 95911 | 04/13/2014 | 04/13/2014 | $7.09 | $7.09 | $7.09 |







| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 71 | 001 | 04412 | PICKETT, BRYAN | ICD-9 | 86509, 78650, 78909, 8802 | 04/13/2014 | $1,216.00 | $170.99 |
| 71 | 001 | 04412 | NAM, JERRY I | ICD-9 | 99911 | 04/13/2014 | $43.00 | $7.09 |
| 71 | 001 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/14/2014 | $510.00 | $167.57 |
| 71 | 002 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/15/2014 | $510.00 | $167.57 |
| 71 | 003 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/16/2014 | $53.92 | $53.92 |
| 71 | 004 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/17/2014 | $53.92 | $53.92 |
| 71 | 001 | 04412 | APPELT, ERICA | ICD-9 | V5882 | 04/15/2014 | $43.00 | $7.09 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 99911 | 04/15/2014 | $43.00 | $7.09 |
| 71 | 001 | 04412 | APPELT, ERICA | ICD-9 | 80709, V5882 | 04/16/2014 | $43.00 | $7.09 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 99911, 80709 | 04/17/2014 | $43.00 | $7.09 |
| 71 | 001 | 04412 | DEBERRY-CARLISLE, A P | ICD-9 | 80706 | 04/17/2014 | $170.00 | $55.02 |
| 71 | 002 | 04412 | DEBERRY-CARLISLE, A P | ICD-9 | 80706 | 04/18/2014 | $170.00 | $55.02 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 99911 | 04/18/2014 | $43.00 | $7.09 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 99911 | 04/19/2014 | $43.00 | $7.09 |
| 71 | 001 | 04412 | KASH, FREDERICK F | ICD-9 | 78309, V5882 | 04/28/2014 | $48.00 | $8.47 |
| 71 | 001 | 04412 | BRAZEAL, JUSTIN R | ICD-9 | 81000 | 04/30/2014 | $79.65 | $38.28 |
| 71 | 002 | 04412 | BRAZEAL, JUSTIN R | ICD-9 | 81000 | 04/30/2014 | $32.85 | $6.53 |

Sum of Total Charges: $163,623.87

Total Conditional Charges: $46,823.54

# EXHIBIT B

## ARKANSAS DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL V. HEIDI AHLBORN, 547 U.S. 268, 126 S.CT. 178 (2006)

*Arkansas Department of Health and Human Services, et al v. Heidi Ahlborn,*
547 U.S. 268, 126 s. Ct. 1752 (2006)

2. Arkansas Dept. of Health and Human Services v. Ahlborn
547 U.S. 258, 126 S.Ct. 1752
U.S.,2006.
May 01, 2006 (Approx. 14 pages)

547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459, 74 USLW 4214, Med & Med GD (CCH) P
301,841, 06 Cal. Daily Op. Serv. 3597, 2006 Daily Journal D.A.R. 5159, 19 Fla. L. Weekly Fed.
B 169

2. Briefs and Other Related Documents

Supreme Court of the United States

ARKANSAS DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., Petitioners,
v.
Heidi AHLBORN.

No. 04-1506.

Argued Feb. 27, 2006.
Decided May 1, 2006.

Background: Medicaid recipient sued Arkansas Department of Human Services (ADHS), challenging ADHS's assertion of claim or lien against proceeds received by recipient in settlement of personal injury lawsuit. The United States District Court for the Eastern District of Arkansas, 280 F.Supp.2d 881, G. Thomas Eisele, J., granted state's motion for summary judgment, and appeal was taken. The Court of Appeals, 397 F.3d 620, Colloton, Circuit Judge, reversed. Certiorari was granted.

Holdings: The Supreme Court, Justice Stevens, held that:

(1) Arkansas statute automatically imposing lien in favor of ADHS on tort settlement proceeds was not authorized by federal Medicaid law, to extent that statute allowed encumbrance or attachment of proceeds meant to compensate recipient for damages distinct from medical costs, and

(2) anti-lien provision of federal Medicaid law precluded Arkansas statute's encumbrance or attachment of proceeds related to damages other than medical costs; Arkansas Dept. of Human Servs. v. Ferrel, 336 Ark. 297, 984 S.W.2d 807.

Affirmed.

West Headnotes

[1] KeyCite Notes

198H Health

198HIII Government Assistance
198HIII(B) Medical Assistance in General; Medicaid
198Hk490 Recovery Back or Recoupment of Payments
198Hk497 k. Settlements or Judgments, Recovery From. Most Cited Cases

Arkansas statute automatically imposing lien in favor of Arkansas Department of Human Services (ADHS) on tort settlement proceeds obtained by Medicaid recipient in amount equal to Medicaid's costs, to extent that statute allowed encumbrance or attachment of proceeds meant to compensate recipient for damages distinct from medical costs, was not authorized by federal Medicaid law; although third-party liability provisions of Medicaid law required recipients, as a condition of eligibility, to assign the state any rights to payment for medical care from any third party, such provisions did not address assignment of payment for lost wages or other damages. Social Security Act, § 1912(a)(1)(A), 42 U.S.C.A. § 1396k(a)(1)(A); West's A.C.A. § 20-77-307(a, c).

[2] KeyCite Notes

198H Health
198HIII Government Assistance
198HIII(B) Medical Assistance in General; Medicaid
198Hk490 Recovery Back or Recoupment of Payments
198Hk497 k. Settlements or Judgments, Recovery From. Most Cited Cases

Provision of federal Medicaid law prohibiting states from placing liens against a Medicaid recipient precluded Arkansas statute, which automatically imposed lien in favor of Arkansas Department of Human Services (ADHS) on tort settlement proceeds obtained by Medicaid recipient in amount equal to Medicaid's costs, from operating to encumber or attach proceeds meant to compensate recipient for damages distinct from medical costs; abrogating *Arkansas Dept. of Human Servs. v. Ferrel*, 336 Ark. 297, 984 S.W.2d 807. Social Security Act, §§ 1902(a)(18), 1917, 42 U.S.C.A. §§ 1396a(a)(18), 1396p; West's A.C.A. § 20-77-307(a, c).

[2] KeyCite Notes

198H Health
198HIII Government Assistance
198HIII(B) Medical Assistance in General; Medicaid
198Hk490 Recovery Back or Recoupment of Payments
198Hk497 k. Settlements or Judgments, Recovery From. Most Cited Cases

Settlement proceeds received by Medicaid recipient in tort action, upon which lien was imposed in favor of Arkansas Department of Human Services (ADHS) under Arkansas statute, were recipient's property rather than property of the state, and therefore, lien violated federal Medicaid law's anti-lien provision, despite fact that Arkansas statute required recipient, when applying for medical assistance, to assign to ADHS any right to settlement or award as a condition of eligibility for Medicaid; recipient retained her entire chose in action until judgment, so that lien

did not attach until proceeds materialized and were in recipient's possession. Social Security Act, § 1917, 42 U.S.C.A. § 1396p; West's A.C.A. § 20-77-307(a, c).

[4] KeyCite Notes

198H Health
198HIII Government Assistance
198HIII(B) Medical Assistance in General; Medicaid
198Hk490 Recovery Back or Recoupment of Payments
198Hk497 k. Settlements or Judgments, Recovery From. Most Cited Cases

Medicaid recipient's settlement of tort action without judicial oversight or involvement of Arkansas Department of Human Services (ADHS), which had lien on settlement proceeds under Arkansas statute, did not breach any duty of recipient to cooperate, or create exception to federal Medicaid statute's anti-lien provision, as would allow state to impose the lien on damages not related to medical costs; ADHS, despite having intervened in tort action, was not involved in and did not ask to be involved in settlement negotiations. Social Security Act, § 1917, 42 U.S.C.A. § 1396p; West's A.C.A. § 20-77-307(a, c).

West Codenotes

Limited on Preemption Grounds
West's A.C.A. § 20-77-307(a, c).

*258 **1753 Syllabus FN*

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

Federal Medicaid law requires participating States to "ascertain the legal liability of third parties ... to pay for [an individual benefits recipient's] care and services available under the [State's] plan," 42 U.S.C. § 1396a(a)(25)(A); to "seek reimbursement for [medical] assistance to the extent of such legal liability," **1754 § 1396a(a)(25)(B); to enact "laws under which, to the extent that payment has been made ... for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services," § 1396a(a)(25)(H); to "provide that, as a condition of [Medicaid] eligibility ..., the individual is required ..., (A) to assign the State any rights ... to payment for medical care from any third party; ..., (B) to cooperate with the State ... in obtaining [such] payments ..., and ... (C) ... in identifying, and providing information to assist the State in pursuing, any third party who may be liable," § 1396k(a)(1). Finally, "any amount collected by the State under an assignment made" as described above "shall be retained by the State ... to reimburse it for [Medicaid] payments made on behalf of" the recipient. § 1396k(b). "[T]he remainder of such amount collected shall be paid" to the recipient. *Ibid.* Acting pursuant

to its understanding of these provisions, Arkansas passed laws under which, when a state Medicaid recipient obtains a tort settlement following payment of medical costs on her behalf, a lien is automatically imposed on the settlement in an amount equal to Medicaid's costs. When that amount exceeds the portion of the settlement representing medical costs, satisfaction of the State's lien requires payment out of proceeds meant to compensate the recipient for damages distinct from medical costs, such as pain and suffering, lost wages, and loss of future earnings.

Following respondent Ahlborn's car accident with allegedly negligent third parties, petitioner Arkansas Department of Health Services (ADHS) determined that Ahlborn was eligible for Medicaid and paid providers $215,645.30 on her behalf. She filed a state-court suit against the alleged tortfeasors seeking damages for past medical costs and for *269 other items including pain and suffering, loss of earnings and working time, and permanent impairment of her future earning ability. The case was settled out of court for $550,000, which was not allocated between categories of damages. ADHS did not participate or seek to participate in the settlement negotiations, and did not seek to reopen the judgment after the case was dismissed, but did intervene in the suit and assert a lien against the settlement proceeds for the full amount it had paid for Ahlborn's care. She filed this action in Federal District Court seeking a declaration that the State's lien violated federal law insofar as its satisfaction would require depletion of compensation for her injuries other than past medical expenses. The parties stipulated, *inter alia*, that the settlement amounted to approximately one-sixth of the reasonable value of Ahlborn's claim and that, if her construction of federal law was correct, ADHS would be entitled to only the portion of the settlement ($35,581.47) that constituted reimbursement for medical payments made. In granting ADHS summary judgment, the court held that under Arkansas law, which it concluded did not conflict with federal law, Ahlborn had assigned ADHS her right to recover the full amount of Medicaid's payments for her benefit. The Eighth Circuit reversed, holding that ADHS was entitled only to that portion of the settlement that represented payments for medical care.

*Held:* Federal Medicaid law does not authorize ADHS to assert a lien on Ahlborn's settlement in an amount exceeding $35,581.47, and the federal anti-lien provision affirmatively prohibits it from doing so. Arkansas' third-party liability provisions are unenforceable insofar as they compel a different conclusion. Pp. 1760–1767.

**1755 (a) Arkansas' statute finds no support in the federal third-party liability provisions. That ADHS cannot claim more than the portion of Ahlborn's settlement that represents medical expenses is suggested by § 1396k(a)(1)(A), which requires that Medicaid recipients, as a condition of eligibility, "assign the State any rights ... *to payment for medical care* from any third party" (emphasis added), not their rights to payment for, e.g., lost wages. The other statutory language ADHS relies on is not to the contrary, but reinforces the assignment provision's implicit limitation. That statutory context shows that § 1396a(a)(25)(B)'s requirement that States "seek reimbursement for [medical] assistance *to the extent of such legal liability*" refers to "the legal liability of third parties ... *to pay for care and services available under the plan*," § 1396a(a)(25)(A) (emphases added). Here, because the tortfeasors accepted liability for only one-sixth of Ahlborn's overall damages, and ADHS has stipulated that only $35,581.47 of that sum represents compensation for medical expenses, the relevant "liability" extends no further *270 than that amount. Second, § 1396a(a)(25)(H)'s requirement that the State enact laws giving it the

right to recover from liable third parties "to the extent [it made] payment ... for medical assistance for health care items or services furnished to an individual" does not limit the State's recovery only by the amount it paid out on the recipient's behalf, since the rest of the provision makes clear that the State must be assigned "the rights of [the recipient] to payment by any other party *for such health care items or services.*" (Emphasis added.) Finally, § 1396k(b)'s requirement that, where the State actively pursues recovery from the third party, Medicaid be reimbursed fully from "any amount collected by the State under an assignment" before "the remainder of such amount collected" is remitted to the recipient does not show that the State must be paid in full from any settlement. Rather, because the State's assigned rights extend only to recovery of medical payments, what § 1396(b) requires is that the State be paid first out of any damages for medical care before the recipient can recover any of her own medical costs. Pp. 1760–1762.

(b) Arkansas' statute squarely conflicts with the federal Medicaid law's anti-lien provision, § 1396p(a)(1), which prohibits States from imposing liens "against the property of any individual prior to his death on account of medical assistance paid ... on his behalf under the State plan." Even if the State's lien is assumed to be consistent with federal law insofar as it encumbers proceeds designated as medical payments, the anti-lien provision precludes attachment or encumbrance of the remainder of the settlement. ADHS' attempt to avoid the anti-lien provision by characterizing the settlement proceeds as not Ahlborn's "property," but as the State's, fails for two reasons. First, because the settlement is not "received from a third party," as required by the state statute, until Ahlborn's chose in action has been reduced to proceeds in her possession, the assertion that any of the proceeds belonged to the State all along lacks merit. Second, the State's argument that Ahlborn lost her property rights in the proceeds the instant she applied for medical assistance is inconsistent with the creation of a statutory lien on those proceeds: ADHS would not need a lien on its own property. Pp. 1762–1764.

(c) The Court rejects as unpersuasive ADHS' and the United States' arguments that a rule permitting a lien on more than medical damages ought to apply here either because Ahlborn breached her duty to "cooperate" with ADHS or because there [**1755] is an inherent danger of manipulation in cases where the parties to a tort case settle without judicial oversight or input from the State. As § 1396k(a)(1)(C) demonstrates, the duty to cooperate arises principally, if not exclusively, in proceedings initiated *by the State* to recover from third parties. In any event, the [**271] aspersions cast upon Ahlborn are entirely unsupported; all the record reveals is that ADHS neither asked to be nor was involved in the settlement negotiations. Whatever the bounds of the duty to cooperate, there is no evidence that it was breached here. Although more colorable, the alternative argument that a rule of full reimbursement is needed generally to avoid the risk of settlement manipulation also fails. The risk that parties to a tort suit will allocate away the State's interest can be avoided either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision. Pp. 1764–1765.

(d) Also rejected is ADHS' contention that the Eighth Circuit accorded insufficient weight to two decisions by the Departmental Appeals Board (Board) of the federal Department of Health and Human Services (HHS) rejecting appeals by two States from denial of reimbursement for costs they paid on behalf of Medicaid recipients who had settled tort claims. Although HHS generally has broad regulatory authority in the Medicaid area, the Court declines to treat the Board's

reasoning in those cases as controlling because they address a different question from the one posed here, make no mention of the anti-lien provision, and rest on a questionable construction of the federal third-party liability provisions. Pp. 1765-1767.

397 F.3d 620, affirmed.

STEVENS, J., delivered the opinion for a unanimous Court.

Lori Freno, for petitioners.

Patricia A. Millett, for United States as amicus curiae, by special leave of the Court, supporting the petitioners.

H. David Blair, for respondent.

Mike Beebe, Arkansas Attorney General, Lori Freno, Assistant Attorney General, Counsel of Record, Little Rock, AR, Attorneys for Petitioners Arkansas Department of Health and Human Services, et al.

H. David Blair, Attorney at Law, Batesville, AR, Counsel of Record, Phillip Farris, Attorney at Law, Batesville, AR, Attorneys for Respondent Heidi Ahlborn.

Justice STEVENS delivered the opinion of the Court.

*272 When a Medicaid recipient in Arkansas obtains a tort settlement following payment of medical costs on her behalf by Medicaid, Arkansas law automatically imposes a lien on the settlement in an amount equal to Medicaid's costs. When that amount exceeds the portion of the settlement that represents medical costs, satisfaction of the State's lien requires payment out of proceeds meant to compensate the recipient for damages distinct from medical costs—like pain and suffering, lost wages, and loss of future earnings. The Court of Appeals for the Eighth Circuit held that this statutory lien contravened federal law and was therefore unenforceable. *Ahlborn v. Arkansas Dept. of Human Servs.*, 397 F.3d 620 (2005). Other courts have upheld similar lien provisions. See, e.g., *Houghton v. Dept. of Health*, 2002 UT 101, 57 P.3d 1067; **1757 *Wilson v. Washington*, 142 Wash.2d 40, 10 P.3d 1061 (2000) (en banc). We granted certiorari to resolve the conflict, 545 U.S. 1165, 126 S.Ct. 35, 162 L.Ed.2d 933 (2005), and now affirm.

I

On January 2, 1996, respondent Heidi Ahlborn, then a 19-year-old college student and aspiring teacher, suffered severe*273 and permanent injuries as a result of a car accident. She was left brain damaged, unable to complete her college education, and incapable of pursuing her chosen career. Although she possessed a claim of uncertain value against the alleged tortfeasors who caused her injuries, Ahlborn's liquid assets were insufficient to pay for her medical care. Petitioner Arkansas Department of Health Services (ADHS) accordingly determined that she was eligible for medical assistance and paid providers $215,645.30 on her behalf under the State's

Medicaid plan.

ADHS required Ahlborn to complete a questionnaire about her accident, and sent her attorney periodic letters advising him about Medicaid outlays. These letters noted that, under Arkansas law, ADHS had a claim to reimbursement from "any settlement, judgment, or award" obtained by Ahlborn from "a third party who may be liable for" her injuries, and that no settlement "shall be satisfied without first giving [ADHS] notice and a reasonable opportunity to establish its interest." [FN1] ADHS has never asserted, however, that Ahlborn has a duty to reimburse it out of any other subsequently acquired assets or earnings.

FN1. Affidavit of Wayne E. Olive, Exhs. 5 and 6 (Mar. 6, 2003).

On April 11, 1997, Ahlborn filed suit against two alleged tortfeasors in Arkansas state court seeking compensation for the injuries she sustained in the January 1996 car accident. She claimed damages not only for past medical costs, but also for permanent physical injury; future medical expenses; past and future pain, suffering, and mental anguish; past loss of earnings and working time; and permanent impairment of the ability to earn in the future.

ADHS was neither named as a party nor formally notified of the suit. Ahlborn's counsel did, however, keep ADHS informed of details concerning insurance coverage as they became known during the litigation.

*274 In February 1998, ADHS intervened in Ahlborn's lawsuit to assert a lien on the proceeds of any third-party recovery Ahlborn might obtain. In October 1998, ADHS asked Ahlborn's counsel to notify the agency if there was a hearing in the case. No hearing apparently occurred, and the case was settled out of court sometime in 2002 for a total of $550,000. The parties did not allocate the settlement between categories of damages. ADHS did not participate or ask to participate in settlement negotiations. Nor did it seek to reopen the judgment after the case had been dismissed. ADHS did, however, assert a lien against the settlement proceeds in the amount of $215,645.30--the total cost of payments made by ADHS for Ahlborn's care.

On September 30, 2002, Ahlborn filed this action in the United States District Court for the Eastern District of Arkansas seeking a declaration that the lien violated the federal Medicaid laws insofar as its satisfaction would require depletion of compensation for injuries other than past medical expenses. To facilitate the District Court's resolution of the legal questions presented, the parties stipulated that Ahlborn's entire claim was reasonably valued at $3,040,708.18; that the settlement amounted to approximately one-sixth of that sum; and that, if Ahlborn's construction **1758 of federal law was correct, ADHS would be entitled to only the portion of the settlement ($35,581.47) that constituted reimbursement for medical payments made. See App. 17-20.

Ruling on cross-motions for summary judgment, the District Court held that under Arkansas law, which it concluded did not conflict with federal law, Ahlborn had assigned to ADHS her right to any recovery from the third-party tortfeasors to the full extent of Medicaid's payments for her benefit. Accordingly, ADHS was entitled to a lien in the amount of $215,645.30.

*275 The Eighth Circuit reversed. It held that ADHS was entitled only to that portion of the judgment that represented payments for medical care. For the reasons that follow, we affirm.

II

The crux of the parties' dispute lies in their competing constructions of the federal Medicaid laws. The Medicaid program, which provides joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs, was launched in 1965 with the enactment of Title XIX of the Social Security Act (SSA), as added 79 Stat. 343, 42 U.S.C. § 1396 et seq. (2000 ed. and Supp. III). Its administration is entrusted to the Secretary of Health and Human Services (HHS), who in turn exercises his authority through the Centers for Medicare and Medicaid Services (CMS).[FN1]

> FN1. Until 2001, CMS was known as the Health Care Financing Administration or HCFA. See 66 Fed.Reg. 35437.

States are not required to participate in Medicaid, but all of them do. The program is a cooperative one; the Federal Government pays between 50% and 83% of the costs the State incurs for patient care,[FN2] and, in return, the State pays its portion of the costs and complies with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program. See § 1396a.

> FN2. The exact percentage of the federal contribution is calculated pursuant to a formula keyed to each State's per capita income. See 42 U.S.C. § 1396d(b).

One such requirement is that the state agency in charge of Medicaid (here, ADHS) "take all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the plan." § 1396a(a)(25)(A) *276 (2000 ed.).[FN3] The agency's obligation extends beyond mere identification, however:

> FN3. A "third party" is defined by regulation as "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan." 42 CFR § 433.136 (2005).

"In any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability." § 1396a(a)(25)(B). To facilitate its reimbursement from liable third parties, the State must,

"to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, [have] in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to **1759 have acquired the rights of such individual to payment by any other party for such health care items or services." § 1396a(a)(25)(H).

The obligation to enact assignment laws is reiterated in another provision of the SSA, which reads as follows:

"(a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall-

"(1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who [277] has the legal capacity to execute an assignment for himself, the individual is required-

"(A) to assign the State any rights ... to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party;

"(B) to cooperate with the State ... in obtaining support and payments (described in paragraph (A)) for himself ...; and

"(C) to cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan ...." § 1396k(a).

Finally, "any amount collected by the State under an assignment made" as described above "shall be retained by the State as is necessary to reimburse it for medical assistance payments made in behalf of" the Medicaid recipient. § 1396k(b). "[T]he remainder of such amount collected shall be paid" to the recipient. *Ibid.*

Acting pursuant to its understanding of these third-party liability provisions, the State of Arkansas passed laws that purport to allow both ADHS and the Medicaid recipient, either independently or together, to recover "the cost of benefits" from third parties. Ark.Code Ann. §§ 20-77-301 through 20-77-309 (2001). Initially, "[a]s a condition of eligibility" for Medicaid, an applicant "shall automatically assign his or her right to any settlement, judgment, or award which may be obtained against any third party to [ADHS] to the full extent of any amount which may be paid by Medicaid for the benefit of the applicant." § 20-77-307(a). Accordingly, "[w]hen medical assistance benefits are provided" to the recipient "because of injury, disease, or disability for which another person is liable," ADHS "shall have a right to recover from the person the cost of benefits so provided." *278 § 20-77-301(a). [FN1] ADHS' suit "shall" not, however, "be a bar to any action upon the claim or cause of action of the recipient." § 20-77-301(b). Indeed, the statute envisions that the recipient will sometimes sue together with ADHS, see § 20-77-303, or even alone. If the latter, the assignment described in § 20-77-307(a) "shall be considered a statutory lien on any settlement, judgment, or award received ... from a third party," § 20-77-307(c); see also § 20-77-302(a) ("When an action or claim is brought by a medical assistance recipient ..., any settlement, judgment, or award obtained is subject to the division's claim for reimbursement of the benefits provided to the recipient under **1760 the medical assistance program"). [FN2]

FN1. Under the Arkansas statute, ADHS' right to recover medical costs appears to be broader than that of the recipient. When ADHS sues, "no contributory or comparative

fault of a recipient shall be attributed to the state, nor shall any restitution awarded to the state be denied or reduced by any amount or percentage of fault attributed to a recipient." § 20-77-301(d)(1) (2001).

FN6. The Arkansas Supreme Court has held that ADHS has an independent, nonderivative right to recover the cost of benefits from a third-party tortfeasor under § 20-77-301 even when the Medicaid recipient also sues for recovery of medical expenses. See *National Bank of Commerce v. Quirk,* 323 Ark. 769, 782-794, 918 S.W.2d 138, 151-152 (1996).

The State, through this statute, claims an entitlement to more than just that portion of a judgment or settlement that represents payment for medical expenses. It claims a right to recover the entirety of the costs it paid on the Medicaid recipient's behalf. Accordingly, if, for example, a recipient sues alone and settles her entire action against a third-party tortfeasor for $20,000, and ADHS has paid that amount or more to medical providers on her behalf, ADHS gets the whole settlement and the recipient is left with nothing. This is so even when the parties to the settlement allocate damages between medical costs, on the one hand, and other injuries like lost wages, on the other. The same rule also *279 would apply, it seems, if the recovery were the result not of a settlement but of a jury verdict. In that case, under the Arkansas statute, ADHS could recover the full $20,000 in the face of a jury allocation of, say, only $10,000 for medical expenses.[FN7]

FN7. ADHS denies that it would actually demand the full $20,000 in such a case, see Brief for Petitioners 49, n. 15, but points to no provision of the Arkansas statute that would prevent it from doing so.

That this is what the Arkansas statute requires has been confirmed by the State's Supreme Court. In *Arkansas Dept. of Human Servs. v. Ferrel,* 336 Ark. 297, 984 S.W.2d 807 (1999), the court refused to endorse an equitable, contextual interpretation of the statute. Rejecting a Medicaid recipient's argument that he ought to retain some of a settlement that was insufficient to cover both his and Medicaid's expenses, the court explained:

"Given the clear, unambiguous language of the statute, it is apparent that the legislature intended that ADHS's ability to recoup Medicaid payments from third parties or recipients not be restricted by equitable subrogation principles such as the 'made whole' rule stated in [*Franklin v. Healthsource of Arkansas,* 328 Ark. 163, 942 S.W.2d 837 (1997) ]. By creating an automatic legal assignment which expressly becomes a statutory lien, [Ark.Code Ann. § 20-77-307 (1991) ] makes an unequivocal statement that the ADHS's ability to recover Medicaid payments from insurance settlements, if it so chooses, is superior to that of the recipient even when the settlement does not pay all the recipient's medical costs." *Id.* at 308, 984 S.W.2d, at 811.

Accordingly, the Arkansas statute, if enforceable against Ahlborn, authorizes imposition of a lien on her settlement proceeds in the amount of $215,645.30. Ahlborn's argument before the District Court, the Eighth Circuit, and this Court *280 has been that Arkansas law goes too far. We agree. Arkansas' statute finds no support in the federal third-party liability provisions, and in fact squarely conflicts with the anti-lien provision of the federal Medicaid laws.

III

[1] We must decide whether ADHS can lay claim to more than the portion of Ahlborn's settlement that represents medical expenses.[FN4] The text of the federal **1761 third-party liability provisions suggests not; it focuses on recovery of payments for medical care. Medicaid recipients must, as a condition of eligibility, "assign the State any rights ... *to payment for medical care from any third party*," 42 U.S.C. § 1396k(a)(1)(A) (emphasis added), not rights to payment for, for example, lost wages. The other statutory language that ADHS relies upon is not to the contrary; indeed, it reinforces the limitation implicit in the assignment provision.

FN4. The parties here assume, as do we, that a State can fulfill its obligations under the federal third-party liability provisions by requiring an "assignment" of part of, or placing a lien on, the settlement that a Medicaid recipient procures on her own. Cf. §§ 1396k(a)(B)-(C) (the recipient has a duty to identify liable third parties and to "provid[e] information to *assist the State in pursuing*" those parties (emphasis added)).

First, ADHS points to § 1396a(a)(25)(B)'s requirement that States "seek reimbursement for [medical] assistance *to the extent of such legal liability*" (emphasis added) and suggests that this means that the entirety of a recipient's settlement is fair game. In fact, as is evident from the context of the emphasized language, "such legal liability" refers to "the legal liability of third parties ... *to pay for care and services available under the plan.*" § 1396a(a)(25)(A) (emphasis added). Here, the tortfeasor has accepted liability for only one-sixth of the recipient's overall damages, and ADHS has stipulated that only $35,581.47 of that sum represents compensation for medical expenses. Under the circumstances, **281 the relevant "liability" extends no further than that amount.[FN5]

FN5. The effect of the stipulation is the same as if a trial judge had found that Ahlborn's damages amounted to $3,040,708.12 (of which $215,645.30 were for medical expenses), but because of her contributory negligence, she could only recover one-sixth of those damages.

Second, ADHS argues that the language of § 1396a(a)(25)(H) favors its view that it can demand full reimbursement of its costs from Ahlborn's settlement. That provision, which echoes the requirement of a mandatory assignment of rights in § 1396k(a), says that the State must have in effect laws that, "to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual," give the State the right to recover from liable third parties. This must mean, says ADHS, that the agency's recovery is limited only by the amount it paid out on the recipient's behalf and not by the third-party tortfeasor's particular liability for medical expenses. But that reading ignores the rest of the provision, which makes clear that the State must be assigned "the rights of [the recipient] to payment by any other party *for such health care items or services*," § 1396a(a)(25)(H) (emphasis added). Again, the statute does not sanction an assignment of rights to payment for anything other than medical expenses—not lost wages, not pain and suffering, not an inheritance.

Finally, ADHS points to the provision requiring that, where the State actively pursues recovery from the third party, Medicaid be reimbursed fully from "any amount collected by the State under an assignment" before "the remainder of such amount collected" is remitted to the recipient. §

1396k(b). In ADHS' view, this shows that the State must be paid in full from any settlement. See Brief for Petitioners 13. But, even assuming the provision applies in cases where the State does not actively participate in the litigation, ADHS' conclusion rests on a false premise: The "amount recovered ... under an assignment" is not, as ADHS assumes, the entire settlement; as explained above, under the federal statute the State's assigned rights extend only to recovery of payments *[*]1752 for medical care. Accordingly, what § 1396k(b) requires is that the State be paid first out of any damages representing payments for medical care before the recipient can recover any of her own costs for medical care.[FN9]

> FN10. Implicit in ADHS' interpretation of this provision is the assumption that there can be no "remainder" to remit to the Medicaid recipient if all the State has been assigned is the right to damages for medical expenses. That view in turn seems to rest on an assumption either that Medicaid will have paid all the recipient's medical expenses or that Medicaid's expenses will always exceed the portion of any third-party recovery earmarked for medical expenses. Neither assumption holds up. First, as both the Solicitor General and CMS acknowledge, the recipient often will have paid medical expenses out of her own pocket. See Brief for United States as Amicus Curiae 12 (under § 1396k(b), "the beneficiary retains the right to payment for any additional medical expenses personally incurred either before or subsequent to Medicaid eligibility and for other damages"); CMS, State Medicaid Manual § 3907 (last modified Sept. 15, 2005) (envisioning that "medical insurance payments," for example, will be remitted to the recipient if possible). Second, even if Medicaid's outlays often exceed the portion of the recovery earmarked for medical expenses in tort cases, the third-party liability provisions were not drafted exclusively with tort settlements in mind. In the case of health insurance, for example, the funds available under the policy may be enough to cover both Medicaid's costs and the recipient's own medical expenses.

At the very least, then, the federal third-party liability provisions require an assignment of no more than the right to recover that portion of a settlement that represents payments for medical care.[FN11] They did not mandate the enactment of the Arkansas scheme that we have described.

> FN11. ADHS concedes that, had a jury or judge allocated a sum for medical payments out of a larger award in this case, the agency would be entitled to reimburse itself only from the portion so allocated. See Brief for Petitioners 49, n. 13; see also Brief for United States as Amicus Curiae 22, n. 14 (noting that the Secretary of HHS "ordinarily accepts" a jury allocation of medical damages in satisfaction of the Medicaid debt, even where smaller than the amount of Medicaid's expenses). Given the stipulation between ADHS and Ahlborn, there is no textual basis for treating the settlement here differently from a judge-allocated settlement or even a jury award; all such awards typically establish a third party's "liability" for both "payment for medical care" and other heads of damages.

*[*]283 IV

[2] If there were no other relevant provisions in the federal statute, the State might plausibly argue that federal law supplied a recovery "floor" upon which States were free to build. In fact, though, the federal statute places express limits on the State's powers to pursue recovery of funds it paid on the recipient's behalf. These limitations are contained in 42 U.S.C. §§ 1396a(a)(18) and

1396p. Section 1396a(a)(18) requires that a State Medicaid plan comply with § 1396p, which in turn prohibits States (except in circumstances not relevant here) from placing liens against, or seeking recovery of benefits paid from, a Medicaid recipient:

"(a) Imposition of lien against property of an individual on account of medical assistance rendered to him under a State plan

"(1) No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except.

"(A) pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual, or

"(B) [in certain circumstances not relevant here] ....

"(b) Adjustment or recovery of medical assistance correctly paid under a State plan

**"]763 "(1) No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the "284 State plan may be made, except [in circumstances not relevant here]."
§ 1396p.

Read literally and in isolation, the anti-lien prohibition contained in § 1396p(a) would appear to ban even a lien on that portion of the settlement proceeds that represents payments for medical care.[FN] Ahlborn does not ask us to go so far, though; she assumes that the State's lien is consistent with federal law insofar as it encumbers proceeds designated as payments for medical care. Her argument, rather, is that the anti-lien provision precludes attachment or encumbrance of the remainder of the settlement.

> FN12. Likewise, subsection (b) would appear to forestall any attempt by the State to recover benefits paid, at least from the "individual." See, e.g., *Martin ex rel. Hoff v. Rochester*, 642 N.W.2d 1, 5, n. 5 (Minn.2002); *Wallace v. Estate of Jackson*, 972 P.2d 446, 450 (Utah 1998) (Durham, J., dissenting) (reading § 1396p to "prohibit[] not only liens against Medicaid recipients but also any recovery for medical assistance correctly paid"). The parties here, however, neither cite nor discuss the anti-recovery provision of § 1396p(b). Accordingly, we leave for another day the question of its impact on the analysis.

We agree. There is no question that the State can require an assignment of the right, or chose in action, to receive payments for medical care. So much is expressly provided for by §§ 1396a(a)(25) and 1396k(a). And we assume, as do the parties, that the State can also demand as a condition of Medicaid eligibility that the recipient "assign" in advance any payments that may constitute reimbursement for medical costs. To the extent that the forced assignment is expressly

authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision. See *Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 383-384, and n. 7, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003). But that does not mean that the State can force an assignment of, or place a lien on, any other portion of Ahlborn's property. As explained above, the exception carved out by *285 §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care. Beyond that, the anti-lien provision applies.

[1] ADHS tries to avoid the anti-lien provision by characterizing the settlement proceeds as not Ahlborn's "property." [FN13] Its argument appears to be that the automatic assignment effected by the Arkansas statute rendered the proceeds the property of the State. [FN14] See Brief for Petitioners 31 ("[U]nder Arkansas law, the lien does not attach to the recipient's 'property' because it attaches only to those proceeds already assigned to the Department as a condition of Medicaid eligibility"). That argument fails for two reasons. First, ADHS insists that Ahlborn at all times until judgment retained her entire chose in action—a right that included her claim for medical damages. The statutory lien, then, cannot have attached until the proceeds materialized. That much is clear **1764 from the text of the Arkansas statute, which says that the "assignment shall be considered a statutory lien on any settlement ... *received by the recipient from a third party*." Ark.Code Ann. § 20-77-307(c) (2001) (emphasis added). The settlement is not "received" until the chose in action has been reduced to proceeds in Ahlborn's possession. Accordingly, the assertion that any of the proceeds belonged to the State all along lacks merit.

    FN13. "Property" is defined by regulation as "the homestead and all other personal and real property in which the recipient has a legal interest." 42 CFR § 433.36(b) (2005).

    FN14. The United States as *amicus curiae* makes the different argument that the proceeds never became Ahlborn's "property" because "to the extent the third party's payment passes through the recipient's hands en route to the State, it comes with the State's lien already attached." Brief as *Amicus Curiae* 18. Even if that reading were consistent with the Arkansas statute (and it is not, see *infra*, at 1764), the United States' characterization of the "assignment" simply reinforces Ahlborn's point: This is a lien that attaches *to the property of the recipient*.

Second, the State's argument that Ahlborn lost her property rights in the proceeds the instant she applied for medical assistance is inconsistent with the creation of a statutory *286 lien on those proceeds. Why, after all, would ADHS need a lien on its own property? A lien typically is imposed on the property of *another* for payment of a debt owed by that other. See Black's Law Dictionary 922 (6th ed.1990). Nothing in the Arkansas statute defines the term otherwise.

That the lien is also called an "assignment" does not alter the analysis. The terms that Arkansas employs to describe the mechanism by which it lays claim to the settlement proceeds do not, by themselves, tell us whether the statute violates the anti-lien provision. See *United States v. Craft*, 535 U.S. 274, 279, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002); *Drye v. United States*, 528 U.S. 49, 58-61, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999). Although denominated an "assignment," the effect of the statute here was not to divest Ahlborn of all her property interest; instead, Ahlborn retained the right to sue for medical care payments, and the State asserted a right to the fruits of that suit once they materialized. In effect, and as at least some of the statutory language recognizes, Arkansas has imposed a lien on Ahlborn's property. [FN15] Since none of the federal

third-party liability provisions excepts that lien from operation of the anti-lien provision, its imposition violates federal law.

FN14. Because ADHS insists that "Arkansas law did *not* require Ahlborn to assign her claim or her right to sue," Brief for Petitioners 33 (emphasis in original), we need not reach the question whether a State may force a recipient to assign a chose in action to receive as much of the settlement as is necessary to pay Medicaid's costs. The Eighth Circuit thought this would be impermissible because the State cannot "circumvent the restrictions of the federal anti-lien statute simply by requiring an applicant for Medicaid benefits to assign property rights to the State before the applicant liquidates the property to a sum certain." App. to Pet. for Cert. 6. Indeed, ADHS acknowledges that Arkansas cannot, for example, require a Medicaid applicant to assign in advance any right she may have to recover an inheritance or an award in a civil case not related to her injuries or medical care. This arguably is no different; as with assignment of those other choses in action, assignment of the right to compensation for lost wages and other nonmedical damages is nowhere authorized by the federal third-party liability provisions.

*287 V

[4] ADHS and its *amici* urge, however, that even if a lien on more than medical damages would violate federal law in some cases, a rule permitting such a lien ought to apply here either because Ahlborn breached her duty to "cooperate" with ADHS or because there is an inherent danger of manipulation in cases where the parties to a tort case settle without judicial oversight or input from the State. Neither argument is persuasive.

The United States proposes a default rule of full reimbursement whenever the recipient breaches her duty to "cooperate," and asserts that Ahlborn in fact breached that duty.FN15 But, even if the Government's **1765 allegations of obstruction were supported by the record, its conception of the duty to cooperate strays far beyond the text of the statute and the relevant regulations. The duty to cooperate arises principally, if not exclusively, in proceedings initiated by *the State* to recover from third parties. See 42 U.S.C. § 1396k(a)(1)(C) (recipients must "cooperate with the State in identifying ... and providing information to assist the State in pursuing" third parties). Most of the accompanying federal regulations simply echo this basic duty; all they add is that the recipient must "[p]ay to the agency any support or medical care funds received that are covered by the assignment of rights." 42 CFR § 433.147(b)(4) (2005).

FN16. See, *e.g.*, Brief for United States as *Amicus Curiae* 14 (alleging that Ahlborn "omitt[ed] or understat[ed] the medical damages claim from her lawsuit and attempt[ed] to horde for herself the third-party liability payments"); *id.*, at 15 ("[H]aving forsaken her federal and state statutory duties of candid and forthcoming cooperation ... [,] respondent, rather than the taxpayers, must bear the financial consequences of her actions"); *id.*, at 21, 24 (referring to Ahlborn's "backdoor settlement" and "obstruction and attrition," as well as her "calculated evasion of her legal obligations").

In any event, the aspersions the United States casts upon Ahlborn are entirely unsupported; all the record reveals is that ADHS, despite having intervened in the lawsuit and *288 asked to be apprised of any hearings, neither asked to be nor was involved in the settlement negotiations.

Whatever the bounds of the duty to cooperate, there is no evidence that it was breached here.

ADHS' and the United States' alternative argument that a rule of full reimbursement is needed generally to avoid the risk of settlement manipulation is more colorable, but ultimately also unpersuasive. The issue is not, of course, squarely presented here; ADHS has stipulated that only $35,581.47 of Ahlborn's settlement proceeds properly are designated as payments for medical costs. Even in the absence of such a post-settlement agreement, though, the risk that parties to a tort suit will allocate away the State's interest can be avoided either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision.FN17 For just as there are risks in underestimating the value of readily calculable damages in settlement negotiations, so also is there a countervailing concern that a rule of absolute priority might preclude settlement in a large number of cases, and be unfair to the recipient in others.FN18

FN17. As one *amicus* observes, some States have adopted special rules and procedures for allocating tort settlements in circumstances where, for example, private insurers' rights to recovery are at issue. See Brief for Association of Trial Lawyers of America 20-21. Although we express no view on the matter, we leave open the possibility that such rules and procedures might be employed to meet concerns about settlement manipulation.

FN18. The point is illustrated by state cases involving the recovery of workers' compensation benefits paid to an employee (or the family of an employee) whose injuries were caused by a third-party tortfeasor. In *Flanigan v. Department of Labor and Industries*, 123 Wash.2d 418, 869 P.2d 14 (1994), for example, the court concluded that the state agency could not satisfy its lien out of damages the injured worker's spouse recovered as compensation for loss of consortium. The court explained that the department could not "share in damages for which it has provided no compensation" because such a result would be "absurd and fundamentally unjust." *Id.*, at 426, 869 P.2d, at 17.

*289 VI

Finally, ADHS contends that the Court of Appeals' decision below accords insufficient weight to two decisions by the Departmental Appeals Board of HHS (Board) rejecting appeals by the States of California and Washington from denial of reimbursement for costs those States paid on **1766 behalf of Medicaid recipients who had settled tort claims. See App. to Pet. for Cert. 49-67 (reproducing *In re Washington State Dept. of Social & Health Servs.*, Dec. No. 1561, 1996 WL 157123 (HHS Dept.App. Bd., Feb. 7, 1996)); App. to Pet. for Cert. 68-86 (reproducing *In re California Dept. of Health Servs.*, Dec. No. 1504, 1995 WL 56334 (HHS Dept.App. Bd., Jan. 5, 1995)). Because the opinions in those cases address a different question from the one posed here, make no mention of the anti-lien provision, and, in any event, rest on a questionable construction of the federal third-party liability provisions, we conclude that they do not control our analysis.

Normally, if a State recovers from a third party the cost of Medicaid benefits paid on behalf of a recipient, the Federal Government owes the State no reimbursement, and any funds already paid by the Federal Government must be returned. See 42 CFR § 433.140(a)(2) (2005) (federal financial participation "is not available in Medicaid payments if ... [t]he agency received reimbursement from a liable third party"); § 433.140(c). Washington and California both had

adopted schemes according to which the State refrained from claiming full reimbursement from tort settlements and instead took only a portion of each settlement. (In California, the recipient typically could keep at least 50% of her settlement, see App. to Pet. for Cert. 72; in Washington, the proportion varied from case to case, see *id.*, at 43-51.) Each scheme resulted in the State's having to pay a portion of the recipient's medical costs-a portion for which the State sought partial reimbursement from the Federal Government. CMS (then called HCFA) denied this partial reimbursement *290 on the ground that the States had an absolute duty to seek full payment of medical expenses from third-party tortfeasors.

The Board upheld CMS' determinations. In California's appeal, which came first, the Board concluded that the State's duty to seek recovery of benefits "from available third party sources to the fullest extent possible" included demanding full reimbursement from the entire proceeds of a Medicaid recipient's tort settlement. *Id.*, at 76. The Board acknowledged that § 1396k(a) "refers to assignment only of 'payment for medical care,' " but thought that "the statutory scheme as a whole contemplates that the actual recovery might be greater and, if it is, that Medicaid should be paid first." *Ibid.* The Board gave two other reasons for siding with CMS: First, the legislative history of the third-party liability evinced a congressional intent that "the Medicaid program ... be reimbursed from available third party sources to the fullest extent possible," *ibid.*; and, second, California had long been on notice that it would not be reimbursed for any shortfall resulting from failure to fully recoup Medicaid's costs from tort settlements, see *id.*, at 77. The Board also opined that the State could not escape its duty to seek full reimbursement by relying on the Medicaid recipient's efforts in litigating her claims. See *id.*, at 79-80.

Finally, responding to the State's argument that its scheme gave Medicaid recipients incentives to sue third-party tortfeasors and thus resulted in both greater recovery and lower costs for the State, the Board observed that "a state is free to allow recipients to retain the state's share" of any recovery, so long as it does not compromise the Federal Government's share, *id.*, at 85.

The Board reached the same conclusion, by the same means, in the Washington case. See *id.*, at 53-64.

Neither of these adjudications compels us to conclude that Arkansas' statutory **1767 lien comports with federal law. First, the Board's rulings address a different question from the one *291 presented here. The Board was concerned with the Federal Government's obligation to reimburse States that had, in its view, failed to seek full recovery of Medicaid's costs and had instead relied on recipients to act as private attorneys general. The Board neither discussed nor even so much as cited the federal anti-lien provision.

Second, the Board's acknowledgment that the assignment of rights required by § 1396k(a) is limited to payments for medical care only reinforces the clarity of the statutory language. Moreover, its resort to "the statutory scheme as a whole" as justification for muddying that clarity is nowhere explained. Given that the only statutory provisions CMS relied on are §§ 1396a(a)(25), 1396k(a), and 1396k(b), see *id.*, at 75-76; *id.*, at 54-55, and given the Board's concession that the first two of these limit the State's assignment to payments for medical care, the "statutory scheme" must mean § 1396k(a). But that provision does not authorize the State to demand reimbursement from portions of the settlement allocated or allocable to nonmedical damages; instead, it gives the State a priority disbursement from the medical expenses portion

alone. See *supra*, at 1752. In fact, in its adjudication in the Washington case, the Board conceded as much: "[CMS] may require a state to assert a collection priority over funds obtained by Medicaid recipients in [third-party liability] suits *even though the distribution methodology set forth in section (1396(a)(b) ] refers only to payments collected pursuant to assignments for medical care*." App. to Pet. for Cert. 54 (emphasis added). The Board's reasoning therefore is internally inconsistent.

Third, the Board's reliance on legislative history is misplaced. The Board properly observed that Congress, in crafting the Medicaid legislation, intended that Medicaid be a "payer of last resort." S. Rep. No. 99-146, p. 313 (1985). That does not mean, however, that Congress meant to authorize States to seek reimbursement from Medicaid recipients themselves. In fact, with the possible exception of a lien *292 on payments for medical care, the statute expressly prohibits liens against the property of Medicaid beneficiaries. See 42 U.S.C. § 1396p(a). We recognize that Congress has delegated "broad regulatory authority to the Secretary [of HHS] in the Medicaid area," *Wisconsin Dept. of Health and Family Servs. v. Blumer*, 534 U.S. 473, 496, n. 15, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002), and that agency adjudications typically warrant deference. Here, however, the Board's reasoning couples internal inconsistency with a conscious disregard for the statutory text. Under these circumstances, we decline to treat the agency's reasoning as controlling.

## VII

Federal Medicaid law does not authorize ADHS to assert a lien on Ahlborn's settlement in an amount exceeding $35,581.47, and the federal anti-lien provision affirmatively prohibits it from doing so. Arkansas' third-party liability provisions are unenforceable insofar as they compel a different conclusion. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

U.S.,2006.

Arkansas Dept. of Health and Human Services v. Ahlborn

547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459, 74 USLW 4214, Med & Med GD (CCH) P 301,841, 06 Cal. Daily Op. Serv. 3597, 2006 Daily Journal D.A.R. 5159, 19 Fla. L. Weekly Fed. S 169

Briefs and Other Related Documents (Back to top)

- 2006 WL 304570 (Appellate Brief) Reply Brief for the Petitioners (Feb. 7, 2006) Original Image of this Document (PDF)
- 2006 WL 139217 (Appellate Brief) Brief of the Association of Trial Lawyers of America as Amicus Curiae in Support of Respondents (Jan. 13, 2006) Original Image of this Document (PDF)
- 2006 WL 139216 (Appellate Brief) Brief for Respondent (Jan. 12, 2006) Original Image of this Document (PDF)
  - 2005 WL 3223284 (Appellate Brief) Amicus Curiae Brief Of The States of Washington,

Alaska, Arizona, Colorado, Connecticut, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, Montana, New Hampshire, New Jersey, New York, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota, Utah, Wisconsin, and Wyoming In Support Of Petitioners (Nov. 23, 2005)

• 2005 WL 3226397 (Appellate Brief) Brief for the United States as Amicus Curiae Supporting Petitioners (Nov. 23, 2005)

• 2005 WL 3156905 (Appellate Brief) Brief for the Petitioners (Nov. 22, 2005)

• 2005 WL 3197317 (Joint Appendix) (Nov. 22, 2005)

• 2005 WL 2011417 (Appellate Petition, Motion and Filing) Respondent's Brief in Response to Petition for Writ of Certiorari (Aug. 17, 2005)

• 04-1306 (Docket) (May 11, 2005)

• 2005 WL 1126214 (Appellate Petition, Motion and Filing) Petition for Writ of Certiorari (May 9, 2005)

END OF DOCUMENT

# EXHIBIT C
## STEPHEN P. CARRIGAN
## PROFESSIONAL RESUME

Stephen P. Carrigan
5900 Memorial Drive, Suite 210
Houston, Texas 77007
(713) 739-0810
scarrigan@ccatriallaw.com

## Qualifications:

Board certified litigation attorney practicing in the areas of civil trial law, personal injury law, family law, general litigation and criminal defense work.

## Professional Experience:

1980 to present
Managing Partner
The Carrigan Law Firm, LLP

Firm Name Change March, 2013
Carrigan, Cook & Anderson, PLLC

Partner with litigation boutique firm handling civil trial, personal injury, family and criminal docket, and appellate work in state courts of appeal and the 5th Circuit Court of Appeals.

## Education

University of Texas, B.B.A. Business (December 1976)
University of Texas, J.D., (May 1980)
    Dean Keeton Fellowship Recipient

## Associations

State Bar of Texas
American Board of Trial Attorneys (ABOTA)
Houston Bar Association
Houston Trial Lawyers Association
Texas Exes Association
Houston Country Club, Houston, Texas
Corpus Christi Country Club, Corpus Christi, Texas
Corpus Christi Bar Association

## Courts Admitted

Texas State Courts

EXHIBIT "C"



April 10, 2017

6254 1 MB 0.423
***MIXED AADC 720 R:6254 T:24 P:24 PC:5 F:721901
TOMAS R TIJERINA
1710 9TH ST UNIT 11
LUBBOCK, TX 79401-2509



RE:  Beneficiary Name:          TIJERINA, TOMAS R
     Medicare ID:
     Case Identification Number:
     Insurer Policy Number:
     Date of Incident:           April 13, 2014
     Demand Amount:              $46,244.74

Dear TOMAS R TIJERINA:

*If we know you have a representative for this matter, we are sending him/her a copy of this letter. If you have any questions regarding this letter and are represented by an attorney or other individual in this matter, you may wish to talk to your representative before contacting us.*

We are writing to you because we learned you have received a settlement, judgment, award, or other payment related to your case for the Date of Incident listed above. We have determined that you are required to repay the Medicare program $46,244.74 for the cost of medical care it paid relating to your case.

Please read this entire letter, as it contains important information, including:

- An explanation of why you need to repay Medicare and the way we determined the amount you are required to repay (Parts I and II);
- Instructions for repaying Medicare if you agree that there has been an overpayment and accept the amount we have determined you owe, (Part III);
- Instructions for requesting waiver of recovery (for the full or a part of the amount of this demand) or appeal (if you disagree that an overpayment exists or with the amount of the





overpayment we have determined you owe), (Part IV).  Please note that Medicare will not take any collection actions while your request for waiver of recovery or appeal is being processed at any level of review;

- Interest charges that apply if you do not repay Medicare within sixty (60) days from the date of this letter and certain actions Medicare may decide to take if you fail to repay the amount you owe, (Part V);

- Whom you should contact if you have questions about this letter, (Part VI).

## I. Why am I required to repay Medicare?

You are required to repay Medicare because Medicare paid for medical care you received related to the recovery of your case.  The Medicare Secondary Payer (MSP) law allows Medicare to pay conditionally for medical care received by a Medicare beneficiary who has or may have a case. However, the law also requires Medicare to recover those payments if payment of a settlement, judgment, award, or other payment has been or could be made.

If you would like to read the MSP law, you can find it in Title 42 of the United States Code, Section 1395y(b)(2).  You can also find the regulations that explain how the Medicare program recovers amounts it is owed under the MSP law in Title 42 of the Code of Federal Regulations, beginning at Section 411.20.

## II. How did Medicare decide how much money I owe?

The Medicare program paid $46,244.74 for medical care related to the incident referenced above. The list of these Medicare Part A and Part B Fee-for-Service claims paid by Medicare is enclosed with this letter.  The Medicare program generally reduces the amount a Medicare beneficiary is required to repay by taking into account the costs (such as attorney's fees) paid by the beneficiary to obtain his/her settlement, judgment, award, or other payment.  You can find the formula we use to decide how much the amount of this reduction should be at 42 C.F.R., sub-section 411.37. We have applied the formula and determined that the amount you owe Medicare is $46,244.74.

This letter relates only to money paid from your current settlement, judgment, award or other payment.  If, in the future, you receive additional consideration or compensation from any source related to this injury, incident, or illness, you must let us know.

## III. If I accept this determination, how do I repay Medicare what I owe?

As stated, Medicare has calculated an overpayment of $46,244.74, with repayment requested within sixty (60) days of the date of this letter, April 10, 2017.  Please send a check or money order for $46,244.74, made payable to Medicare, to us at the address listed at the end of this



letter.   Please make sure to include your name and Medicare ID on the check or money order and include a copy of this letter with your payment.  If you are unable to include a copy of this letter with our payment, please include your name and Medicare ID as well as your Case Identification Number (from the beginning of this letter) on your check.

The amount requested in this letter may not reflect payments you have already made prior to the issuance of this demand letter dated April 10, 2017.  Upon issuing a check, please deduct previous payments made to Medicare for the above referenced debt.

**IV. What rights do I have if I disagree with the amount this letter says I owe or think that I should not have to repay Medicare for some other reason?**



**<u>Right to Request a Waiver</u>**- You have the right to request that the Medicare program waive recovery of the amount you owe in full or in part.  Your right to request a waiver is separate from your right to appeal our determination, and you may request both a waiver and an appeal at the same time.  The Medicare program may waive recovery of the amount you owe if you can show that you meet both of the following conditions:

1.  This overpayment (for purposes of requesting waiver of recovery, the amount you owe is considered an overpayment) was not your fault, because the information you gave us with your claims for Medicare benefits was correct and complete as far as you knew; and when the Medicare payment was made, you thought that it was the right payment;

<div align="center">AND</div>

2.  Paying back this money would cause financial hardship or would be unfair for some other reason.

If you believe that both of these conditions apply to you, you should send us a letter that explains why you think you should receive a waiver of recovery of the amount you owe.  If you request a waiver, we will send you a form asking for more specific information about your income, assets, expenses, and the reasons why you believe you should receive a waiver.  Medicare will not take any collection action while your request for waiver is being processed at any level of review.  If we are unable to grant your request for a waiver, we will send you a letter that explains the reason(s) for our decision and the steps you will need to follow to appeal that decision if it is less than fully favorable to you.

**<u>Right to Appeal</u>**- You also have the right to appeal our determination if you disagree that you owe Medicare as explained in Part I of this letter, or if you disagree with the amount that you owe



Medicare ($46,244.74) as explained in Part II of this letter. To file an appeal, you should send us a letter explaining why you disagree with our determination that you owe money to Medicare and/or why you believe our calculation of the amount you owe is incorrect. Medicare will not take any collection action while your appeal request is being processed at any level of review. Once we receive your request, we will decide whether our determination that you must repay Medicare $46,244.74 is correct and send you a letter that explains the reasons for our decision. Our letter will also explain the steps you will need to follow to appeal that decision if it is less than fully favorable to you.

You have 120 days from receipt of this letter April 10, 2017 to file an appeal. We must assume that you received this letter within five (5) days of the date of the letter April 10, 2017 unless you furnish us with proof of the contrary.



If you have not already made full payment or otherwise resolved Medicare's recovery claim by the date stated in Section V below, you may receive a letter stating that Medicare intends to refer the debt to the Department of the Treasury for collection. Such a letter does not change the appeal rights stated above. However, please note that unless or until you request an appeal, Medicare will not suspend collection efforts. Regardless of whether you appeal, interest will continue to accrue on any outstanding balance from the date of this letter.

If you do not already have an attorney or other representative and you want help with your request for waiver or appeal, you can have a friend, lawyer, or someone else help you. Some lawyers do not charge unless you win your case. There are groups, such as lawyer referral service that can help you find a lawyer. There are also groups, such as legal aid services, that will provide free legal services if you qualify.

## V. What happens if I do not repay Medicare the amount I owe?

If you do not repay Medicare in full by June 08, 2017, you will be required to pay interest on any remaining balance, from the date of this letter, at a rate of 9.500% per year as determined by federal regulation. If the debt is not fully resolved within 60 days of the date of this letter, interest is due and payable for each full 30 day period the debt remains unresolved. By law, all payments are applied to interest first, principal second. You can find the regulation that explains interest charges at 42 C.F.R., sub-section 411.24(m).

If you choose to appeal this determination or request a full or partial waiver of recovery, you may wish to repay Medicare the full amount or the amount you believe you owe within sixty (60) days of the date of this letter to avoid the assessment of interest. Interest accrues on any unpaid balance, which may include any amount you are determined to owe once a decision is reached on your request for waiver of recovery or appeal. If you receive a waiver of recovery or if you are





successful in appealing our decision, Medicare will refund any excess amounts you have paid. Medicare will not take any collection action while it is processing your request for waiver or appeal at any level of review.

If you cannot repay Medicare in one payment, you may ask us to consider whether to allow you to pay in regular installments. If you make installment payments, you should be aware that your payments will be applied to any interest due first and then to the outstanding principal amount.

The provisions of the Debt Collection Improvement Act of 1996 apply to Medicare debt. Recovery actions may include collection by Treasury offset against any monies otherwise payable to the debtor by any agency of the United States (for example, tax refunds or federal benefits), among other collection methods. If Medicare intends to take collection action (including referral to Treasury), you will be provided with appropriate notice. This notice will include information concerning appropriate steps to avoid such actions

**VI. Who should I contact if I have questions about this letter?**

If you have any questions concerning this matter, please contact the Benefits Coordination & Recovery Center (BCRC) by phone at 1-855-798-2627 (TTY/TDD: 1-855-797-2627 for the hearing and speech impaired), in writing at the address below, or by fax to 405-869-3309. When sending correspondence, please include the Beneficiary Name along with the Medicare ID and Case Identification Number (shown above).

Sincerely,

BCRC

CC: CARRIGAN COOK & ANDERSON

Enclosure: Payment Summary Form



# Payment Summary Form

Report Number: RMCAN - 5-5

Contractor: NGHP

Beneficiary Name: TIJERINA, TOMAS R

Beneficiary Medicare ID: 

Date::: 04/10/2017
Time: 06:17:45
Page 6 of 8

Case ID:
Case Type: L – Liability
Date of Incident: 04/13/2014

| TOS | ICN | Line # | Processing Contractor | Provider Name | ICD Indicator | Diagnosis Codes | From Date | To Date | Total Charges | Reimburse Amount | Conditional Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 60 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 86503, E8120, V4987, 3159, 51881, 80709, 81000, 8500, 8600, 86803 | 04/13/2014 | 04/19/2014 | $87,253.76 | $38,585.92 | $38,585.92 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | V0382, E8120, V4987, 3159, 51881, 80709, 81000, 8500, 8600, 86803 | 04/19/2014 | 04/19/2014 | $76.00 | $51.58 | $51.58 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 80700 | 04/28/2014 | 04/28/2014 | $356.00 | $42.75 | $42.75 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 81000, 86500 | 04/28/2014 | 04/28/2014 | $34.10 | $68.97 | $34.10 |



Coordination of Benefits and Recovery

*4D2017709500064416*



CENTERS FOR MEDICARE & MEDICAID SERVICES

COB&R
Coordination of
Benefits and Recovery



*4E2017109500064416*

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 40 | 04011 | 0 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 81000 | 04/30/2014 | $137.50 | $111.72 | $111.72 |
| 71 | 04412 | 001 | PHI INC | ICD-9 | 86509, E8120, 81000, 8604 | 04/30/2014 | $22,184.00 | $3,881.25 | $3,881.25 |
| 71 | 04412 | 001 | PHI INC | ICD-9 | 86509, E8120, 81000, 8604 | 04/13/2014 | $22,184.00 | $0.00 | $0.00 |
| 71 | 04412 | 002 | PHI INC | ICD-9 | 86509, E8120, 81000, 8604 | 04/13/2014 | $13,949.00 | $1,268.96 | $1,268.96 |
| 71 | 04412 | 001 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | $409.00 | $132.92 | $132.92 |
| 71 | 04412 | 001 | | ICD-9 | 86509 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | 04412 | 002 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | 04412 | 003 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | $2,000.00 | $264.37 | $264.37 |
| 71 | 04412 | 004 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | $2,715.00 | $880.52 | $880.52 |
| 71 | 04412 | 001 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | $566.00 | $95.35 | $95.35 |
| 71 | 04412 | 001 | FLIPPIN, NICHOLAS W | ICD-9 | 95901 | 04/13/2014 | $318.00 | $29.62 | $29.62 |
| 71 | 04412 | 001 | FLIPPIN, NICHOLAS W | ICD-9 | 81504 | 04/13/2014 | $254.00 | $24.58 | $24.58 |
| 71 | 04412 | 002 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | $409.00 | $132.92 | $132.92 |
| 71 | 04412 | 002 | STEINES, MICHAEL | ICD-9 | 86509, E8120, 81000, 8604 | 04/13/2014 | $13,949.00 | $1,268.96 | $1,268.96 |
| 71 | 04412 | 001 | HYMAN, BENJAMIN | ICD-9 | 86509, E8120, 81000, 8604 | 04/13/2014 | $22,184.00 | $0.00 | $0.00 |
| 71 | 04412 | 003 | STEINES, MICHAEL | ICD-9 | V5881, V5882, 80709 | 04/13/2014 | $409.00 | $0.00 | $0.00 |
| 71 | 04412 | 001 | HYMAN, BENJAMIN | ICD-9 | 95911 | 04/13/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 04412 | 001 | NAM, JERRY I | ICD-9 | 95911 | 04/13/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 04412 | 002 | NAM, JERRY I | ICD-9 | 78909, 8602 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | 04412 | 001 | PICKETT, BRYAN | ICD-9 | 86509, 78650, 78909, 8602 | 04/13/2014 | $1,216.00 | $170.99 | $170.99 |



**CMS** CENTERS FOR MEDICARE & MEDICAID SERVICES

**COB&R** Coordination of Benefits and Recovery

| 71 | 001 | 04412 | NAM, JERRY I | ICD-9 | 95911 | 04/13/2014 | $43.00 | $7.09 | $7.09 |
|---|---|---|---|---|---|---|---|---|---|
| 71 | 001 | 04412 | SPENCER, SCOTT E | ICD-9 | 95911 | 04/14/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 002 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/15/2014 | $510.00 | $167.57 | $167.57 |
| 71 | 003 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/15/2014 | $510.00 | $167.57 | $167.57 |
| 71 | 004 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/16/2014 | $121.00 | $53.92 | $53.92 |
| 71 | 001 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/17/2014 | $121.00 | $53.92 | $53.92 |
| 71 | 001 | 04412 | APPELT, ERIC A | ICD-9 | V5882 | 04/15/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | APPELT, ERIC A | ICD-9 | 95911 | 04/15/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 95911 | 04/16/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | APPELT, ERIC A | ICD-9 | 80709, V5882 | 04/16/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 95911, 80709 | 04/17/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | DEBERRY-CARLISLE, A F | ICD-9 | 80706 | 04/17/2014 | $170.00 | $55.02 | $55.02 |
| 71 | 002 | 04412 | DEBERRY-CARLISLE, A F | ICD-9 | 80706 | 04/18/2014 | $170.00 | $55.02 | $55.02 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 95911 | 04/18/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 95911 | 04/19/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | KASH, FREDERICK F | ICD-9 | 78609, V5882 | 04/28/2014 | $48.00 | $8.47 | $8.47 |
| 71 | 001 | 04412 | BRAZEAL, JUSTIN R | ICD-9 | 81000 | 04/30/2014 | $79.65 | $38.28 | $38.28 |
| 71 | 002 | 04412 | BRAZEAL, JUSTIN R | ICD-9 | 81000 | 04/30/2014 | $32.85 | $6.53 | $6.53 |

Sum of Total Charges: $156,253.86

Total Conditional Charges: $46,244.74



*8F2017095000064416*



April 10, 2017

6168 1 MB 0.423
***MIXED AADC 720 R:6168 T:23 P:23 PC:5 F:721901
CARRIGAN COOK & ANDERSON
101 N SHORELINE BLVD STE 420
CORPUS CHRISTI, TX 78401-2825



*COPY*

For Information Only

||ı|ı|ı|ı||ı|||ı||ı||ı|ı|ı||ıı||ı||||ı|ı||ı|ı|ı|ı||ıı|ı|ı||ı||ı|ı|ı|ı|ı|||ı|

--------------------------------------------------------------------------------

April 10, 2017

6168 1 MB 0.423
***MIXED AADC 720 R:6168 T:23 P:23 PC:5 F:721901
TOMAS R TIJERINA
1710 9TH ST UNIT 11
LUBBOCK, TX 79401-2509



RE:  Beneficiary Na
     Medicare ID:
     Case Identificatio
     Insurer Policy Numb
     Date of Incident:
     Demand Amount:

Dear TOMAS R TIJERINA:

*If we know you have a representative for this matter, we are sending him/her a copy of this letter. If you have any questions regarding this letter and are represented by an attorney or other individual in this matter, you may wish to talk to your representative before contacting us.*

We are writing to you because we learned you have received a settlement, judgment, award, or other payment related to your case for the Date of Incident listed above. We have determined



that you are required to repay the Medicare program $46,244.74  for the cost of medical care it paid relating to your case.

Please read this entire letter, as it contains important information, including:

- An explanation of why you need to repay Medicare and the way we determined the amount you are required to repay (Parts I and II);
- Instructions for repaying Medicare if you agree that there has been an overpayment and accept the amount we have determined you owe, (Part III);
- Instructions for requesting waiver of recovery (for the full or a part of the amount of this demand) or appeal (if you disagree that an overpayment exists or with the amount of the overpayment we have determined you owe), (Part IV).  Please note that Medicare will not take any collection actions while your request for waiver of recovery or appeal is being processed at any level of review;
- Interest charges that apply if you do not repay Medicare within sixty (60) days from the date of this letter and certain actions Medicare may decide to take if you fail to repay the amount you owe, (Part V);
- Whom you should contact if you have questions about this letter, (Part VI).

## I. Why am I required to repay Medicare?

You are required to repay Medicare because Medicare paid for medical care you received related to the recovery of your case.  The Medicare Secondary Payer (MSP) law allows Medicare to pay conditionally for medical care received by a Medicare beneficiary who has or may have a case.  However, the law also requires Medicare to recover those payments if payment of a settlement, judgment, award, or other payment has been or could be made.

If you would like to read the MSP law, you can find it in Title 42 of the United States Code, Section 1395y(b)(2).  You can also find the regulations that explain how the Medicare program recovers amounts it is owed under the MSP law in Title 42 of the Code of Federal Regulations, beginning at Section 411.20.

## II. How did Medicare decide how much money I owe?

The Medicare program paid $46,244.74 for medical care related to the incident referenced above.  The list of these Medicare Part A and Part B Fee-for-Service claims paid by Medicare is enclosed with this letter.  The Medicare program generally reduces the amount a Medicare beneficiary is required to repay by taking into account the costs (such as attorney's fees) paid by the beneficiary to obtain his/her settlement, judgment, award, or other payment.  You can find the formula we use to decide how much the amount of this reduction should be at 42 C.F.R., sub-section 411.37.  We have applied the formula and determined that the amount you owe Medicare is $46,244.74.

This letter relates only to money paid from your current settlement, judgment, award or other payment. If, in the future, you receive additional consideration or compensation from any source related to this injury, incident, or illness, you must let us know.

**III. If I accept this determination, how do I repay Medicare what I owe?**

As stated, Medicare has calculated an overpayment of $46,244.74, with repayment requested within sixty (60) days of the date of this letter, April 10, 2017. Please send a check or money order for $46,244.74, made payable to Medicare, to us at the address listed at the end of this letter. Please make sure to include your name and Medicare ID on the check or money order and include a copy of this letter with your payment. If you are unable to include a copy of this letter with our payment, please include your name and Medicare ID as well as your Case Identification Number (from the beginning of this letter) on your check.

The amount requested in this letter may not reflect payments you have already made prior to the issuance of this demand letter dated April 10, 2017. Upon issuing a check, please deduct previous payments made to Medicare for the above referenced debt.

**IV. What rights do I have if I disagree with the amount this letter says I owe or think that I should not have to repay Medicare for some other reason?**

**Right to Request a Waiver**- You have the right to request that the Medicare program waive recovery of the amount you owe in full or in part. Your right to request a waiver is separate from your right to appeal our determination, and you may request both a waiver and an appeal at the same time. The Medicare program may waive recovery of the amount you owe if you can show that you meet both of the following conditions:

1. This overpayment (for purposes of requesting waiver of recovery, the amount you owe is considered an overpayment) was not your fault, because the information you gave us with your claims for Medicare benefits was correct and complete as far as you knew; and when the Medicare payment was made, you thought that it was the right payment;

<div align="center">AND</div>

2. Paying back this money would cause financial hardship or would be unfair for some other reason.

If you believe that both of these conditions apply to you, you should send us a letter that explains why you think you should receive a waiver of recovery of the amount you owe. If you request a waiver, we will send you a form asking for more specific information about your income, assets,



expenses, and the reasons why you believe you should receive a waiver. Medicare will not take any collection action while your request for waiver is being processed at any level of review. If we are unable to grant your request for a waiver, we will send you a letter that explains the reason(s) for our decision and the steps you will need to follow to appeal that decision if it is less than fully favorable to you.

**Right to Appeal**- You also have the right to appeal our determination if you disagree that you owe Medicare as explained in Part I of this letter, or if you disagree with the amount that you owe Medicare ($46,244.74) as explained in Part II of this letter. To file an appeal, you should send us a letter explaining why you disagree with our determination that you owe money to Medicare and/or why you believe our calculation of the amount you owe is incorrect. Medicare will not take any collection action while your appeal request is being processed at any level of review. Once we receive your request, we will decide whether our determination that you must repay Medicare $46,244.74 is correct and send you a letter that explains the reasons for our decision. Our letter will also explain the steps you will need to follow to appeal that decision if it is less than fully favorable to you.

You have 120 days from receipt of this letter April 10, 2017 to file an appeal. We must assume that you received this letter within five (5) days of the date of the letter April 10, 2017 unless you furnish us with proof of the contrary.

If you have not already made full payment or otherwise resolved Medicare's recovery claim by the date stated in Section V below, you may receive a letter stating that Medicare intends to refer the debt to the Department of the Treasury for collection. Such a letter does not change the appeal rights stated above. However, please note that unless or until you request an appeal, Medicare will not suspend collection efforts. Regardless of whether you appeal, interest will continue to accrue on any outstanding balance from the date of this letter.

If you do not already have an attorney or other representative and you want help with your request for waiver or appeal, you can have a friend, lawyer, or someone else help you. Some lawyers do not charge unless you win your case. There are groups, such as lawyer referral service that can help you find a lawyer. There are also groups, such as legal aid services, that will provide free legal services if you qualify.

## V. What happens if I do not repay Medicare the amount I owe?

If you do not repay Medicare in full by June 08, 2017, you will be required to pay interest on any remaining balance, from the date of this letter, at a rate of 9.500% per year as determined by federal regulation. If the debt is not fully resolved within 60 days of the date of this letter, interest is due and payable for each full 30 day period the debt remains unresolved. By law, all payments are applied to interest first, principal second. You can find the regulation that explains interest



charges at 42 C.F.R., sub-section 411.24(m).

If you choose to appeal this determination or request a full or partial waiver of recovery, you may wish to repay Medicare the full amount or the amount you believe you owe within sixty (60) days of the date of this letter to avoid the assessment of interest. Interest accrues on any unpaid balance, which may include any amount you are determined to owe once a decision is reached on your request for waiver of recovery or appeal. If you receive a waiver of recovery or if you are successful in appealing our decision, Medicare will refund any excess amounts you have paid. Medicare will not take any collection action while it is processing your request for waiver or appeal at any level of review.

If you cannot repay Medicare in one payment, you may ask us to consider whether to allow you to pay in regular installments. If you make installment payments, you should be aware that your payments will be applied to any interest due first and then to the outstanding principal amount.



The provisions of the Debt Collection Improvement Act of 1996 apply to Medicare debt. Recovery actions may include collection by Treasury offset against any monies otherwise payable to the debtor by any agency of the United States (for example, tax refunds or federal benefits), among other collection methods. If Medicare intends to take collection action (including referral to Treasury), you will be provided with appropriate notice. This notice will include information concerning appropriate steps to avoid such actions

**VI. Who should I contact if I have questions about this letter?**

If you have any questions concerning this matter, please contact the Benefits Coordination & Recovery Center (BCRC) by phone at 1-855-798-2627 (TTY/TDD: 1-855-797-2627 for the hearing and speech impaired), in writing at the address below, or by fax to 405-869-3309. When sending correspondence, please include the Beneficiary Name along with the Medicare ID and Case Identification Number (shown above).

Sincerely,

BCRC

CC: CARRIGAN COOK & ANDERSON

---



Enclosure: Payment Summary Form







# Payment Summary Form

Report Number: RMCAN - 5-5
Contractor: NGHP

Beneficiary Name: TIJERINA, TOMAS R
Beneficiary Medicare ID: ▬▬▬▬

Case ID: ▬▬▬▬
Case Type: L – Liability
Date of Incident: 04/13/2014

Date:: 04/10/2017
Time: 06:17:45
Page 7 of 9



| TOS | ICN | Line # | Processing Contractor | Provider Name | ICD Indicator | Diagnosis Codes | From Date | To Date | Total Charges | Reimburse Amount | Conditional Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 60 |  | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 86503, E8120, V4987, 3159, 51881, 80709, 81000, 8500, 8600, 86803 | 04/13/2014 | 04/19/2014 | $87,253.76 | $38,585.92 | $38,585.92 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | V0382, E8120, V4987, 3159, 51881, 80709, 81000, 8500, 8600, 86803 | 04/19/2014 | 04/19/2014 | $76.00 | $51.58 | $51.58 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 80700 | 04/28/2014 | 04/28/2014 | $356.00 | $42.75 | $42.75 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 81000, 86500 | 04/28/2014 | 04/28/2014 | $34.10 | $68.97 | $34.10 |



*47201709500064417*

CENTERS FOR MEDICARE & MEDICAID SERVICES



COB&R
Coordination of
Benefits and Recovery

| # | Provider No. | Seq | Provider Name | ICD | Diagnosis Codes | Date | Date | Amount 1 | Amount 2 | Amount 3 |
|---|---|---|---|---|---|---|---|---|---|---|
| 40 | 04011 | 0 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 81000 | 04/30/2014 | 04/30/2014 | $137.50 | $111.72 | $111.72 |
| 71 | 04412 | 001 | PHI INC | ICD-9 | 86509, E8120, 81000, 8604 | 04/30/2014 | 04/30/2014 | $22,184.00 | $3,881.25 | $3,881.25 |
| 71 | 04412 | 001 | PHI INC | ICD-9 | 86509, E8120, 81000, 8604 | 04/13/2014 | 04/13/2014 | $22,184.00 | $0.00 | $0.00 |
| 71 | 04412 | 002 | PHI INC | ICD-9 | 86509, E8120, 81000, 8604 | 04/13/2014 | 04/13/2014 | $13,949.00 | $1,268.96 | $1,268.96 |
| 71 | 04412 | 001 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $409.00 | $132.92 | $132.92 |
| 71 | 04412 | 001 | FLIPPIN, NICHOLAS W | ICD-9 | 81504 | 04/13/2014 | 04/13/2014 | $566.00 | $95.35 | $95.35 |
| 71 | 04412 | 001 | FLIPPIN, NICHOLAS W | ICD-9 | 95901 | 04/13/2014 | 04/13/2014 | $2,715.00 | $880.52 | $880.52 |
| 71 | 04412 | 004 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | 04412 | 003 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | 04412 | 002 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | 04412 | 001 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $2,000.00 | $264.37 | $264.37 |
| 71 | 04412 | 001 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $254.00 | $24.58 | $24.58 |
| 71 | 04412 | 002 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $318.00 | $29.62 | $29.62 |
| 71 | 04412 | 003 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $29.62 | $132.92 | $132.92 |
| 71 | 04412 | 001 | HYMAN, BENJAMIN | ICD-9 | V5881, V5882, 80709 | 04/13/2014 | 04/13/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 04412 | 001 | NAM, JERRY I | ICD-9 | 95911 | 04/13/2014 | 04/13/2014 | $43.00 | $0.00 | $0.00 |
| 71 | 04412 | 002 | NAM, JERRY I | ICD-9 | 95911 | 04/13/2014 | 04/13/2014 | $409.00 | $7.09 | $7.09 |
| 71 | 04412 | 001 | PICKETT, BRYAN | ICD-9 | 86509, 78650, 78909, 8602 | 04/13/2014 | 04/13/2014 | $1,216.00 | $170.99 | $170.99 |



*48201709500064417*






| 71 | 001 | 04412 | NAM, JERRY I | ICD-9 | 95911 | 04/13/2014 | $43.00 | $7.09 | |
| 71 | 001 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/14/2014 | $510.00 | $167.57 | $167.57 |
| 71 | 002 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/15/2014 | $510.00 | $167.57 | $167.57 |
| 71 | 003 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/16/2014 | $121.00 | $53.92 | $53.92 |
| 71 | 004 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/17/2014 | $121.00 | $53.92 | $53.92 |
| 71 | 001 | 04412 | APPELT, ERIC A | ICD-9 | V5882 | 04/15/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 95911 | 04/15/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | APPELT, ERIC A | ICD-9 | 80709, V5882 | 04/16/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 95911, 80709 | 04/16/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | DEBERRY-CARLISLE, A F | ICD-9 | 80706 | 04/17/2014 | $170.00 | $55.02 | $55.02 |
| 71 | 002 | 04412 | DEBERRY-CARLISLE, A F | ICD-9 | 80706 | 04/18/2014 | $170.00 | $55.02 | $55.02 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 95911 | 04/18/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 95911 | 04/19/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | KASH, FREDERICK F | ICD-9 | 78609, V5882 | 04/28/2014 | $48.00 | $8.47 | $8.47 |
| 71 | 001 | 04412 | BRAZEAL, JUSTIN R | ICD-9 | 81000 | 04/30/2014 | $79.65 | $38.28 | $38.28 |
| 71 | 002 | 04412 | BRAZEAL, JUSTIN R | ICD-9 | 81000 | 04/30/2014 | $32.85 | $6.53 | $6.53 |

Sum of Total Charges: $156,253.86

Total Conditional Charges: $46,244.74

EXHIBIT "D"

# CARRIGAN & ANDERSON, PLLC

## 5900 MEMORIAL DRIVE, SUITE 210
## HOUSTON, TEXAS  77007

Telephone                                             Facsimile
713-739-0810                                        713-739-0821

April 20, 2017

CMRR: 7013 2250 0000 5170 4322
MSPRC-NGHP
P.O. Box 138832
Oklahoma City, Oklahoma 73113

Re:    Cause No. 1627771; Tomas R. Tijerina v. Shoel Brashear Trucking, LLC &
       Carlton J. Mulder; In the 278th Judicial District of Walker County, Texas

    Beneficiary HICN: ███████████
    Case I.D. ███████████

Dear Sir or Madam:

      Enclosed please find Plaintiff's Motion to Determine the Portion of Plaintiff's
Settlement Monies that Constitute Reimbursement for Medical Payments Made in
and regarding the above-captioned matter. A hearing has been requested for June 26,
2017 at 9:00 a.m. in Walker County, Texas.

      A motion to determine was sent to you in March, however, that Motion to
Determine had been filed in the wrong county.

                               Very truly yours,

                               Stephen P. Carrigan

SPC:ww
Enclosure

CAUSE NO. 1627771

| | | |
|---|---|---|
| TOMAS R. TIJERINA | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | WALKER COUNTY, TEXAS |
| | § | |
| SHOEL BRASHEAR TRUCKING, | § | |
| LLC & CARLTON J. MULDER | § | |
| Defendants | § | 278TH JUDICIAL DISTRICT |

## PLAINTIFF'S MOTION TO DETERMINE
## THE PORTION OF PLAINTIFF'S SETTLEMENT MONIES THAT
## CONSTITUTE REIMBURSEMENT FOR MEDICAL PAYMENTS MADE

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, TOMAS TIJERINA herein, in the above-styled and captioned matter and files this his Motion to Determine the Portion of Plaintiff's Settlement Monies That Constitute Reimbursement for Medical Payments Made and in support would respectfully show unto the Court as follows:

1. Plaintiff, Tomas Tijerina, suffered a serious, disabling personal injury as a result of an automobile accident that occurred on April 13, 2014. Plaintiff filed suit against the Defendant herein seeking legal compensation for the following damages he suffered: (1) physical pain in the past and future; (2) mental anguish in the past and future; (3) disfigurement in the past and future; (4) physical impairment in the past and future; (5) medical expenses in the past and future; and, (6) loss of earning capacity in the past and future.

1

H 20170424 150565392 006 0084 1
35042617-0008630

2. Plaintiff subsequently settled his case as to and against all Defendant, said settlement totaling $70,000.00.

3. A portion of Plaintiff's medical costs were paid for by Medicare.

Medicare has provided an itemization showing Medicare advanced medical costs in the amount of $46,823.54, (correspondence from Medicare with expenses is attached hereto as Exhibit A).

4. In order to determine the appropriate reimbursement amount to Medicare, one must look to the United States Supreme Court's decision in Arkansas Department of Health and Human Services, etc al v. Heidi Ahlborn, 547 U.S. 268, 126 S.Ct. 178 (2006). With that opinion, our United States Supreme Court clearly stated that Medicare is entitled only to the portion of the settlement that actually constitutes reimbursement for the medical payments made[1]. *Ahlborn* was upheld in Aldona Wos, Secretary, North Carolina Department of Health and Human Services v. E.M.A., a Minor, by and through Guardian Ad Litem, Daniel Johnson, et al – see Exhibit "B" attached hereto and incorporated herein.

5. Applying Ahlborn and Wos to the instant matter, the settlement amount was $70,000.00, while the actual total value of damages is $470,000.00 (See affidavit

---

[1]

In Ahlborn, the Plaintiff's entire claim was reasonably valued at $3,040,708.12. The States' Medicaid plan paid $215,645.30 for medical costs on Plaintiff's behalf. The Plaintiff's case settled for $550,000.00. Medicaid asserted its lien for the entire amount of $215,645.30. The United States Supreme Court reversed and held that since the actual settlement amount was approximately one-sixth of the reasonable settlement value, then Medicaid was entitled to reimbursement of one-sixth of the total lien amount or $35,581.47, which amount constituted reimbursement for the medical payments made.

2

of Stephen P. Carrigan attached hereto as Exhibit C) or approximately one-tenth the amount of the actual settlement amount.

Therefore, of the total Medicare lien amount of $46,823.54 Plaintiff by law must therefore reimburse Medicare $4,700.00

6.     The appropriate Medicaid representative will be given notice of this hearing to address this issue and will be invited to attend.

7.     Wherefore, premises considered, Plaintiff requests that this Honorable Court set this matter for a hearing and upon such hearing with proper notice to Medicare, that this Honorable Court hold and therefore Order Plaintiff to reimburse Medicare out of Plaintiff's settlement monies, the amount of $4,700.00.

Respectfully submitted,

CARRIGAN & ANDERSON, P.L.L.C.

By:     /s/Stephen P. Carrigan
        STEPHEN P. CARRIGAN
        State Bar No. 03877000
        DAVID M. ANDERSON
        State Bar No. 24064815
        101 North Shoreline Blvd., Suite 420
        Corpus Christi, Texas 78401
        (361) 884-4433
        (361) 884-4434 (Facsimile)
        scarrigan@ccatriallaw.com
        danderson@ccatriallaw.com
        ATTORNEYS FOR PLAINTIFF

3

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served in accordance with the applicable rules by hand delivery, facsimile transmission, regular mail, and/or certify mail, return receipt requested to the following counsel of record on __18ᵗʰ__ day of April, 2017.

Mr. Todd Taylor
Johanson & Fairless, LLP
1456 First Colony Blvd
Sugar Land, Texas 77479

MSPRC – NGHP                            *Via CM/RRR*
P. O. Box 138832                        *and Facsimile 405.869.3309*
Oklahoma City, Oklahoma 73113


                                        /s/Stephen P. Carrigan
                                        Stephen P. Carrigan

4

CAUSE NO. 1627771

| | | |
|---|---|---|
| TOMAS R. TIJERINA | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | WALKER COUNTY, TEXAS |
| | § | |
| SHOEL BRASHEAR TRUCKING, | § | |
| LLC & CARLTON J. MULDER | § | |
| Defendants | § | 278TH JUDICIAL DISTRICT |

---

## AFFIDAVIT OF STEPHEN P. CARRIGAN

---

STATE OF TEXAS          §
                        §
COUNTY OF _Harris_      §

BEFORE ME, the undersigned authority, on this day personally appeared STEPHEN P. CARRIGAN who under oath stated as follows:

My name is Stephen P. Carrigan.   I am over twenty-one (21) years of age and am of sound mind and mental capacity to make this Affidavit, which is true and correct.

I have never been convicted of a felony and I am in all things capable and qualified to make this sworn statement.

I am a licensed attorney in the State of Texas.   I have been practicing law in the State of Texas and successfully in the Texas area for 20 years.   I have been a

civil trial specialist for this period. Attached hereto as Exhibit D is a copy of my professional resume.

As a trial attorney in the Corpus Christi, Texas area, I am familiar with the damage values of cases of this type. Further, I have reviewed all of the pertinent file materials. Based on this, it is my professional opinion that the reasonable value of Tomas Tijerina's damages in this case is $470,000.00."

FURTHER AFFIANT SAYETH NOT

Stephen P. Carrigan

SUBSCRIBED AND SWORN BEFORE ME on this 18th day of
April _____, 2017.

WENDY GAYLE WATSON.
My Commission Expires
June 29, 2017

Notary Public, State of Texas

My Commission Expires:

# EXHIBIT A
# MEDICARE'S ITEMIZATION



H 20170426 150565392 006 0090 1
35042417-0008630

# Payment Summary Form

| Report Number: | RMCAN - 5-5 | | | | | | Date:: | 05/30/2016 |
| Contractor: | NGHP | | | | | | Time: | 06:16:23 |
| | | | | | | | | Page 5 of 7 |

| Beneficiary Name: | TIJERINA, TOMAS R | | Case ID: | |
| Beneficiary HICN: | | | Case Type: | L -- Liability |
| | | | Date of Incident: | 04/13/2014 |

| TOS | ICN | Line # | Processing Contractor | Provider Name | ICD Indicator | Diagnosis Codes | From Date | To Date | Total Charges | Reimburse Amount | Conditional Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 60 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 86503, E8120, V4987, 3159, 51881, 80709, 81000, 8500, 8600, 86803 | 04/13/2014 | 04/19/2014 | $37,253.76 | $38,585.92 | $38,585.92 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | V0382, E8120, V4987, 3159, 51881, 80709, 81000, 8500, 8600, 86803 | 04/19/2014 | 04/19/2014 | $76.00 | $51.58 | $51.58 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 80700 | 04/28/2014 | 04/28/2014 | $356.00 | $42.75 | $42.75 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 81000, 86500 | 04/28/2014 | 04/28/2014 | $34.10 | $68.97 | $34.10 |



M 20170424 150565392 006 0091 1
35042417-0068630

| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 81000 | 04/30/2014 | 04/30/2014 | $137.50 | $111.72 | $111.72 |
| 40 | | 0 | 04011 | HUNTSVILLE MEMORIAL HOSPITAL | ICD-9 | 78909, 3051, 4019 | 08/26/2014 | 08/26/2014 | $7,370.01 | $578.80 | $578.80 |
| 71 | | 001 | 04412 | PHI INC | ICD-9 | 86509, E8120, 81000, 8604 | 04/13/2014 | 04/13/2014 | $22,184.00 | $3,881.25 | $3,881.25 |
| 71 | | 001 | 04412 | PHI INC | ICD-9 | 86509, E8120, 81000, 8604 | 04/13/2014 | 04/13/2014 | $22,184.00 | $0.00 | $0.00 |
| 71 | | 002 | 04412 | PHI INC | ICD-9 | 86509, E8120, 81000, 8604 | 04/13/2014 | 04/13/2014 | $13,949.00 | $1,268.96 | $1,268.96 |
| 71 | | 001 | 04412 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $409.00 | $132.92 | $132.92 |
| 71 | | 001 | 04412 | FLIPPIN, NICHOLAS W | ICD-9 | 81504 | 04/13/2014 | 04/13/2014 | $318.00 | $29.62 | $29.62 |
| 71 | | 001 | 04412 | FLIPPIN, NICHOLAS W | ICD-9 | 95901 | 04/13/2014 | 04/13/2014 | $254.00 | $24.58 | $24.58 |
| 71 | | 001 | 04412 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $2,000.00 | $264.37 | $264.37 |
| 71 | | 002 | 04412 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | | 003 | 04412 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | | 004 | 04412 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | | 001 | 04412 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $2,715.00 | $880.52 | $880.52 |
| 71 | | 002 | 04412 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $566.00 | $95.35 | $95.35 |
| 71 | | 003 | 04412 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $409.00 | $0.00 | $0.00 |
| 71 | | 001 | 04412 | HYMAN, BENJAMIN | ICD-9 | V5881, V5882, 80709 | 04/13/2014 | 04/13/2014 | $43.00 | $7.09 | $7.09 |
| 71 | | 001 | 04412 | NAM, JERRY I | ICD-9 | 95911 | 04/13/2014 | 04/13/2014 | $43.00 | $0.00 | $0.00 |
| 71 | | 002 | 04412 | NAM, JERRY I | ICD-9 | 95911 | 04/13/2014 | 04/13/2014 | $43.00 | $7.09 | $7.09 |

M 20170424 150565392 006 0092 1
35042417-0068630

| | 001 | 04412 | PICKETT, BRYAN | ICD-9 | 86509, 78650, 78909, 8602 | 04/13/2014 | 04/13/2014 | $1,216.00 | $170.99 | $170.99 |
| 71 | 001 | 04412 | NAM, JERRY I | ICD-9 | 95911 | 04/13/2014 | 04/13/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/14/2014 | 04/14/2014 | $510.00 | $167.57 | $167.57 |
| 71 | 002 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/15/2014 | 04/15/2014 | $510.00 | $167.57 | $167.57 |
| 71 | 003 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/16/2014 | 04/16/2014 | $121.00 | $53.92 | $53.92 |
| 71 | 004 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/17/2014 | 04/17/2014 | $121.00 | $53.92 | $53.92 |
| 71 | 001 | 04412 | APPELT, ERIC A | ICD-9 | V5882 | 04/15/2014 | 04/15/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 95911 | 04/15/2014 | 04/15/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | APPELT, ERIC A | ICD-9 | 80709, V5882 | 04/16/2014 | 04/16/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | DEBERRY-CARLISLE, A F | ICD-9 | 95911, 80709 | 04/17/2014 | 04/17/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | DEBERRY-CARLISLE, A F | ICD-9 | 80706 | 04/17/2014 | 04/17/2014 | $170.00 | $55.02 | $55.02 |
| 71 | 002 | 04412 | DEBERRY-CARLISLE, A F | ICD-9 | 80706 | 04/18/2014 | 04/18/2014 | $170.00 | $55.02 | $55.02 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 95911 | 04/18/2014 | 04/18/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 95911 | 04/19/2014 | 04/19/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | KASH, FREDERICK F | ICD-9 | 78609, V5882 | 04/28/2014 | 04/28/2014 | $48.00 | $8.47 | $8.47 |
| 71 | 001 | 04412 | BRAZEAL, JUSTIN R | ICD-9 | 81000 | 04/30/2014 | 04/30/2014 | $79.65 | $38.28 | $38.28 |
| 71 | 002 | 04412 | BRAZEAL, JUSTIN R | ICD-9 | 81000 | 04/30/2014 | 04/30/2014 | $32.85 | $6.53 | $6.53 |

Sum of Total Charges:          $163,623.87

Total Conditional Charges:          $46,823.54

M 20170424 150565392 006 0093 1
35042417-0008630

# EXHIBIT B

## ARKANSAS DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL V. HEIDI AHLBORN, 547 U.S. 268, 126 S.CT. 178 (2006)

*Arkansas Department of Health and Human Services, et al v. Heidi Ahlborn,*
547 U.S. 268, 126 s. Ct. 1752 (2006)


2, Arkansas Dept. of Health and Human Services v. Ahlborn
547 U.S. 268, 126 S.Ct. 1752
U.S.,2006.
May 01, 2006 (Approx. 14 pages)

---

547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459, 74 USLW 4214, Med & Med GD (CCH) P
301,841, 06 Cal, Daily Op. Serv. 3597, 2006 Daily Journal D.A.R. 5159, 19 Fla. L. Weekly Fed.
S 169


## 2. Briefs and Other Related Documents

Supreme Court of the United States

ARKANSAS DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., Petitioners,
v.
Heidi AHLBORN.

No. 04-1506.

Argued Feb. 27, 2006.
Decided May 1, 2006.

Background: Medicaid recipient sued Arkansas Department of Human Services (ADHS), challenging ADHS's assertion of claim or lien against proceeds received by recipient in settlement of personal injury lawsuit. The United States District Court for the Eastern District of Arkansas, 280 F.Supp.2d 881, G. Thomas Eisele, J., granted state's motion for summary judgment, and appeal was taken. The Court of Appeals, 397 F.3d 620, Colloton, Circuit Judge, reversed. Certiorari was granted.

Holdings: The Supreme Court, Justice Stevens, held that:

(1) Arkansas statute automatically imposing lien in favor of ADHS on tort settlement proceeds was not authorized by federal Medicaid law, to extent that statute allowed encumbrance or attachment of proceeds meant to compensate recipient for damages distinct from medical costs, and

(2) anti-lien provision of federal Medicaid law precluded Arkansas statute's encumbrance or attachment of proceeds related to damages other than medical costs; *Arkansas Dept. of Human Serus. v. Ferrel*, 336 Ark. 297, 984 S.W.2d 807.

Affirmed.

West Headnotes

[1] KeyCite Notes

198H Health

198HIII Government Assistance
198HIII(B) Medical Assistance in General; Medicaid
198Hk490 Recovery Back or Recoupment of Payments
198Hk497 k. Settlements or Judgments, Recovery From. Most Cited Cases

Arkansas statute automatically imposing lien in favor of Arkansas Department of Human Services (ADHS) on tort settlement proceeds obtained by Medicaid recipient in amount equal to Medicaid's costs, to extent that statute allowed encumbrance or attachment of proceeds meant to compensate recipient for damages distinct from medical costs, was not authorized by federal Medicaid law; although third-party liability provisions of Medicaid law required recipients, as a condition of eligibility, to assign the state any rights to payment for medical care from any third party, such provisions did not address assignment of payment for lost wages or other damages. Social Security Act, § 1912(a)(1)(A), 42 U.S.C.A. § 1396k(a)(1)(A); West's A.C.A. § 20-77-307(a, d).
[2] KeyCite Notes

198H Health
198HIII Government Assistance
198HIII(B) Medical Assistance in General; Medicaid
198Hk490 Recovery Back or Recoupment of Payments
198Hk497 k. Settlements or Judgments, Recovery From. Most Cited Cases

Provision of federal Medicaid law prohibiting states from placing liens against a Medicaid recipient preempted Arkansas statute, which automatically imposed lien in favor of Arkansas Department of Human Services (ADHS) on tort settlement proceeds obtained by Medicaid recipient in amount equal to Medicaid's costs, from operating to encumber or attach proceeds meant to compensate recipient for damages distinct from medical costs; abrogating *Arkansas Dept. of Human Servs. v. Ferrel*, 336 Ark. 297, 984 S.W.2d 807. Social Security Act, §§ 1902(a)(18), 1917, 42 U.S.C.A. §§ 1396a(a)(18), 1396p; West's A.C.A. § 20-77-307(a, d).
[3] KeyCite Notes

198H Health
198HIII Government Assistance
198HIII(B) Medical Assistance in General; Medicaid
198Hk490 Recovery Back or Recoupment of Payments
198Hk497 k. Settlements or Judgments, Recovery From. Most Cited Cases

Settlement proceeds received by Medicaid recipient in tort action, upon which lien was imposed in favor of Arkansas Department of Human Services (ADHS) under Arkansas statute, were recipient's property rather than property of the state, and therefore, lien violated federal Medicaid law's anti-lien provision, despite fact that Arkansas statute required recipient, when applying for medical assistance, to assign to ADHS any right to settlement or award as a condition of eligibility for Medicaid; recipient retained her entire chose in action until judgment, so that lien

M 20170424 150565392 006 0097 1
35042417-0008630

did not attach until proceeds materialized and were in recipient's possession, Social Security Act, § 1917, 42 U.S.C.A. § 1396n; West's A.C.A. § 20-77-307(a, c).

[4] KeyCite Notes

198H Health
198HIII Government Assistance
198HIII(B) Medical Assistance in General; Medicaid
198Hk490 Recovery Back or Recoupment of Payments
198Hk497 k. Settlements or Judgments, Recovery From. Most Cited Cases

Medicaid recipient's settlement of tort action without judicial oversight or involvement of Arkansas Department of Human Services (ADHS), which had lien on settlement proceeds under Arkansas statute, did not breach any duty of recipient to cooperate, or create exception to federal Medicaid statute's anti-lien provision, as would allow state to impose the lien on damages not related to medical costs; ADHS, despite having intervened in tort action, was not involved in and did not ask to be involved in settlement negotiations. Social Security Act, § 1917, 42 U.S.C.A. § 1396n; West's A.C.A. § 20-77-307(a, c).

West Codenotes

Limited on Preemption Grounds
West's A.C.A. § 20-77-307(a, c).

*368 **1753 Syllabus [FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

Federal Medicaid law requires participating States to "ascertain the legal liability of third parties ... to pay for [an individual benefits recipient's] care and services available under the [State's] plan," 42 U.S.C. § 1396a(a)(25)(A); to "seek reimbursement for [medical] assistance to the extent of such legal liability," § 1396a(a)(25)(B); to enact "laws under which, to the extent that payment has been made ... for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services," § 1396a(a)(25)(H); to "provide that, as a condition of [Medicaid] eligibility ..., the individual is required ... (A) to assign the State any rights ... to payment for medical care from any third party," ... (B) to cooperate with the State ... in obtaining [such] payments ..., and ... (C) ... in identifying, and providing information to assist the State in pursuing, any third party who may be liable," 1396k(a)(1). Finally, "any amount collected by the State under an assignment made" as described above "shall be retained by the State ... to reimburse it for [Medicaid] payments made on behalf of" the recipient, § 1396k(b). "[T]he remainder of such amount collected shall be paid" to the recipient, *Ibid*. Acting pursuant

to its understanding of these provisions, Arkansas passed laws under which, when a state Medicaid recipient obtains a tort settlement following payment of medical costs on her behalf, a lien is automatically imposed on the settlement in an amount equal to Medicaid's costs. When that amount exceeds the portion of the settlement representing medical costs, satisfaction of the State's lien requires payment out of proceeds meant to compensate the recipient for damages distinct from medical costs, such as pain and suffering, lost wages, and loss of future earnings.

Following respondent Ahlborn's car accident with allegedly negligent third parties, petitioner Arkansas Department of Health Services (ADHS) determined that Ahlborn was eligible for Medicaid and paid providers $215,645.30 on her behalf. She filed a state-court suit against the alleged tortfeasors seeking damages for past medical costs and for *269 other items including pain and suffering, loss of earnings and working time, and permanent impairment of her future earning ability. The case was settled out of court for $550,000, which was not allocated between categories of damages. ADHS did not participate or ask to participate in the settlement negotiations, and did not seek to reopen the judgment after the case was dismissed, but did intervene in the suit and assert a lien against the settlement proceeds for the full amount it had paid for Ahlborn's care. She filed this action in Federal District Court seeking a declaration that the State's lien violated federal law insofar as its satisfaction would require depletion of compensation for her injuries other than past medical expenses. The parties stipulated, *inter alia*, that the settlement amounted to approximately one-sixth of the reasonable value of Ahlborn's claim and that, if her construction of federal law was correct, ADHS would be entitled to only the portion of the settlement ($35,581.47) that constituted reimbursement for medical payments made. In granting ADHS summary judgment, the court held that under Arkansas law, which it concluded did not conflict with federal law, Ahlborn had assigned ADHS her right to recover the full amount of Medicaid's payments for her benefit. The Eighth Circuit reversed, holding that ADHS was entitled only to that portion of the settlement that represented payments for medical care.

*Held:* Federal Medicaid law does not authorize ADHS to assert a lien on Ahlborn's settlement in an amount exceeding $35,581.47, and the federal anti-lien provision affirmatively prohibits it from doing so. Arkansas' third-party liability provisions are unenforceable insofar as they compel a different conclusion. Pp. 1760–1767.

**1755** (a) Arkansas' statute finds no support in the federal third-party liability provisions. That ADHS cannot claim more than the portion of Ahlborn's settlement that represents medical expenses is suggested by § 1396k(a)(1)(A), which requires that Medicaid recipients, as a condition of eligibility, "assign the State any rights ... *to payment for medical* care from any third party" (emphasis added), not their rights to payment for, e.g., lost wages. The other statutory language ADHS relies on is not to the contrary, but reinforces the assignment provision's implicit limitation. First, statutory context shows that § 1396a(a)(25)(B)'s requirement that States "seek reimbursement for [medical] assistance *to the extent of such legal liability*" refers to "the legal liability of third parties ... *to pay for care and services available under the plan*," § 1396a(a)(25)(A) (emphases added). Here, because the tortfeasors accepted liability for only one-sixth of Ahlborn's overall damages, and ADHS has stipulated that only $35,581.47 of that sum represents compensation for medical expenses, the relevant "liability" extends no further *270 than that amount. Second, § 1396a(a)(25)(H)'s requirement that the State enact laws giving it the

right to recover from liable third parties "to the extent [it made] payment ... for medical assistance for health care items or services furnished to an individual" does not limit the State's recovery only by the amount it paid out on the recipient's behalf, since the rest of the provision makes clear that the State must be assigned "the rights of [the recipient] to payment by any other party *for such health care items or services.*" [Emphasis added.] Finally, § 1396(k)'s requirement that, where the State actively pursues recovery from the third party, Medicaid be reimbursed fully from "any amount collected by the State under an assignment" before "the remainder of such amount collected" is remitted to the recipient does not show that the State must be paid in full from any settlement. Rather, because the State's assigned rights extend only to recovery of medical payments, what § 1396(k) requires is that the State be paid first out of any damages for medical care before the recipient can recover any of her own medical costs. Pp. 1760-1762.

(b) Arkansas' statute squarely conflicts with the federal Medicaid law's anti-lien provision, § 1396p(a)(1), which prohibits States from imposing liens "against the property of any individual prior to his death on account of medical assistance paid ... on his behalf under the State plan." Even if the State's lien is assumed to be consistent with federal law insofar as it encumbers proceeds designated as medical payments, the anti-lien provision precludes attachment or encumbrance of the remainder of the settlement. ADHS' attempt to avoid the anti-lien provision by characterizing the settlement proceeds as not Ahlborn's "property," but as the State's, fails for two reasons. First, because the settlement is not "received from a third party," as required by the state statute, until Ahlborn's chose in action has been reduced to proceeds in her possession, the assertion that any of the proceeds belonged to the State all along lacks merit. Second, the State's argument that Ahlborn lost her property rights in the proceeds the instant she applied for medical assistance is inconsistent with the creation of a statutory lien on those proceeds: ADHS would not need a lien on its own property. Pp. 1762-1764.

(c) The Court rejects as unpersuasive ADHS' and the United States' arguments that a rule permitting a lien on more than medical damages ought to apply here either because Ahlborn breached her duty to "cooperate" with ADHS or because there **1755 is an inherent danger of manipulation in cases where the parties to a tort case settle without judicial oversight or input from the State. As § 1396(k)(1)(C) demonstrates, the duty to cooperate arises principally, if not exclusively, in proceedings initiated *by the State* to recover from third parties. In any event, the **271 aspersions cast upon Ahlborn are entirely unsupported; all the record reveals is that ADHS neither asked to be nor was involved in the settlement negotiations. Whatever the bounds of the duty to cooperate, there is no evidence that it was breached here. Although more colorable, the alternative argument that a rule of full reimbursement is needed generally to avoid the risk of settlement manipulation also fails. The risk that parties to a tort suit will allocate away the State's interest can be avoided either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision. Pp. 1764-1765.

(d) Also rejected is ADHS' contention that the Eighth Circuit accorded insufficient weight to two decisions by the Departmental Appeals Board (Board) of the federal Department of Health and Human Services (HHS) rejecting appeals by two States from denial of reimbursement for costs they paid on behalf of Medicaid recipients who had settled tort claims. Although HHS generally has broad regulatory authority in the Medicaid area, the Court declines to treat the Board's

reasoning in those cases as controlling, because they address a different question from the one posed here, make no mention of the anti-lien provision, and rest on a questionable construction of the federal third-party liability provisions. Pp. 1765-1767.

397 F.3d 620, affirmed.

STEVENS, J., delivered the opinion for a unanimous Court.

Lori Freno, for petitioners.

Patricia A. Millett, for United States as amicus curiae, by special leave of the Court, supporting the petitioners.

H. David Blair, for respondent.

Mike Beebe, Arkansas Attorney General, Lori Freno, Assistant Attorney General, Counsel of Record, Little Rock, AR, Attorneys for Petitioners Arkansas Department of Health and Human Services, et al.

H. David Blair, Attorney at Law, Batesville, AR, Counsel of Record, Phillip Farris, Attorney at Law, Batesville, AR, Attorneys for Respondent Heidi Ahlborn.

Justice STEVENS delivered the opinion of the Court.

*272 When a Medicaid recipient in Arkansas obtains a tort settlement following payment of medical costs on her behalf by Medicaid, Arkansas law automatically imposes a lien on the settlement in an amount equal to Medicaid's costs. When that amount exceeds the portion of the settlement that represents medical costs, satisfaction of the State's lien requires payment out of proceeds meant to compensate the recipient for damages distinct from medical costs—like pain and suffering, lost wages, and loss of future earnings. The Court of Appeals for the Eighth Circuit held that this statutory lien contravened federal law and was therefore unenforceable. _Ahlborn v. Arkansas Dept. of Human Servs._, 397 F.3d 620 (2005). Other courts have upheld similar lien provisions. See, e.g., _Houghton v. Dept. of Health_, 2002 UT 101, 57 P.3d 1067; **1757 _Wilson v. Washington_, 142 Wash.2d 40, 10 P.3d 1061 (2000) (en banc). We granted certiorari to resolve the conflict, 545 U.S. 1165, 126 S.Ct. 35, 162 L.Ed.2d 933 (2005), and now affirm.

I

On January 2, 1996, respondent Heidi Ahlborn, then a 19-year-old college student and aspiring teacher, suffered severe*273 and permanent injuries as a result of a car accident. She was left brain damaged, unable to complete her college education, and incapable of pursuing her chosen career. Although she possessed a claim of uncertain value against the alleged tortfeasors who caused her injuries, Ahlborn's liquid assets were insufficient to pay for her medical care. Petitioner Arkansas Department of Health Services (ADHS) accordingly determined that she was eligible for medical assistance and paid providers $215,645.30 on her behalf under the State's

Medicaid plan.

ADHS required Ahlborn to complete a questionnaire about her accident, and sent her attorney periodic letters advising him about Medicaid outlays. These letters noted that, under Arkansas law, ADHS had a claim to reimbursement from "any settlement, judgment, or award" obtained by Ahlborn from "a third party who may be liable for" her injuries, and that no settlement "shall be satisfied without first giving [ADHS] notice and a reasonable opportunity to establish its interest." [n21] ADHS has never asserted, however, that Ahlborn has a duty to reimburse it out of any other subsequently acquired assets or earnings.

[n21]. Affidavit of Wayne E. Olive, Exhs. 5 and 6 (Mar. 6, 2003).

On April 11, 1997, Ahlborn filed suit against two alleged tortfeasors in Arkansas state court seeking compensation for the injuries she sustained in the January 1996 car accident. She claimed damages not only for past medical costs, but also for permanent physical injury; future medical expenses; past and future pain, suffering, and mental anguish; past loss of earnings and working time; and permanent impairment of the ability to earn in the future.

ADHS was neither named as a party nor formally notified of the suit. Ahlborn's counsel did, however, keep ADHS informed of details concerning insurance coverage as they became known during the litigation.

*274 In February 1998, ADHS intervened in Ahlborn's lawsuit to assert a lien on the proceeds of any third-party recovery Ahlborn might obtain. In October 1998, ADHS asked Ahlborn's counsel to notify the agency if there was a hearing in the case. No hearing apparently occurred, and the case was settled out of court sometime in 2002 for a total of $550,000. The parties did not allocate the settlement between categories of damages. ADHS did not participate or ask to participate in settlement negotiations. Nor did it seek to reopen the judgment after the case had been dismissed. ADHS did, however, assert a lien against the settlement proceeds in the amount of $215,645.30—the total cost of payments made by ADHS for Ahlborn's care.

On September 30, 2002, Ahlborn filed this action in the United States District Court for the Eastern District of Arkansas seeking a declaration that the lien violated the federal Medicaid laws insofar as its satisfaction would require depletion of compensation for injuries other than past medical expenses. To facilitate the District Court's resolution of the legal questions presented, the parties stipulated that Ahlborn's entire claim was reasonably valued at $3,040,708.18; that the settlement amounted to approximately one-sixth of that sum; and that, if Ahlborn's construction[n22] of federal law was correct, ADHS would be entitled to only the portion of the settlement ($35,581.47) that constituted reimbursement for medical payments made. See App. 17-20.

Ruling on cross-motions for summary judgment, the District Court held that under Arkansas law, which it concluded did not conflict with federal law, Ahlborn had assigned to ADHS her right to any recovery from the third-party tortfeasors to the full extent of Medicaid's payments for her benefit. Accordingly, ADHS was entitled to a lien in the amount of $215,645.30.

*275 The Eighth Circuit reversed. It held that ADHS was entitled only to that portion of the judgment that represented payments for medical care. For the reasons that follow, we affirm.

II

The crux of the parties' dispute lies in their competing constructions of the federal Medicaid laws. The Medicaid program, which provides joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs, was launched in 1965 with the enactment of Title XIX of the Social Security Act (SSA), as added 79 Stat. 343, 42 U.S.C. § 1396 et seq. (2000 ed. and Supp. III). Its administration is entrusted to the Secretary of Health and Human Services (HHS), who in turn exercises his authority through the Centers for Medicare and Medicaid Services (CMS).[FN1]

FN1. Until 2001, CMS was known as the Health Care Financing Administration or HCFA. See 66 Fed. Reg. 35437.

States are not required to participate in Medicaid, but all of them do. The program is a cooperative one; the Federal Government pays between 50% and 83% of the costs the State incurs for patient care,[FN2] and, in return, the State pays its portion of the costs and complies with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program. See § 1396a.

FN2. The exact percentage of the federal contribution is calculated pursuant to a formula keyed to each State's per capita income. See 42 U.S.C. § 1396d(b).

One such requirement is that the state agency in charge of Medicaid (here, AHS) "take all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the plan," § 1396a(a)(25)(A) *276 (2000 ed),[FN3] The agency's obligation extends beyond mere identification, however:

FN3. A "third party" is defined by regulation as "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan," 42 CFR § 433.136 (2005).

"In any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability," § 1396a(a)(25)(B). To facilitate its reimbursement from liable third parties, the State must,

"to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, [have] in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to **1759 have acquired the rights of such individual to payment by any other party for such health care items or services." § 1396a(a)(25)(H).

The obligation to enact assignment laws is reiterated in another provision of the SSA, which reads as follows:

"(a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall—

"(1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who [277] has the legal capacity to execute an assignment for himself, the individual is required-

"(A) to assign the State any rights ... to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party;

"(B) to cooperate with the State ... in obtaining support and payments (described in paragraph (A)) for himself ...; and

"(C) to cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan ...." § 1396k(a).

Finally, "any amount collected by the State under an assignment made" as described above "shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of" the Medicaid recipient. § 1396k(b). "[T]he remainder of such amount collected shall be paid" to the recipient. Ibid.

Acting pursuant to its understanding of these third-party liability provisions, the State of Arkansas passed laws that purport to allow both ADHS and the Medicaid recipient, either independently or together, to recover "the cost of benefits" from third parties. Ark.Code Ann. §§ 20-77-301 through 20-77-309 (2001). Initially, "[a]s a condition of eligibility" for Medicaid, an applicant "shall automatically assign his or her right to any settlement, judgment, or award which may be obtained against any third party to [ADHS] to the full extent of any amount which may be paid by Medicaid for the benefit of the applicant." § 20-77-307(a). Accordingly, "[w]hen medical assistance benefits are provided" to the recipient "because of injury, disease, or disability for which another person is liable," ADHS "shall have a right to recover from the person the cost of benefits so provided," [278] § 20-77-301(a), [FN] ADHS' suit "shall" not, however, "be a bar to any action upon the claim or cause of action of the recipient," § 20-77-301(b). Indeed, the statute envisions that the recipient will sometimes sue together with ADHS, see § 20-77-303, or even alone, if the latter, the assignment described in § 20-77-307(a) "shall be considered a statutory lien on any settlement, judgment, or award received ... from a third party." § 20-77-307(a); see also § 20-77-302(a) ("When an action or claim is brought by a medical assistance recipient ..., any settlement, judgment, or award obtained is subject to the division's claim for reimbursement of the benefits provided to the recipient under" [*] 1760 the medical assistance program"). [FN]

FN3. Under the Arkansas statute, ADHS' right to recover medical costs appears to be broader than that of the recipient. When ADHS sues, "no contributory or comparative

fault of a recipient shall be attributed to the state, nor shall any restitution awarded to the state be denied or reduced by any amount or percentage of fault attributed to a recipient."
§ 20-77-301(A)(1) (2001).

FN6. The Arkansas Supreme Court has held that ADHS has an independent, nonderivative right to recover the cost of benefits from a third-party tortfeasor under § 20-77-301 even when the Medicaid recipient also sues for recovery of medical expenses. See *National Bank of Commerce v. Quirk,* 323 Ark. 769, 792-794, 918 S.W.2d 138, 151-152 (1995).

The State, through this statute, claims an entitlement to more than just that portion of a judgment or settlement that represents payment for medical expenses. It claims a right to recover the entirety of the costs it paid on the Medicaid recipient's behalf. Accordingly, if, for example, a recipient sues alone and settles her entire action against a third-party tortfeasor for $20,000, and ADHS has paid that amount or more to medical providers on her behalf, ADHS gets the whole settlement and the recipient is left with nothing. This is so even when the parties to the settlement allocate damages between medical costs, on the one hand, and other injuries like lost wages, on the other. The same rule also *279 would apply, it seems, if the recovery were the result of a settlement but of a jury verdict. In that case, under the Arkansas statute, ADHS could recover the full $20,000 in the face of a jury allocation of, say, only $10,000 for medical expenses.[FN7]

> FN7. ADHS denies that it would actually demand the full $20,000 in such a case, see Brief for Petitioners 49, n. 13, but points to no provision of the Arkansas statute that would prevent it from doing so.

That this is what the Arkansas statute requires has been confirmed by the State's Supreme Court. In *Arkansas Dept. of Human Servs. v. Ferrel,* 336 Ark. 297, 984 S.W.2d 807 (1999), the court refused to endorse an equitable, noncontextual interpretation of the statute. Rejecting a Medicaid recipient's argument that he ought to retain some of a settlement that was insufficient to cover both his and Medicaid's expenses, the court explained:

"Given the clear, unambiguous language of the statute, it is apparent that the legislature intended that ADHS's ability to recoup Medicaid payments from third parties or recipients not be restricted by equitable subrogation principles such as the 'made whole' rule stated in [ *Franklin v. Healthsource of Arkansas,* 328 Ark. 163, 942 S.W.2d 837 (1997) ]. By creating an automatic legal assignment which expressly becomes a statutory lien, [Ark. Code Ann. § 20-77-307 (1991)] makes an unequivocal statement that the ADHS's ability to recover Medicaid payments from insurance settlements, if it so chooses, is superior to that of the recipient even when the settlement does not pay all the recipient's medical costs." *Id.* at 308, 984 S.W.2d, at 811.

Accordingly, the Arkansas statute, if enforceable against Ahlborn, authorizes imposition of a lien on her settlement proceeds in the amount of $215,645.30. Ahlborn's argument before the District Court, the Eighth Circuit, and this Court *280 has been that Arkansas law goes too far. We agree. Arkansas' statute finds no support in the federal third-party liability provisions, and in fact squarely conflicts with the anti-lien provision of the federal Medicaid laws.

III

[1] We must decide whether ADHS can lay claim to more than the portion of Ahlborn's settlement that represents medical expenses.[FN8] The text of the federal **[176] third-party liability provisions suggests not; it focuses on recovery of payments for medical care. Medicaid recipients must, as a condition of eligibility, "assign the State any rights ... *to payment for medical care* from any third party," 42 U.S.C. § 1396k(a)(1)(A) (emphasis added), not rights to payment for, for example, lost wages. The other statutory language that ADHS relies upon is not to the contrary; indeed, it reinforces the limitation implicit in the assignment provision.

> FN8. The parties have assumed, as do we, that a State can fulfill its obligations under the federal third-party liability provisions by requiring an "assignment" of part of, or placing a lien on, the settlement that a Medicaid recipient procures on her own. Cf. §§ 1396k(a)(1)(B)–(C) (the recipient has a duty to identify liable third parties and to "provid[e] information to *assist the State in pursuing*" those parties (emphasis added)).

First, ADHS points to § 1396a(a)(25)(B)'s requirement that States "seek reimbursement for [medical] assistance *to the extent of such legal liability*" (emphasis added) and suggests that this means that the entirety of a recipient's settlement is fair game. In fact, as is evident from the context of the emphasized language, "such legal liability" refers to "the legal liability of third parties ... *to pay for care and services available under the plan*." § 1396a(a)(25)(A) (emphasis added). Here, the tortfeasor has accepted liability for only one-sixth of the recipient's overall damages, and ADHS has stipulated that only $35,581.47 of that sum represents compensation for medical expenses. Under the circumstances, **[281 the relevant "liability" extends no further than that amount.[FN9]

> FN9. The effect of the stipulation is the same as if a trial judge had found that Ahlborn's damages amounted to $3,040,708.12 (of which $215,645.30 were for medical expenses), but because of her contributory negligence, she could only recover one-sixth of those damages.

Second, ADHS argues that the language of § 1396a(a)(25)(H) favors its view that it can demand full reimbursement of its costs from Ahlborn's settlement. That provision, which echoes the requirement of a mandatory assignment of rights in § 1396k(a), says that the State must have in effect laws that, "to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual," give the State the right to recover from liable third parties. This must mean, says ADHS, that the agency's recovery is limited only by the amount it paid out on the recipient's behalf—and not by the third-party tortfeasor's particular liability for medical expenses. But that reading ignores the rest of the provision, which makes clear that the State must be assigned "the rights of [the recipient] to payment by any other party *for such health care items or services*." § 1396a(a)(25)(H) (emphasis added). Again, the statute does not sanction an assignment of rights to payment for anything other than medical expenses—not lost wages, not pain and suffering, not an inheritance.

Finally, ADHS points to the provision requiring that, where the State actively pursues recovery from the third party, Medicaid be reimbursed fully from "any amount collected by the State under an assignment" before "the remainder of such amount collected" is remitted to the recipient. §

1396k(b). In ADHS' view, this shows that the State must be paid in full from any settlement. See Brief for Petitioners 13. But, even assuming the provision applies in cases where the State does not actively participate in the litigation, ADHS' conclusion rests on a false premise: The *282 "amount recovered ... under an assignment" is not, as ADHS assumes, the entire settlement; as explained above, under the federal statute the State's assigned rights extend only to recovery of payments **1762 for medical care. Accordingly, what § 1396k(b) requires is that the State be paid first out of any damages representing payments for medical care before the recipient can recover any of her own costs for medical care.[FN9]

> FN10. Implicit in ADHS' interpretation of this provision is the assumption that there can be no "remainder" to remit to the Medicaid recipient if all the State has been assigned is the right to damages for medical expenses. That view in turn seems to rest on an assumption either that Medicaid will have paid all the recipient's medical expenses or that Medicaid's expenses will always exceed the portion of any third-party recovery earmarked for medical expenses. Neither assumption holds up. First, as both the Solicitor General and CMS acknowledge, the recipient often will have paid medical expenses out of her own pocket. See Brief for United States as Amicus Curiae 12 (under § 1396k(b), "the beneficiary retains the right to payment for any additional medical expenses personally incurred either before or subsequent to Medicaid eligibility and for other damages"); CMS, State Medicaid Manual § 3907 (last modified Sept. 16, 2005) (envisioning that "medical insurance payments," for example, will be remitted to the recipient if possible). Second, even if Medicaid's outlays often exceed the portion of the recovery earmarked for medical expenses in tort cases, the third-party liability provisions were not drafted exclusively with tort settlements in mind. In the case of health insurance, for example, the funds available under the policy may be enough to cover both Medicaid's costs and the recipient's own medical expenses.

At the very least, then, the federal third-party liability provisions *require* an assignment of no more than the right to recover that portion of a settlement that represents payments for medical care.[FN11] They did not mandate the enactment of the Arkansas scheme that we have described.

> FN11. ADHS concedes that, had a jury or judge allocated a sum for medical payments out of a larger award in this case, the agency would be entitled to reimburse itself only from the portion so allocated. See Brief for Petitioners 49, n. 13; see also Brief for United States as Amicus Curiae 22, n. 14 (noting that the Secretary of HHS "ordinarily accepts" a jury allocation of medical damages in satisfaction of the Medicaid debt, even where smaller than the amount of Medicaid's expenses). Given the stipulation between ADHS and Ahlborn, there is no textual basis for treating the settlement here differently from a judge-allocated settlement or even a jury award; all such awards typically establish a third party's "liability" for both "payment for medical care" and other heads of damages.

*283 IV

[2] If there were no other relevant provisions in the federal statute, the State might plausibly argue that federal law supplied a recovery "floor" upon which States were free to build. In fact, though, the federal statute places express limits on the State's powers to pursue recovery of funds it paid on the recipient's behalf. These limitations are contained in 42 U.S.C. §§ 1396a(a)(18) and

H 20170424 150565392 006 0106 1
35042617-0008630

H 20170424 150565392 006 0107 1
35042617-0008630

1396p. Section 1396a(a)(18) requires that a State Medicaid plan comply with § 1396p, which in turn prohibits States (except in circumstances not relevant here) from placing liens against, or seeking recovery of benefits paid from, a Medicaid recipient:

"(a) Imposition of lien against property of an individual on account of medical assistance rendered to him under a State plan

"(1) No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except-

"(A) pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual, or

"(3) [in certain circumstances not relevant here] ....

"(b) Adjustment or recovery of medical assistance correctly paid under a State plan

**1763 "(1) No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the **284 State plan may be made, except [in circumstances not relevant here]." § 1396p.

Read literally and in isolation, the anti-lien prohibition contained in § 1396p(a) would appear to ban even a lien on that portion of the settlement proceeds that represents payments for medical care.FN11 Ahlborn does not ask us to go so far, though; she assumes that the State's lien is consistent with federal law insofar as it encumbers proceeds designated as payments for medical care. Her argument, rather, is that the anti-lien provision precludes attachment or encumbrance of the remainder of the settlement.

FN12. Likewise, subsection (b) would appear to forestall any attempt by the State to recover benefits paid, at least from the "individual." See, e.g., Martin ex rel. Hoff v. Rochester, 642 N.W.2d 1, 5, n. 5 (Minn.2002); Wallace v. Estate of Jackson, 972 P.2d 446, 450 (Utah 1998) (Durham, J., dissenting) (reading § 1396p to "prohibit[] not only liens against Medicaid recipients but also any recovery for medical assistance correctly paid"). The parties here, however, neither cite nor discuss the anti-recovery provision of § 1396p(b). Accordingly, we leave for another day the question of its import on the analysis.

We agree. There is no question that the State can require an assignment of the right, or chose in action, to receive payments for medical care. So much is expressly provided for by §§ 1396a(a)(25) and 1396k(a). And we assume, as do the parties, that the State can also demand as a condition of Medicaid eligibility that the recipient "assign" in advance any payments that may constitute reimbursement for medical costs. To the extent that the forced assignment is expressly

authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision. See *Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 383–385, and n. 7, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003). But that does not mean that the State can force an assignment of, or place a lien on, any other portion of Ahlborn's property. As explained above, the exception carved out by *286 §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care. Beyond that, the anti-lien provision applies.

[3] ADHS tries to avoid the anti-lien provision by characterizing the settlement proceeds as not Ahlborn's "property." FN13 Its argument appears to be that the automatic assignment effected by the Arkansas statute rendered the proceeds the property of the State. FN14 See Brief for Petitioners 31 ("[U]nder Arkansas law, the lien does not attach to the recipient's 'property' because it attaches only to those proceeds already assigned to the Department as a condition of Medicaid eligibility"). That argument fails for two reasons. First, ADHS insists that Ahlborn at all times until judgment retained her entire chose in action–a right that included her claim for medical damages. The statutory lien, then, cannot have attached until the proceeds materialized. That much is clear **1764 from the text of the Arkansas statute, which says that the "assignment shall be considered a statutory lien on any settlement ... *received by the recipient from a third party*," Ark. Code Ann. § 20-77-307(c) (2001) (emphasis added). The settlement is not "received" until the chose in action has been reduced to proceeds in Ahlborn's possession. Accordingly, the assertion that any of the proceeds belonged to the State all along lacks merit.

> FN13. "Property" is defined by regulation as "the homestead and all other personal and real property in which the recipient has a legal interest." 42 CFR § 433.36(h) (2005).

> FN14. The United States as *amicus curiae* makes the different argument that the proceeds never became Ahlborn's "property" because "to the extent the third party's payment passes through the recipient's hands on route to the State, it comes with the State's lien already attached." Brief as *Amicus Curiae* 18. Even if that reading were consistent with the Arkansas statute (and it is not, see *infra*, at 1764), the United States' characterization of the "assignment" simply reinforces Ahlborn's point. This is a lien that attaches to *the property of the recipient*.

Second, the State's argument that Ahlborn lost her property rights in the proceeds the instant she applied for medical assistance is inconsistent with the creation of a statutory *286 lien on those proceeds. Why, after all, would ADHS need a lien on its own property? A lien typically is imposed on the property of *another* for payment of a debt owed by that other. See Black's Law Dictionary 922 (5th ed. 1990). Nothing in the Arkansas statute defines the term otherwise.

That the lien is also called an "assignment" does not alter the analysis. The terms that Arkansas employs to describe the mechanism by which it lays claim to the settlement proceeds do not, by themselves, tell us whether the statute violates the anti-lien provision. See *United States v. Craft*, 535 U.S. 274, 279, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002); *Drye v. United States*, 528 U.S. 49, 58–61, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999). Although denominated an "assignment," the effect of the statute here was not to divest Ahlborn of all her property interest; instead, Ahlborn retained the right to sue for medical care payments, and the State asserted a right to the fruits of that suit once they materialized. In effect, and as at least some of the statutory language recognizes, Arkansas has imposed a lien on Ahlborn's property. FN15 Since none of the federal

third-party liability provisions excepts that lien from operation of the anti-lien provision, its imposition violates federal law.

FN14. Because ADHS insists that "Arkansas law did *not* require Ahlborn to assign her claim or her right to sue," Brief for Petitioner 33 (emphasis in original), we need not reach the question whether a State may force a recipient to assign a chose in action to receive as much of the settlement as is necessary to pay Medicaid's costs. The Eighth Circuit thought this would be impermissible because the State cannot "circumvent the restrictions of the federal anti-lien statute simply by requiring an applicant for Medicaid benefits to assign property rights to the State before the applicant liquidates the property to a sum certain." App. to Pet. for Cert. 6. Indeed, ADHS acknowledges that Arkansas cannot, for example, require a Medicaid applicant to assign in advance any right she may have to recover an inheritance or an award in a civil case not related to her injuries or medical care. This arguably is no different; as with assignment of those other choses in action, assignment of the right to compensation for lost wages and other nonmedical damages is nowhere authorized by the federal third-party liability provisions.

*287 V

[4] ADHS and its *amici* urge, however, that even if a lien on more than medical damages would violate federal law in some cases, a rule permitting such a lien ought to apply here either because Ahlborn breached her duty to "cooperate" with ADHS or because there is an inherent danger of manipulation in cases where the parties to a tort case settle without judicial oversight or input from the State. Neither argument is persuasive.

The United States proposes a default rule of full reimbursement whenever the recipient breaches her duty to "cooperate," and asserts that Ahlborn in fact breached that duty.FN16 But, even if the Government's **17765 allegations of obstruction were supported by the record, its conception of the duty to cooperate strays far beyond the text of the statute and the relevant regulations. The duty to cooperate arises principally, if not exclusively, in proceedings initiated by *the State* to recover from third parties. See 42 U.S.C. § 1396k(a)(1)(C) (recipients must "cooperate with the State in identifying ... and providing information to assist the State in pursuing" third parties). Most of the accompanying federal regulations simply echo this basic duty; all they add is that the recipient must "[p]ay to the agency any support or medical care funds received that are covered by the assignment of rights." 42 CFR § 433.147(b)(4) (2005).

FN16. See, *e.g.,* Brief for United States as *Amicus Curiae* 14 (alleging that Ahlborn "omitt[ed] or understat[ed] the medical damages claim from her lawsuit and attempt[ed] to horde for herself the third-party liability payments"); *id.,* at 15 ("[H]aving forsaken her federal and state statutory duties of candid and forthcoming cooperation ... [,] respondent, rather than the taxpayer, must bear the financial consequences of her actions"); *id.,* at 21, 24 (referring to Ahlborn's "backdoor settlement" and "obstruction and attrition," as well as her "calculated evasion of her legal obligations").

In any event, the aspersions the United States casts upon Ahlborn are entirely unsupported; all the record reveals is that ADHS, despite having intervened in the lawsuit and *288 asked to be apprised of any hearings, neither asked to be nor was involved in the settlement negotiations.

Whatever the bounds of the duty to cooperate, there is no evidence that it was breached here.

ADHS' and the United States' alternative argument that a rule of full reimbursement is needed generally to avoid the risk of settlement manipulation is more colorable, but ultimately also unpersuasive. The issue is not, of course, squarely presented here; ADHS has stipulated that only $35,581.47 of Ahlborn's settlement proceeds properly are designated as payments for medical costs. Even in the absence of such a post-settlement agreement, though, the risk that parties to a tort suit will allocate away the State's interest can be avoided either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision.[FN17] For just as there are risks in underestimating the value of readily calculable damages in settlement negotiations, so also is there a countervailing concern that a rule of absolute priority might preclude settlement in a large number of cases, and be unfair to the recipient in others.[FN18]

> FN17. As one *amicus* observes, some States have adopted special rules and procedures for allocating tort settlements in circumstances where, for example, private insurers' rights to recovery are at issue. See Brief for Association of Trial Lawyers of America 20-21. Although we express no view on the matter, we leave open the possibility that such rules and procedures might be employed to meet concerns about settlement manipulation.

> FN18. The point is illustrated by state cases involving the recovery of workers' compensation benefits paid to an employee (or the family of an employee) whose injuries were caused by a third-party tortfeasor. In *Flanigan v. Department of Labor and Industries*, 123 Wash.2d 418, 869 P.2d 14 (1994), for example, the court concluded that the State agency could not satisfy its lien out of damages the injured worker's spouse recovered as compensation for loss of consortium. The court explained that the department could not "share in damages for which it has provided no compensation" because such a result would be "absurd and fundamentally unjust." *Id.* at 426, 869 P.2d at 17.

\*289 VI

Finally, ADHS contends that the Court of Appeals' decision below accords insufficient weight to two decisions by the Departmental Appeals Board of HHS (Board) rejecting appeals by the States of California and Washington from denial of reimbursement for costs those States paid on \*\*1766 behalf of Medicaid recipients who had settled tort claims. See App. to Pet. for Cert. 43-67 (reproducing *In re Washington State Dept. of Social & Health Servs.*, Dec. No. 1561, 1996 WL 157123 (HHS Dept.App. Bd., Feb. 7, 1996)); App. to Pet. for Cert. 68-86 (reproducing *In re California Dept. of Health Servs.*, Dec. No. 1504, 1995 WL 66924 (HHS Dept.App. Bd., Jan. 5, 1995)). Because the opinions in those cases address a different question from the one posed here, make no mention of the anti-lien provision, and, in any event, rest on a questionable construction of the federal third-party liability provisions, we conclude that they do not control our analysis.

Normally, if a State recovers from a third party the cost of Medicaid benefits paid on behalf of a recipient, the Federal Government owes the State no reimbursement, and any funds already paid by the Federal Government must be returned. See 42 CFR § 433.140(c)(2) (2005) (federal financial participation "is not available in Medicaid payments if ... [t]he agency received reimbursement from a liable third party"); § 433.140(c). Washington and California both had

adopted schemes according to which the State refrained from claiming full reimbursement from tort settlements and instead took only a portion of each settlement. (In California, the recipient typically could keep at least 50% of her settlement, see App. to Pet. for Cert. 72; in Washington, the proportion varied from case to case, see id., at 48-51.) Each scheme resulted in the State's having to pay a portion of the recipient's medical costs-a portion for which the State sought partial reimbursement from the Federal Government. CMS (then called HCFA) denied this partial reimbursement, *290 on the ground that the States had an absolute duty to seek full payment of medical expenses from third-party tortfeasors.

The Board upheld CMS' determinations. In California's appeal, which came first, the Board concluded that the State's duty to seek recovery of benefits "from available third party sources to the fullest extent possible" included demanding full reimbursement from the entire proceeds of a Medicaid recipient's tort settlement. Id., at 76. The Board acknowledged that § 1396k(a) "refers to assignment only of 'payment for medical care,' " but thought that "the statutory scheme as a whole contemplates that the actual recovery might be greater and, if it is, that Medicaid should be paid first." Ibid. The Board gave two other reasons for siding with CMS: First, the legislative history of the third-party liability evinced a congressional intent that "the Medicaid program ... be reimbursed from available third party sources to the fullest extent possible," ibid.; and, second, California had long been on notice that it would not be reimbursed for any shortfall resulting from failure to fully recoup Medicaid's costs from tort settlements, see id., at 77. The Board also opined that the State could not escape its duty to seek full reimbursement by relying on the Medicaid recipient's efforts in litigating her claims. See id., at 79-80.

Finally, responding to the State's argument that its scheme gave Medicaid recipients incentives to sue third-party tortfeasors and thus resulted in both greater recovery and lower costs for the State, the Board observed that "a state is free to allow recipients to retain the state's share" of any recovery, so long as it does not compromise the Federal Government's share, id., at 85.

The Board reached the same conclusion, by the same means, in the Washington case. See id., at 53-64.

Neither of these adjudications compels us to conclude that Arkansas' statutory **1767 lien comports with federal law. First, the Board's rulings address a different question from the one *291 presented here. The Board was concerned with the Federal Government's obligation to reimburse States that had, in its view, failed to seek full recovery of Medicaid's costs and had instead relied on recipients to act as private attorneys general. The Board neither discussed nor even so much as cited the federal anti-lien provision.

Second, the Board's acknowledgment that the assignment of rights required by § 1396k(a) is limited to payments for medical care only reinforces the clarity of the statutory language. Moreover, its resort to "the statutory scheme as a whole" as justification for muddying that clarity is nowhere explained. Given that the only statutory provisions CMS relied on are §§ 1396a(a)(25), 1396k(a), and 1396k(b), see id., at 75-76; id., at 54-55, and given the Board's concession that the first two of these limit the State's assignment to payments for medical care, the "statutory scheme" must mean § 1396k(b). But that provision does not authorize the State to demand reimbursement from portions of the settlement allocated or allocable to nonmedical damages; instead, it gives the State a priority disbursement from the medical expenses portion

alone. See *supra*, at 1752. In fact, in its adjudication in the Washington case, the Board conceded as much: "[CMS] may require a state to assert a collection priority over funds obtained by Medicaid recipients in [third-party liability] suits *even though the distribution methodology set forth in section (1396k(b) ) refers only to payments collected pursuant to assignments for medical care*." App. to Pet. for Cert. 54 (emphasis added). The Board's reasoning therefore is internally inconsistent.

Third, the Board's reliance on legislative history is misplaced. The Board properly observed that Congress, in crafting the Medicaid legislation, intended that Medicaid be a "payer of last resort," S.Rep. No. 99-146, p. 313 (1985). That does not mean, however, that Congress meant to authorize States to seek reimbursement from Medicaid recipients themselves; in fact, with the possible exception of a lien ¶292 on payments for medical care, the statute expressly prohibits liens against the property of Medicaid beneficiaries. See 42 U.S.C. § 1396p(a). We recognize that Congress has delegated "broad regulatory authority to the Secretary [of HHS] in the Medicaid area," *Wisconsin Dept. of Health and Family Servs. v. Blumer*, 534 U.S. 473, 496, n. 19, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002), and that agency adjudications typically warrant deference. Here, however, the Board's reasoning couples internal inconsistency with a conscious disregard for the statutory text. Under these circumstances, we decline to treat the agency's reasoning as controlling.

### VII

Federal Medicaid law does not authorize ADHS to assert a lien on Ahlborn's settlement in an amount exceeding $35,581.47, and the federal anti-lien provision affirmatively prohibits it from doing so. Arkansas' third-party liability provisions are unenforceable insofar as they compel a different conclusion. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

U.S.,2006.

Arkansas Dept. of Health and Human Services v. Ahlborn
547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459, 74 USLW 4214, Med & Med GD (CCH) P
301,841, 06 Cal. Daily Op. Serv. 3597, 2006 Daily Journal D.A.R. 5159, 19 Fla. L. Weekly Fed.
§ 169

Briefs and Other Related Documents (Back to top)

· 2006 WL 504570 (Appellate Brief) Reply Brief for the Petitioners (Feb. 7, 2006) Original Image of this Document (PDF)

· 2006 WL 159217 (Appellate Brief) Brief of the Association of Trial Lawyers of America as Amicus Curiae in Support of Respondents (Jan. 13, 2006) Original Image of this Document (PDF)

· 2006 WL 132216 (Appellate Brief) Brief for Respondent (Jan. 12, 2006) Original Image of this Document (PDF)

· 2005 WL 3222284 (Appellate Brief) Amicus Curiae Brief Of The States of Washington,

H 20170424 150565392 006 0113 1
35042417-0008630

Alaska, Arizona, Colorado, Connecticut, District of Columbia, Georgia, Hawaii, Idaho, Illinois,
Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, Montana, New
Hampshire, New Jersey, New York, North Dakota, Ohio, Oregon, Rhode Island, South Carolina,
South Dakota, Utah, Wisconsin, and Wyoming In Support Of Petitioners (Nov. 23, 2005)
, 2005 WL 3226397 (Appellate Brief) Brief for the United States as Amicus Curiae Supporting
Petitioners (Nov. 23, 2005)
, 2005 WL 3156905 (Appellate Brief) Brief for the Petitioners (Nov. 22, 2005)
, 2005 WL 3197512 (Joint Appendix) (Nov. 22, 2005)
, 2005 WL 2011417 (Appellate Petition, Motion and Filing) Respondent's Brief in Response to
Petition for Writ of Certiorari (Aug. 17, 2005)
, 04-1506 (Docket) (May 11, 2005)
, 2005 WL 1126214 (Appellate Petition, Motion and Filing) Petition for Writ of Certiorari (May
9, 2005)
END OF DOCUMENT

M 20170424 150565392 006 0114 1
35042417-0008630

# EXHIBIT C
## STEPHEN P. CARRIGAN
## PROFESSIONAL RESUME

Stephen P. Carrigan
5900 Memorial Drive, Suite 210
Houston, Texas 77007
(713) 739-0810
scarrigan@ccatriallaw.com

### Qualifications:

Board certified litigation attorney practicing in the areas of civil trial law, personal injury law, family law, general litigation and criminal defense work.

### Professional Experience:

1980 to present
Managing Partner
The Carrigan Law Firm, LLP

Firm Name Change March, 2013
Carrigan, Cook & Anderson, PLLC

Partner with litigation boutique firm handling civil trial, personal injury, family and criminal docket, and appellate work in state courts of appeal and the 5th Circuit Court of Appeals.

### Education

University of Texas, B.B.A. Business (December 1976)
University of Texas, J.D., (May 1980)
    Dean Keeton Fellowship Recipient

### Associations

State Bar of Texas
American Board of Trial Attorneys (ABOTA)
Houston Bar Association
Houston Trial Lawyers Association
Texas Exes Association
Houston Country Club, Houston, Texas
Corpus Christi Country Club, Corpus Christi, Texas
Corpus Christi Bar Association

### Courts Admitted

Texas State Courts



CAUSE NO. 1627771

| | | |
|---|---|---|
| TOMAS R. TIJERINA | § | IN THE DISTRICT COURT OF |
|     Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | WALKER COUNTY, TEXAS |
| | § | |
| SHOEL BRASHEAR TRUCKING, | § | |
| LLC & CARLTON J. MULDER | § | |
|     Defendants | § | 278TH JUDICIAL DISTRICT |

### ORDER GRANTING PLAINTIFF'S MOTION TO DETERMINE THE PORTION OF PLAINTIFF'S SETTLEMENT MONIES THAT CONSTITUTE REIMBURSEMENT FOR MEDICAL PAYMENTS MADE

On the _____ day of _____, 2017, the Court heard the Plaintiff's Motion to Determine the Portion of Plaintiff's Settlement Monies that Constitute Reimbursement for Medical Payments Made filed in this cause by Plaintiff, TOMAS TIJERINA. All parties appeared by and through their respective counsel. After examining the pleadings and summary judgment evidence, and hearing the arguments of counsel, the court is of the opinion and finds that the Plaintiff, TOMAS TIJERINA, is entitled to Summary Judgment on Defendant's claim for recovery of judgment and costs of court.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion to Determine the Portion of Plaintiff's Settlement Monies that Constitute Reimbursement for Medical Payments Made and the same is hereby granted in favor of Plaintiff TOMAS TIJERINA and that Medicare be repaid the amount of

$_____ from Plaintiff's settlement funds.

SIGNED this the _____ day of _____, 2017.

_____

JUDGE PRESIDING

FAX(TX)

| # | DATE | START T. | RECEIVER | COM.TIME | PAGE | TYPE/NOTE | | FILE |
|---|------|----------|----------|----------|------|-----------|----|------|
| 001 | APR/20 | 03:31PM | 14058693309 | 0:12:52 | 37 | MEMORY OK | ECM | 3020 |

# CARRIGAN & ANDERSON, PLLC

ATTORNEYS AT LAW

*Stephen P. Carrigan*
*scarrigan@ccatriallaw.com*

April 20, 2017

TO:                    MSPTC-NGHP
FAX NUMBER:             405-869-3309

FROM:                   Stephen P. Carrigan /Wendy Watson, Legal Assistant
NO. OF PAGES:           37 (Includes Cover Sheet)

RE:                     Tomas R. Tijerina v. Shoel Brashear Trucking, LLC and Carlton
                        Mulder

**MESSAGE:**

# CARRIGAN & ANDERSON, PLLC

ATTORNEYS AT LAW

*Stephen P. Carrigan*
*scarrigan@ccatriallaw.com*

April 20, 2017

TO:                    MSPTC-NGHP
FAX NUMBER:            405-869-3309

FROM:                  Stephen P. Carrigan /Wendy Watson, Legal Assistant
NO. OF PAGES:          37 (Includes Cover Sheet)

RE:                    Tomas R. Tijerina v. Shoel Brashear Trucking, LLC and Carlton
                       Mulder

**MESSAGE:**

1605 Washington
Laredo, TX 78040
(956) 319-6092
(956) 242-7231 Facsimile

5900 Memorial Drive, Suite 210
Houston, TX 77007
(713) 739-0810
(713) 739-0821 Facsimile

101 N. Shoreline Blvd., Suite 420
Corpus Christi, TX 78401
(361) 884-4433
(361) 884-4434 Facsimile

U.S. ... 20170424 150565392 096 0120 1
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

7013 2250 0000 5170 4322

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To MSPRC-NGHP

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MSPRC-NGHP
P.O. BOX 138832
OKLAHOMA CITY, OKLAHOMA 731113
                              73113

9590 9402 1915 6104 5760 81

2. Article Number (Transfer from service label)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

EXHIBIT "E"



July 20, 2017

6281 1 MB 0.423
***MIXED AADC 720 R:6281 T:24 P:24 PC:4 F:756601
TOMAS R TIJERINA
1710 9TH ST UNIT 11
LUBBOCK, TX 79401-2509



Re:  Past-Due debt owed CMS as of July 14, 2017:        $47,343.05
      Date debt became past-due:                         June 09, 2017
      Date of Demand letter previously sent:             April 10, 2017
      Case Identification Numbers:
      Taxpayer Identification Number (TIN):
      Beneficiary Name:                                  TIJERINA, TOMAS R
      Medicare ID:
      Date of Incident:                                  April 13, 2014
      Insurer Policy Number:

Dear TOMAS R TIJERINA:

**NOTICE OF INTENT TO REFER DEBT TO THE DEPARTMENT OF TREASURY OR A DEPARTMENT OF TREASURY DESIGNATED DEBT COLLECTION CENTER FOR CROSS-SERVICING AND OFFSET OF PAYMENTS.**

The Centers for Medicare and Medicaid Services (CMS) has determined that you owe the Medicare program the amount shown above and that this amount is delinquent (past due). This debt arose under the Medicare Secondary Payer (MSP) provisions of the Social Security Act.

- The amount shown includes principal and interest. This amount may be collected through offset of any payments (subtraction from any payments) due you.

- The Debt Collection Improvement Act (DCIA) of 1996 requires Federal agencies to refer delinquent debts to the Department of Treasury and/or a designated Debt Collection Center for collection. Collection actions may include Treasury's Offset Program which collects delinquent Federal debts through offset from other Federal agency payments you may be entitled to, including the offset of your income tax refund through the referral of





this debt to the Internal Revenue Service (IRS) and Federal benefit payments such as Social Security retirement or disability benefits.

- Treasury, or a designated Debt Collection Center also uses various other collection actions including offset, demand letters, phone calls, referral to a private collection agency and/or referral to the Department of Justice or agency counsel for litigation. Other available collections tools include Federal salary offset and administrative wage garnishment.

**The purpose of this notice is to inform you of our (CMS) intention to refer your debt to Treasury and/or a designated Debt Collection Center, under the provisions of the DCIA, Title 31 United States Code, Section 3711, to collect this debt.**

This referral will permit the Department of Treasury and/or a designated Debt Collection Center to pursue recovery using the processes and tools mentioned above. During this collection process, interest will continue to accrue on the debt and you will remain legally responsible for any amount not satisfied through the collection or offset efforts.

**Please read the following information carefully as it explains your rights and options which, may assist you in resolving this matter prior to referral.**

<u>**Paying In Full:**</u>  Your debt will not be referred to the Department of Treasury if, you make payment in full. The past-due debt owed to CMS as of July 14, 2017, including interest accrued through July 08, 2017, is $47,343.05. By regulation, interest is due and payable for each full 30-day period that the debt is not fully liquidated. Be advised that interest will continue to accrue monthly and will be added to the balance if the debt remains past-due.

Please make your check or money order payable to **Medicare**, include a copy of this notice and forward both to the address at the end of this letter. Your check should also include the "Case Identification Number(s)", as shown at the beginning of this letter, to ensure the you receive proper credit for your payment. If you cannot make the payment in full, you may be allowed to enter into an extended repayment agreement. You can contact the Benefits Coordination & Recovery Center (BCRC) for more details.

<u>**Challenging the Indebtedness:**</u>  You have the right to request an opportunity to inspect and copy records relating to the debt. This request must be submitted in writing to the address listed at the end of this letter. Additionally, you have the right to present evidence that all or part of your debt is not past due or legally enforceable. In order to exercise this right, this office must receive a copy of the evidence to support your position.



Please include a copy of this notice when corresponding with the agency regarding this matter. You must submit any evidence that the debt is not owed or legally enforceable, within 60 days of the date of this letter. Failure to present any evidence will result in the automatic referral of the debt to the Department of Treasury and/or a designated DCC for cross-servicing and/or offset actions.

**Administrative Appeal/Judicial Review Information:** Under CMS' policy, debt is not referred to Treasury if the debt is the subject of an administrative appeal or judicial review. If you have received this letter and your debt is in the process of an administrative appeal or judicial review, please notify us immediately. Also, if you later receive notice of a collection action on this debt from Treasury and the debt is in the process of an administrative appeal or judicial review, please notify us immediately so that we may recall the debt from Treasury.

It is possible that you are receiving this notice even through you still have time to appeal Medicare's claim for repayment. You continue to have the right to appeal Medicare's recovery claim by the appeal deadline. If you decide to appeal (or continue to appeal), Medicare will not take any collection action while it is processing your request. However, once a decision is issued, unless and until you request further review, Medicare may attempt to collect the debt, including interest.

**Bankruptcy Related Information:** If you have filed for bankruptcy and an automatic stay of bankruptcy is in effect, you are not subject to offset while the automatic stay is in effect. Documentation supporting your bankruptcy status, along with a copy of this notice, must be forwarded to this office at the address at the end of this letter in order to avoid referral.

**Additional Information:** For Individual Debtors Filing a Joint Federal Income tax Return, TOP automatically refers debts to the IRS for offset. Your Federal income tax return is subject to offset under this program. If you file a joint income tax return, you should contact the IRS before filing your tax return to determine the steps required to protect the share of any refund which may be payable to the non-debtor spouse.

If you have questions concerning this debt, extended repayment plans, and/or relating to the submissions of evidence you may contact the BCRC at:

> NGHP
> PO BOX 138832
> OKLAHOMA CITY, OK 73113
> Telephone Number: 1-855-798-2627
> TTY/TDD: 1-855-797-2627



If you call, please be sure that you have this letter available so that you can readily provide us with the identification information provided at the top of the letter.

Sincerely,

BCRC

CC: CARRIGAN & ANDERSON, PLLC

Enclosure: Payment Summary Form





# Payment Summary Form

Report Number:

Contractor: RMCAN - 5-5
NGHP

Beneficiary Name:
Beneficiary Medicare ID: TIJERINA, TOMAS R

Case ID:
Case Type: L – Liability
Date of Incident: 04/13/2014

Date:: 07/20/2017
Time: 12:54:57
Page 5 of 7

| TOS | ICN | Line # | Processing Contractor | Provider Name | ICD Indicator | Diagnosis Codes | From Date | To Date | Total Charges | Reimburse Amount | Conditional Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 60 |  | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 86503, E8120, V4987, 3159, 51881, 80709, 81000, 8500, 8600, 86803 | 04/13/2014 | 04/19/2014 | $87,253.76 | $38,585.92 | $38,585.92 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | V0382, E8120, V4987, 3159, 51881, 80709, 81000, 8500, 8600, 86803 | 04/19/2014 | 04/19/2014 | $76.00 | $51.58 | $51.58 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 80700 | 04/28/2014 | 04/28/2014 | $356.00 | $42.75 | $42.75 |
| 40 | | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 81000, 86500 | 04/28/2014 | 04/28/2014 | $34.10 | $68.97 | $34.10 |

*432017193000067338*






| Type | Seq | Code | Name | ICD | Diagnosis | Date | Date | Amount | Amount | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 40 | 0 | 04011 | ST JOSEPH REGIONAL HEALTH CENTER | ICD-9 | 81000 | 04/30/2014 | 04/30/2014 | $137.50 | $111.72 | $111.72 |
| 71 | 001 | 04412 | PHI INC | ICD-9 | 86509, E8120, 81000, 8604 | 04/30/2014 | 04/30/2014 | $22,184.00 | $3,881.25 | $3,881.25 |
| 71 | 002 | 04412 | PHI INC | ICD-9 | 86509, E8120, 81000, 8604 | 04/13/2014 | 04/13/2014 | $13,949.00 | $1,268.96 | $1,268.96 |
| 71 | 001 | 04412 | PHI INC | ICD-9 | 86509, E8120, 9584 | 04/13/2014 | 04/13/2014 | $22,184.00 | $0.00 | $0.00 |
| 71 | 001 | 04412 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $318.00 | $29.62 | $29.62 |
| 71 | 004 | 04412 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $254.00 | $24.58 | $24.58 |
| 71 | 003 | 04412 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $2,000.00 | $264.37 | $264.37 |
| 71 | 002 | 04412 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | 001 | 04412 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | 001 | 04412 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | 001 | 04412 | RAPHAEL, LEONARD | ICD-9 | 86509 | 04/13/2014 | 04/13/2014 | $409.00 | $132.92 | $132.92 |
| 71 | 001 | 04412 | FLIPPN, NICHOLAS W | ICD-9 | 95901 | 04/13/2014 | 04/13/2014 | $566.00 | $95.35 | $95.35 |
| 71 | 001 | 04412 | FLIPPN, NICHOLAS W | ICD-9 | 81504 | 04/13/2014 | 04/13/2014 | $2,715.00 | $880.52 | $880.52 |
| 71 | 002 | 04412 | FLIPPN, NICHOLAS W | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $0.00 | $0.00 | $0.00 |
| 71 | 001 | 04412 | STEINES, MICHAEL | ICD-9 | 86504, E8120, 9584 | 04/13/2014 | 04/13/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 003 | 04412 | STEINES, MICHAEL | ICD-9 |  | 04/13/2014 | 04/13/2014 | $43.00 | $0.00 | $0.00 |
| 71 | 001 | 04412 | HYMAN, BENJAMIN | ICD-9 | V5881, V5882, 80709 | 04/13/2014 | 04/13/2014 | $409.00 | $0.00 | $0.00 |
| 71 | 001 | 04412 | NAM, JERRY I | ICD-9 | 99511 | 04/13/2014 | 04/13/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 002 | 04412 | NAM, JERRY I | ICD-9 | 99511 | 04/13/2014 | 04/13/2014 | $7.09 | $0.00 | $0.00 |
| 71 | 001 | 04412 | PICKETT, BRYAN | ICD-9 | 86509, 78650, 78909, 8602 | 04/13/2014 | 04/13/2014 | $1,216.00 | $170.99 | $170.99 |

*4420171930000067338*






*852017193000067338*

| 71 | 001 | 04412 | NAM, JERRY I | ICD-9 | 99511 | 04/13/2014 | $43.00 | $7.09 | $7.09 |
|---|---|---|---|---|---|---|---|---|---|
| 71 | 001 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/14/2014 | $167.57 | $167.57 | $167.57 |
| 71 | 002 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/15/2014 | $510.00 | $167.57 | $167.57 |
| 71 | 003 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/16/2014 | $121.00 | $53.92 | $53.92 |
| 71 | 004 | 04412 | SPENCER, SCOTT E | ICD-9 | 51881 | 04/17/2014 | $121.00 | $53.92 | $53.92 |
| 71 | 001 | 04412 | APPELT, ERIC A | ICD-9 | V5882 | 04/15/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 99511 | 04/15/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | APPELT, ERIC A | ICD-9 | 80709, V5882 | 04/16/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 99511, 80709 | 04/17/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | DEBERRY-CARLISLE, A F | ICD-9 | 80706 | 04/17/2014 | $170.00 | $55.02 | $55.02 |
| 71 | 002 | 04412 | DEBERRY-CARLISLE, A F | ICD-9 | 80706 | 04/18/2014 | $170.00 | $55.02 | $55.02 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 99511 | 04/18/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | TINDALL, BRONSON S | ICD-9 | 99511 | 04/19/2014 | $43.00 | $7.09 | $7.09 |
| 71 | 001 | 04412 | KASH, FREDERICK F | ICD-9 | 78609, V5882 | 04/28/2014 | $48.00 | $8.47 | $8.47 |
| 71 | 001 | 04412 | BRAZEAL, JUSTIN R | ICD-9 | 81000 | 04/30/2014 | $79.65 | $38.28 | $38.28 |
| 71 | 002 | 04412 | BRAZEAL, JUSTIN R | ICD-9 | 81000 | 04/30/2014 | $32.85 | $6.53 | $6.53 |

Sum of Total Charges: $156,253.86

Total Conditional Charges: $46,244.74

EXHIBIT "F"

**Hallmark Specialty Underwriters, Inc.**
7550 W. IH 10, Suite 1400
San Antonio, TX 78229

**Frost Bank**
M 20170807 0F0001532 038 0133 5
10080717-0002616

205542

INSURED NAME   SHOEL BRASHEAR TRUCKING LLC

| Company | HALLMARK COUNTY MUTUAL INS CO. | CLAIM NUMBER | 141656TG | DOL 04/13/14 |
|---|---|---|---|---|

PAY          ****4,700 DOLS 00 CTS

DATE                                    AMOUNT

07/24/2017          $****4,700.00

TO THE
ORDER
OF          MEDICARE

BY _____  **Not Valid After 180 Days** JERINA

FULL & FINAL RELEASE OF ANY & ALL CLAIMS & ALL LIENS KNOWN & UNKNOWN – PAYMENT FOR TEXAS XYS

⑈205542⑈ ⑆114923222⑆ 299995447⑈

---

**HALLMARK SPECIALTY UNDERWRITERS, INC.**

M 20170807 0F0001532 038 0134 5
10080717-0002616

205542

Clm# 141656TG   Pol# TXA507990   DOL 04/13/14   HALLMARK COUNTY MUTUAL INS CO.
Desc:  FULL & FINAL RELEASE OF ANY & ALL CLAIMS & ALL LIENS KNOWN & UNKNOWN – PAYMENT F

07/24/2017        MEDICARE                                          4,700.00

Mail To:        JOHANSON & FAIRLESS,LLP
                1456 FIRST COLONY BLVD
                SUGARLAND, TX  77479                       AUG 0 1 2017

TGA-IB-3
4-07

# CARRIGAN & ANDERSON, PLLC

## 5900 MEMORIAL DRIVE, SUITE 210
## HOUSTON, TEXAS 77007

Telephone
713-739-0810

Facsimile
713-739-0821

August 3, 2017

MSPRC-NGHP
P.O. Box 138832
Oklahoma City, Oklahoma 73113

Re:     Cause No. 22181; Tomas R. Tijerina v. Shoel Brashear Trucking, LLC & Carlton J. Mulder;
        In the 128th Judicial District of Walker County, Texas

        Beneficiary HICN:
        Case I.D.

Dear Sir or Madam:

        Enclosed please find Hallmark Specialty Underwriters, Inc.'s check number 205542 and a
copy of the Order Granting Plaintiff's Motion To Determine regarding the referenced cause of
action.

        If you have any questions, please feel free to contact me at (713) 739-0810 ext. 200.

                                                    Sincerely,

                                                    Robin A. Jones, Bookkeeper

Enclosures

M 20170807 0F0001532 038 0136 5
10080717-0002616

CAUSE NO. 1627771

| | | |
|---|---|---|
| **TOMAS R. TIJERINA** | § | **IN THE DISTRICT COURT OF** |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | **WALKER COUNTY, TEXAS** |
| | § | |
| **SHOEL BRASHEAR TRUCKING,** | § | |
| **LLC & CARLTON J. MULDER** | § | |
| **Defendants** | § | **278TH JUDICIAL DISTRICT** |

## ORDER GRANTING PLAINTIFF'S MOTION TO DETERMINE THE PORTION OF PLAINTIFF'S SETTLEMENT MONIES THAT CONSTITUTE REIMBURSEMENT FOR MEDICAL PAYMENTS MADE

On the _26_ day of _June_, 2017, the Court heard the Plaintiff's Motion to Determine the Portion of Plaintiff's Settlement Monies that Constitute Reimbursement for Medical Payments Made filed in this cause by Plaintiff, TOMAS TIJERINA. All parties appeared by and through their respective counsel. After examining the pleadings and summary judgment evidence, and hearing the arguments of counsel, the court is of the opinion and finds that the Plaintiff, TOMAS TIJERINA, is entitled to Summary Judgment on Defendant's claim for recovery of judgment and costs of court.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion to Determine the Portion of Plaintiff's Settlement Monies that Constitute Reimbursement for Medical Payments Made and the same is hereby granted in favor of Plaintiff TOMAS TIJERINA and that Medicare be repaid the amount of

FILED
TIME 9:05
26 DAY OF June 20 17
ROBYN FLOWERS
District Clerk Walker County
By _____ Deputy

A TRUE COPY I CERTIFY UNDER MY HAND
AND SEAL OF OFFICE.
ROBYN FLOWERS CLERK DISTRICT COURT
WALKER COUNTY, TEXAS.
BY _____ DEPUTY.

M 20170807 OF0001532 038 0137 5
10080717-0002616

$ __4,700 00__ from Plaintiff's settlement funds.

SIGNED this the __26__ day of __June__, 2017.

_____

JUDGE PRESIDING

CARRIGAN & ANDERSON, PLLC
5900 Memorial Drive, Ste. 210
HOUSTON TX 77007



M 20170807 0F0001532 038 0138 5
10080717-0002616

UNITED STATES POSTAGE

PITNEY BOWES

02 1P                    $ 000.46⁰
0001864055   AUG 03  2017
MAILED FROM ZIP CODE 77056

MSPRC-NGHP
P.O. Box 138832
Oklahoma City, Oklahoma 73113

73113$8832 B050

JS 44   (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

## DEFENDANTS

**(b)**  County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1   U.S. Government
        Plaintiff

❏ 3   Federal Question
        *(U.S. Government Not a Party)*

❏ 2   U.S. Government
        Defendant

❏ 4   Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury  - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ Pharmaceutical | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 820 Copyrights ❏ 830 Patent | ❏ 430 Banks and Banking ❏ 450 Commerce |
| ❏ 151 Medicare Act | ❏ 340 Marine | | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** ❏ 370 Other Fraud | | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations ❏ 480 Consumer Credit |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle ❏ 355 Motor Vehicle | ❏ 371 Truth in Lending ❏ 380 Other Personal | **LABOR** ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** ❏ 861 HIA (1395ff) | (15 USC 1681 or 1692) ❏ 485 Telephone Consumer |
| ❏ 160 Stockholders' Suits | Product Liability | Property Damage | ❏ 720 Labor/Management | ❏ 862 Black Lung (923) | Protection Act |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 385 Property Damage Product Liability | Relations | ❏ 863 DIWC/DIWW (405(g)) | ❏ 490 Cable/Sat TV |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - | | ❏ 740 Railway Labor Act | ❏ 864 SSID Title XVI | ❏ 850 Securities/Commodities/ |
| ❏ 196 Franchise | Medical Malpractice | | ❏ 751 Family and Medical Leave Act | ❏ 865 RSI (405(g)) | Exchange ❏ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❏ 891 Agricultural Acts |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement Income Security Act | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 893 Environmental Matters ❏ 895 Freedom of Information |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party | Act |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | 26 USC 7609 | ❏ 896 Arbitration |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 899 Administrative Procedure Act/Review or Appeal of |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** ❏ 540 Mandamus & Other | ❏ 462 Naturalization Application ❏ 465 Other Immigration | | ❏ 950 Constitutionality of State Statutes |
| | ❏ 448 Education | ❏ 550 Civil Rights ❏ 555 Prison Condition ❏ 560 Civil Detainee - Conditions of Confinement | Actions | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

❏ 1   Original
        Proceeding

❏ 2   Removed from
        State Court

❏ 3   Remanded from
        Appellate Court

❏ 4   Reinstated or
        Reopened

❏ 5   Transferred from
        Another District
        *(specify)*

❏ 6   Multidistrict
        Litigation -
        Transfer

❏ 8   Multidistrict
        Litigation -
        Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII.  REQUESTED IN COMPLAINT:

❏   CHECK IF THIS IS A **CLASS ACTION**
        UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:       ❏  Yes    ❏ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #                AMOUNT                          APPLYING IFP                            JUDGE                              MAG. JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.