IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> Plaintiff, § <br> § <br> V.  § <br> CARRIGAN & ANDERSON, PLLC and § <br> STEPEN P. CARRIGAN § <br> Defendants. § | C.A. No. 4:20-cv-00991 |

# DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS AND ALTERNATIVE RULE 19 MOTION TO ABATE DUE TO ABSENCE OF NECESSARY PARTIES

To the Honorable Court:

Defendants Carrigan & Anderson, PLLC and Stephen P. Carrigan ("Defendants") file this Rule 12(b)(6) Motion to Dismiss and Alternative Rule 19 Motion to Abate Due to Absence of Necessary Parties in response to the Complaint served upon Defendants by Plaintiff United States of America and show as follows:

## 1.

### FACTUAL BACKGROUND

As stated in its complaint, Plaintiff initiated this action on behalf of the Centers for Medicare and Medicaid Services (hereafter "CMS" or "Medicare"), a component of the U.S. Dept. of Health and Human Services, seeking

re-imbursement of monies allegedly owed to it which constitute the proceeds of a personal injury lawsuit prosecuted and settled by Defendants as legal counsel for injured party/Medicare recipient Tomas R. Tijerna, Defendants' client. The facts as described in Plaintiff's complaint are largely undisputed but what is hotly disputed and made the subject of this motion to dismiss is that Plaintiff fails to state a cognizable claim against the only parties defendant that it has chosen to sue, Mr. Tijerina's legal counsel. Defendants contend that this action fails to state a cause of action against them and should be dismissed or alternatively abated for three reasons: (1) Defendants as attorneys received out of the total settlement funds of $70,000 only their legally protected procurement costs (contractual legal fees and reimbursement court and other legal costs totaling $30,000), without which there would have been no lawsuit and no settlement proceeds; (2) the rest and remainder of the total settlement proceeds were received by other persons and entities, not a single one of whom has been sued by Medicare despite receiving, collectively, fifty seven percent of the settlement proceeds (these specific entities are identified below in the Rule 19 Motion to Abate Due to Failure to Join Necessary Parties); and (3) the payment to Medicare was the subject of a specific Court order which adjudicated on the merits the true value of the claims, including non-medical related claims, the amount of monies due Medicare out of the total settlement proceeds available, finding and ordering that Medicare receive only

$4,700.00 representing the court determined amount due and owing to it as a proper percentage of the total value of Mr. Tijerina's claim, only a small portion of which was available and funded as the settlement proceeds.  See "Order Granting Plaintiff's Motion to Determine the Portion of Plaintiff's Settlement Monies That Constitute Reimbursement for Medical Payments Made" attached hereto as Exhibit A (and also attached as part of Exhibit "F" to the Complaint.).  Medicare was notified of and given an opportunity to be heard with regard to the underlying motion prior to the Court's entry of such order following an evidentiary hearing (see Exhibit "D" to the Complaint), but declined to do so.  Furthermore, Medicare both received and cashed the full and final settlement proceeds check made payable to it in the amount of $4,700.00, thereby estopping it from asserting a claim for further recovery from the same settlement fund (in this action, Medicare, having received 7% of the total settlement, now seeks to recover an additional $53,445.93, representing 76% of the total settlement proceeds, and only from Defendants, who in fact received only a total of $30,000.

**2.**

The $30,000.00 in procurement costs received by Defendants (see Settlement Breakdown attached hereto as Exhibit "B") are legally protected under the very statutes upon which Plaintiff derives and bases its legal claim herein.  See 42 C.F.R. Section 411.37(a)(i)-(ii), which states in pertinent part: "Medicare

reduces its recovery to take account of the cost of procuring the judgment or settlement as provided in this section, if--(i) Procurement costs are incurred because the claim is disputed; and (ii) those costs are borne by the party against which CMS seeks to recover."  Inexplicably, although Medicare could have sued any or all of the other settlement proceeds recipients, including its beneficiary, Mr. Tijerina, who actually received the largest chunk of proceeds (see Exhibit A), Medicare has inexplicably sued only the attorneys (and not, it should be noted, in a representative capacity).  As noted by the 11th Circuit, "[d]ue to the inherent risk of litigation, the increased cost of taking a case to trial, problems of proof, a potential finding of contributory or comparative negligence, and limitations on the defendant's ability to pay full compensation, the vast majority of tort lawsuits are resolved by settlement.  Settlement is often for less than the full value of the damages suffered by the plaintiffs."  <u>Bradley v. Sebelius</u>, 621 F3d 1330, 1339 at Fn. 20 (11th Cir. 2010). Inexplicably, despite the fact that 57% of the total (and limited) settlement proceeds were received by others, Medicare has chosen to sue only the attorneys (and not, it must be noted, in a representative capacity) to recover their procurement costs and more, but for which there would have been no recovery whatsoever.  It is exactly for this reason that procurement funds are deducted from the funds available for Medicare recovery, *see* 42 C.F.R. 311.37, and why Defendants believe this court should recognize the nature of their

receipt of alleged Medicare monies as legally protected from recovery.

**3.**

*Bradley v. Sebelius* is instructive on the issue oof a state court's determination of the amount Medicare may legally recover. The following excerpt from that decision indicates the similarity between the Florida Probate Court's determination of the amount of litigation created funds recoverable and the Tijerina Court's similar meritorious determination attached hereto as Exhibit A (and likewise as part of Ex. F to the Complaint):

Counsel for the children and the estate gave adequate notice to Medicare of the probate court proceedings and invited the Secretary's participation. The Secretary declined to appear or to participate.

The state probate court ordered:

   (c) ... The Court after having heard sworn testimony on the potential value of each child/survivors' independent claim, and after calling on its own experience in the range of values each child's claim potentially carried, finds that the values asserted by the Personal Representative's counsel in this motion are reasonable, and the Court adopts and specifically finds that each of the respective ten (10) survivors' claims holds a value of at least $250,000.00. The Court notes that Medicare has asserted a claim of lien based upon payments of $38,875.08. Therefore, the Court finds that the total, full value of this case had the total, full value been collectible, was/is $2,538,875.08.

   (d) Based upon principles of equity, the Court determines the medical expense recovery in the instant cause is $787.50. The Court has calculated such figure based on such component's contribution to the total full value, if such value were collectible. The Court has not prioritized the recovery of medical expenses over the recovery on each of the respective survivors' claims. Further, the Court determines the independent survivors' claims recovery in the instant cause is $51,712.50. The Court has likewise calculated such figure based on all survivors' claims contributions to the total, full value. The Court has likewise not prioritized the recovery on each of the respective survivors' claims over the recovery of medical expenses.

The Secretary refused to accept the probate court's determination that she would only recover $787.50. Relying upon language contained in a document entitled "Medicare Secondary Payer Manual", the Secretary responded that she would not recognize the probate court's allocation of

liability payments to non-medical losses unless and until payment was based on a court order issued on the merits of the controversy. See MSP Manual (CMS Pub. 100-05) Chapter 7, § 50.4.4 (where "[t]he only situation in which Medicare recognizes allocations of liability payments to non-medical losses is when payment is based on a court order on the merits of the case"). The Secretary contended that the probate court's decision was merely advisory in nature or superseded by federal law. The estate paid Medicare under protest, perfected its administrative appeal, and exhausted its administrative remedies...

The case proceeded as an appeal to the district court from a final decision of the Secretary, wherein the surviving children filed their brief in opposition to the Secretary's decision, the Secretary filed her brief in support of her final decision, and the case became ripe for district court review.

The district court, adopting the report and recommendation of the magistrate judge, held that the Secretary's interpretation of the MSP, 42 U.S.C. § 1395y(b)(2)(B)(ii)(2006), and its attending regulations, 42 C.F.R. §§ 411.37(c)(1), (c)(2), (c)(3)(2004), was reasonable. The district court also relied heavily upon the language contained in the Medicare field manual. Accordingly, the district court held that Medicare was entitled to reimbursement in the amount of $22,480.89, not $787.50, for conditional medical expense payments paid on behalf of the Decedent...

There is a second reason that the Secretary's position, as adopted by the district court, is in error. Historically, there is a strong public interest in the expeditious resolution of lawsuits through settlement. See, e.g., Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 574, 96 S. Ct. 1048, 47 L. Ed. 2d 231 (1976); McDermott, Inc. v. AmClyde, 511 U.S. 202, 215, 114 S. Ct. 1461, 128 L. Ed. 2d 148 (1994). Throughout history, our law has encouraged settlements. See United States v. Allegheny-Ludlum Industries, Inc., 517 F.2d 826 (5th Cir.1975); Fla. Trailer & Equip. Co. v. Deal, 284 F.2d 567 (5th Cir.1960); Delancy v. St. Paul Fire & Marine Ins. Co., 947 F.2d 1536 (11th Cir.1991); Johnson v. Occidental Fire and Cas. Co. of North Carolina, 954 F.2d 1581 (11th Cir.1992).[20]

*The Secretary's position would have a chilling effect on settlement. The Secretary's position compels plaintiffs to force their tort claims to trial, burdening the court system. It is a financial disincentive to accept otherwise reasonable settlement offers. It would allow tortfeasors to escape responsibility...*

Under our de novo review, we conclude that the district court erred in upholding the decision of the Secretary because it was unsupported by substantial evidence in the record taken as a whole. See Univ. Health Servs., Inc., 120 F.3d at 1148. *We reverse, finding the Secretary entitled to the sum of $787.50, as determined by the allocations of the probate court.*

*Bradley v. Sebelius,* 621 F.3d at 1333-39 (emphasis added and footnotes omitted).

This court is respectfully requested to avoid the mistake made by the federal

district court in *Bradley* and give full effect and deference to the State Court's determination that Medicare's appropriate and total recovery from the Tijerina settlement proceeds is the $4,700.00 payment already received and cashed by it. *See* Exhibits A and B attached hereto.

## 4.
## **COLLATERAL ESTOPPEL**

For the reasons explained above, Medicare should be estopped from seeking more and additional recovery from the Tijerina settlement proceeds that were long ago distributed. The doctrine of collateral estoppel, or issue preclusion, makes the prior determination of an issue binding on a party or his privy in a subsequent proceeding. Four conditions must be satisfied in order to estop the re-litigation of a previously decided issue: (1) There must be substantial identity of issues; the issue sought to be relitigated must be essentially the same as the issue litigated in the previous action; (2) this issue must have been actually litigated in the prior action;(3) there must have been a determination in the first action precisely on this issue; and (4) this determination must have been necessary to the judgment in the earlier action.

## 5.

Collateral estoppel should be distinguished from its parent doctrine, res judicata. Although both doctrines serve many of the same societal interests the

scope of collateral estoppel is different from that of res judicata, which totally bars the re-litigation of whole causes of actions; the effect of collateral estoppel is limited to individual facts or issues. Thus, the scope of collateral estoppel is both broader and narrower than that of its parent doctrine. Collateral estoppel sweeps further than res judicata in that its application is not restricted to later suits between the same parties and their privies; only the party against whom the doctrine is invoked must have been present or represented in the prior action. At the same time, the effect of res judicata is more extensive than that of collateral estoppel in that the former doctrine may be applied to bar causes of action that could have been, but were not, litigated in the prior action; the four prerequisites for the application of collateral estoppel are not apposite. But these technical requirements do not operate in a vacuum; the doctrine of issue preclusion is somewhat flexible depending on the degree to which policy considerations transcending those of finality are implicated, and, sub silentio, the apparent merit of the claim or defense sought to be estopped.

### 6.

A plaintiff questioning a state determination in federal court necessarily raises the issue of federal/state relations. For example, the Full Faith and Credit Act, 28 U.S.C. Sec. 1738 ("section 1738") is a statutory embodiment of the policy that due deference is owed to the prior determinations of a state court. A broad reading

of section 1738 would preclude re-litigation of any issue decided in state court if the state's own courts would themselves bar re-litigation. The most obvious application of section 1738 is to final judgments. Although federal case law accords the states some comity interest in their determinations of federal constitutional issues, the scope of this interest is not certain. When federal courts have invoked comity, the protected interest has tended to be the orderly administration of concurrent state proceedings, and not the integrity of the determination itself. On the other hand, state-court determinations of historical facts present different considerations. In this area, no court has any special competence over any other; such findings are seldom reviewable on appeal to the Supreme Court and are subject to only limited review in federal habeas-corpus proceedings. A state court, thus, has a considerably greater comity interest in its determinations of fact than its rather minimal comity interest in the integrity of its determinations of issues inextricably intertwined with federal law. Aside from the differences in the importance of the comity interest depending on whether the state-court determination is rounded in historical fact or federal law, a state has a greater comity interest to the extent that re-litigation of an issue implicates the integrity of a judgment. The Supreme Court case of <u>Montana v. United States</u>, 440 U.S. 147 (1979) concerning the preclusive effect of a state-court determination on a federal court, provides some insight on the proper scope of the comity interest for issues

implicating state-court judgments. The Supreme Court held that, on the facts of Montana, "[c]onsiderations of comity as well as repose militate against redetermination of issues in a federal forum" and hence full collateral-estoppel effect was given. *Montana* involved a situation in which a reversal on the issue sought to be estopped would have totally discredited a state court judgment. There, the state's comity interest was significant, even though the disputed issue was intimately tied to federal law. Subsequently, the United States brought an action in federal district court alleging similar constitutional infirmities. The question of the collateral-estoppel effect of the state supreme court's prior judgment naturally arose. Id. 163. Although the government was not technically a party to the state action, the Court found that its activity was sufficient to bind the United States to the results of the proceeding. Id. 154-55.

**7.**

In sum, collateral estoppel is a technical, yet flexible, doctrine whose application in any legal scenario depends on the various policies discussed above. Three elements must be satisfied for a final judgment to preclude litigation of an issue in a subsequent case: "[1], the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; [2] the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case; and [3] preclusion in the second case must

implicating state-court judgments. The Supreme Court held that, on the facts of Montana, "[c]onsiderations of comity as well as repose militate against redetermination of issues in a federal forum" and hence full collateral-estoppel effect was given. *Montana* involved a situation in which a reversal on the issue sought to be estopped would have totally discredited a state court judgment. There, the state's comity interest was significant, even though the disputed issue was intimately tied to federal law. Subsequently, the United States brought an action in federal district court alleging similar constitutional infirmities. The question of the collateral-estoppel effect of the state supreme court's prior judgment naturally arose. Id. 163. Although the government was not technically a party to the state action, the Court found that its activity was sufficient to bind the United States to the results of the proceeding. Id. 154-55.

**7.**

In sum, collateral estoppel is a technical, yet flexible, doctrine whose application in any legal scenario depends on the various policies discussed above. Three elements must be satisfied for a final judgment to preclude litigation of an issue in a subsequent case: "[1], the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; [2] the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case; and [3] preclusion in the second case must

not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha*, 961 F.2d at 254 (D.C. Cir. 1992)) (alterations in original). "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C. Cir. 1986) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The overriding goal of the issue preclusion doctrine is to "avert needless re-litigation and disturbance of repose, without inadvertently inducing extra litigation or unfairly sacrificing a person's day in court." *Otherson v. U.S. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983). When the first two prerequisites for application of the issue preclusion doctrine are met, the plaintiff "must be permitted to demonstrate, if he can, that he did not have a fair opportunity procedurally, substantively, and evidentially to pursue his claim the first time." *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Fund.*, 402 U.S. 313, 333 (1971) (internal quotation marks omitted). As the Supreme Court explained, "a party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time. Both orderliness and reasonable time saving in judicial administration require that this be so unless some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a

particular case." *Id*. at 324-25.

**8**.

In *United States v. Mendoza*, 464 U.S. 154, 104 S. Ct. 568 (1984), the court was confronted with a claim against the U.S. government by a Filipino national suing under the Nationality Act of 1940 as amended. The federal district court ruled that the government could not relitigate the due process issues raised because the same issues had been decided against it in a prior case.  The circuit court of appeals approved based on the Supreme Court's decision in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), which approved the use of non-mutual offensive collateral estoppel.  The *Mendoza* court noted that the Supreme Court had in recent years "broadened the scope of the doctrine of collateral estoppel beyond its common law limits...by abandoning the requirement of mutuality of parties."  464 U.S. at 326.  However, the court reversed the underlying decision because it applied a narrower standard when the federal government is a party than when only private litigants involved.  *Mendoza* nevertheless makes clear that in appropriate cases even the United States can be collaterally estopped, particularly when mutuality is present.  In support, the court noted that it had in fact just applied collateral estoppel against the United States in a contemporaneous case with mutuality of parties, *United States v. Stouffer Chemical Co*., 104 S. Ct. 575 (1983).

**9.**

The CMS written explanation about court rulings can be found at Chapter 7 of the Medicare Secondary Payer (MSP) Manual:

50.4.4 – Designations in Settlements

The only situation in which Medicare recognizes allocations of liability payments to nonmedical losses is when payment is based on a court order on the merits of the case. If the court or other adjudicator of the merits specifically designate amounts that are for payment of pain and suffering or other amounts not related to medical services, Medicare will accept the Court's designation. Medicare does not seek recovery from portions of court awards that are designated as payment for losses other than medical services.

Following this guidance, it would appear CMS would respect a variety of judgments, awards and orders so long as such rulings were based on the merits of the case. CMS even felt comfortable with giving respect to "other adjudicator[s] of the merits," which implied acceptance of private or court ordered arbitrations as well. So long as there was hearing on the merits, and court involvement, by a "court of competent jurisdiction" and a hearing on the merits, it will (or at least should, if it follows its own policy) accept the court ruling. "The government stands exactly in [the Medicare beneficiary's] shoes when recovering from the available insurance funds." ***Waters v. Farmers Texas County Mut. Ins. Co.***, 9 F.3d 397, 401 (5th Cir. 1993). It does not have a "a superior claim to community insurance funds beyond the beneficiary's own share of those funds." *Id*. Medicare should not prevail "just because" it has concerns that "apportionment of insurance settlement payments short of a decision on the merits would allow

beneficiaries and personal injury attorneys to reduce or eliminate Medicare reimbursements by weighting claims in favor of items of damage other than medical expenses." As the *Waters* court concluded: "the government's overreaching interpretation of its authority under the Medicare Secondary Payer statute is insupportable. These legal and procedural defects require us to reverse and remand the summary judgment rendered against Gerald King. *Id*.

**10.**

**ALTERNATIVE RULE 19 MOTION TO ABATE DUE TO FAILURE TO JOIN NECESSARY PARTIES**

Federal Rule of Civil Procedure 19 defines a "Required Party" as a "person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction [and who accordingly] must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. In this case Defendants, as the attorneys for Tomas Tijerina, the original Medicare beneficiary, are in exactly the exposed

position deserving of the court's protection that is contemplated by Rule 19. Plaintiff seeks to recover a total of $53,445.93 (see Para. 24 of Complaint) out of a total settlement of only $70,000, of which Defendants actually received only $30,000 (all of which were legally protected procurement costs). The $40,000 balance of the settlement proceeds were paid out to the following persons and entities, all of whom are subject to service and whose presence would not deprive this court of subject matter jurisdiction: Global Financial Credit, LLC--$5,500.00; Medicare--$4,700.00; Medicaid--$1,497.59; and Tomas Tijerina--$32,777.41. See Settlement Breakdown attached hereto as Exhibit B. Therefore, unless these other person and entities who received settlement proceeds now sought to be disgorged and repaid in whole or part to Medicare, Defendants may be ordered to pay monies not only that they do not legally owe (e.,g., their procurement costs reimbursement) but also far in excess of what they actually received out of the settlement proceeds (i.e., Plaintiff seeks to recover over $53,000 from parties who actually received roughly half that amount.) Accordingly, Defendants requests, alternatively to dismissal pursuant to Rule 12(b)(6), that this matter be ABATED pending joinder of the missing persons and entities identified herein as beneficiaries of a portion of the settlement monies now sought to be recovered by Plaintiff in this cause.

      WHEREFORE, Defendants Carrigan & Anderson, PLLC and Stephen P.

Carrigan request that this matter be DISMISSED for failure to state a claim against them or, alternatively, ABATED pending joinder of the absent necessary parties.

        Respectfully submitted,

**CARRIGAN & ANDERSON, PLLC
and STEPHEN P. CARRIGAN,**
*PRO SE DEFENDANTS*

<u>**By:   /s/Stephen P. Carrigan, pro se**</u>
**Stephen P. Carrigan**
State Bar No. 03877000

**Carrigan & Anderson, PLLC**
<u>**By:   /s/David M. Anderson**</u>
**David M. Anderson**
State Bar No. 24064815
Federal ID No.985644
3100 Timmons Lane, Suite 210
Houston, Texas 77027
(713) 739-0810 - Telephone
(713) 739-0821 -   Facsimile
Email: *scarrigan@ccatriallaw.com*
Email: *danderson@ccatriallaw.com*

## <u>CERTIFICATE OF SERVICE</u>

     The undersigned hereby certifies that a true and correct copy of the foregoing instrument was forwarded to all interested parties as indicated below by electronic filing in accordance with the Federal Rules of Civil Procedure on this the 1st day of July, 2020.

Ryan K. Patrick, United States Attorney
Jose Vela, Jr., Asst. United States Attorney
1000 Louisiana Street, Suite 2300
 Houston, Texas 77002
***Via Electronic Filing***                        */s/Stephen P. Carrigan*